**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JASON SUTTON,<br><br>            Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>            Defendant. | Case No. 4:21-09052 |
| JANET HOWELL,<br><br>            Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>            Defendant. | Case No. 4:21-09053 |
| BARNEY FRAZIER,<br><br>            Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>            Defendant. | Case No. 4:21-09054 |
| LOREN PROVINCE,<br><br>            Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>            Defendant. | Case No. 4:21-09055 |

| | |
|---|---|
| LISA CRACRAFT,<br><br>                             Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                             Defendant. | Case No. 4:21-09056 |
| LARRY SQUIRES,<br><br>                             Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                             Defendant. | Case No. 4:21-09057 |
| STACEY GOINS,<br><br>                             Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                             Defendant. | Case No. 4:21-09058 |
| BENJAMIN REDWING,<br><br>                             Plaintiff,<br><br> v.<br><br>DST SYSTEMS, INC.,<br><br>                             Defendant. | Case No. 4:21-09060-NKL |

| | |
|---|---|
| TERRY TEGHTMEYER,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09061-NKL |
| BRUCE ZOLLARS,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09062-NKL |
| LINDA DENNY-GLYNN,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09063-NKL |
| KIM GALE,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No.: 4:21-09064-NKL |

| | |
|---|---|
| BARBARA O'MARA,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>Defendant. | Case No. 4:21-09073-NKL |
| DANA GRIEM,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>Defendant. | Case No. 4:21-09074-NKL |
| KAREN OWENS,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>Defendant. | Case No. 4:21-09075-NKL |
| WAIYEE JULEY TSANG,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-09076-NKL |

| | |
|---|---|
| JACKIE OLDER-HEFNER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09077-NKL |
| AMY KELLER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09078-NKL |
| BRUCE ALLEN,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09080-NKL |
| RUSS BROOKS,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09081-NKL |

| | |
|---|---|
| KRISTY HILL REVIS,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09082-NKL |
| TINA CAREY,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09083-NKL |
| PHILLIP BIGGS,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09084-NKL |
| MARK CUNNINGHAM,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09065-NKL |

| | |
|---|---|
| LINDA CALDER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09066-NKL |
| KIM BOLCH,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09067-NKL |
| JOSHUA COOK,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09068-NKL |
| JOHN P. HARPER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09069-NKL |

| | |
|---|---|
| DIANA CONNELLY JUSTUS<br><br>                      Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09070-NKL |
| KEELY INMAN,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09071-NKL |
| JONATHAN BRECKENRIDGE-<br>MITCHELL (f/k/a JONATHAN<br>KIMES),<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09072-NKL |
| MATT DUNN,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No.: 4:21-09085-NKL |

| | |
|---|---|
| ROB BERKSTRESSER, | |
| Plaintiff, | |
| v. | Case No.: 4:21-09086-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |
| CAMILLE JACKSON, | |
| Plaintiff, | |
| v. | Case No.: 4:21-09087-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |
| MERI ANN MASON, | |
| Plaintiff, | |
| v. | Case No.: 4:21-09088-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |
| STEPHANIE BROWN, | |
| Plaintiff, | |
| v. | Case No.: 4:21-09089-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

| | |
|---|---|
| NICK RUTKOWSKI, | |
| Plaintiff, | |
| v. | Case No.: 4:21-00705-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |
| DENNIS DUNBAR, | |
| Plaintiff, | |
| v. | Case No.: 4:21-09079-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

## ORDER

Each Plaintiff in the above-captioned actions has moved to confirm an arbitration award. Doc. 1. Defendant DST Systems, Inc. opposes the motion, arguing that Plaintiff's claims were not arbitrable and that Plaintiff is part of a mandatory class certified by the District Court for the Southern District of New York.

DST paints the task before the Court as one that is complex and merits forbearance, but in truth, the obligation of the Court is plain and unavoidable. The Federal Arbitration Act compels the Court to confirm the award in the absence of specified circumstances. As discussed further below, no such circumstance exists here. For that reason and the additional reasons discussed below, the Court grants each Plaintiff's motion to confirm the arbitration award.

## I.     BACKGROUND

At all relevant times, Plaintiff was a participant, within the meaning of 29 U.S.C. § 1002(7), in DST's 401(k) Profit Sharing Plan (the "Plan"). DST, though incorporated in Delaware, has its

principal place of business in Kansas City, Missouri. DST is the sponsor, administrator, and a designated fiduciary of the Plan under 29 U.S.C. §§ 1002 and 1102.

The underlying dispute arose from DST's alleged failure to monitor and ensure the rebalancing of overly concentrated investments in the Plan. On January 13, 2017, Mr. James DuCharme, a participant in the Plan, filed a putative class action in the Western District of Missouri, seeking to recover damages on behalf of the Plan for DST's alleged wrongdoing. On February 22, 2017, DST filed a motion to compel arbitration and to dismiss Mr. DuCharme's lawsuit. On June 23, 2017, the Honorable Brian C. Wimes granted DST's motion to dismiss the *DuCharme* litigation, finding that the Arbitration Agreement was "valid" and that "Ducharme's claims for breach of fiduciary duty f[e]ll within the Arbitration Agreement's scope." *Ducharme v. DST Sys.*, Inc., No. 17-CV-0022-BCW, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017).

On June 18, 2018, DST sent a notice to all Plan participants bound by the Arbitration Agreement explaining that a former employee had initiated an arbitration relating to the Plan and advising each participant that he or she "may initiate an individual arbitration proceeding under the Arbitration Program by submitting a written request" to DST. (DST Notice Regarding Right to Assert Claim dated June 18, 2018.)

Hundreds of Plan participants initiated arbitration proceedings through the American Arbitration Association ("AAA"). At least 554 participants or beneficiaries have initiated arbitration proceedings. During the past three years, the arbitrations have progressed—including through discovery, depositions, motion practice, merits hearings, or simply settlements. The claims of at least 342 claimants have been tried; 214 claimants have received awards in their favor; and 61 other claimants are awaiting awards. DST has appealed some of the awards against it through the arbitration process. All of the arbitration hearings at issue, albeit virtual, were

conducted in Missouri.

The Western District of Missouri had already confirmed at least five of the arbitration awards. *See Murphy v. DST Sys., Inc.*, No. 21-00174-BCW (W.D.Mo.); *O'Brien v. DST Sys., Inc.*, No. 21-9008-BCW (W.D.Mo.); *Quast v. DST Sys., Inc.*, No. 21-9009-BCW (W.D.Mo.); *Mayberry v. DST Sys., Inc.*, No. 21-09007-BCW (W.D.Mo.); *Keeton v. DST Sys., Inc.*, No. 21-09006-BCW (W.D.Mo.); *Parrott v. DST Sys., Inc.*, No. 21-09012-NKL (W.D.Mo.). In at least one of those cases, DST expressly stated just months ago that it "d[id] not oppose the confirmation of the Arbitration Award . . . ." *Parrot*, No. 21-09012-NKL (W.D.Mo.), Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award).

In September 2017, months after the *DuCharme* case was dismissed upon DST's motion, a participant in the Plan brought a putative class action in the Southern District of New York alleging breach of fiduciary duty against DST and Ruane Cuniff & Goldfarb Inc., the investment manager to which DST had delegated investment management responsibilities, as well as the Plan's Advisory Committee and the Compensation Committee of the Board of Directors of DST. *Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*, No. 17-cv-06685 (S.D.N.Y.). The plaintiffs in *Ferguson* filed a motion for class certification in April 2020. Counsel for the Plaintiff in this case filed a memorandum of law opposing the motion for class certification on behalf of Plaintiff and hundreds of other similarly situated arbitration claimants (the "Arbitration Claimants").

On March 4, 2021, while the motion for class certification in *Ferguson* was pending, the Second Circuit reversed a district court decision compelling arbitration pursuant to the same DST Arbitration Agreement at issue here. *See Cooper* v. *Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021). The Second Circuit held that DST's Arbitration Agreement did not cover ERISA fiduciary duty claims because the Arbitration Agreement covered only employment-related

disputes, not Plan-related disputes. *Id.* at 183–84. The Second Circuit also suggested that individual claims would not be permissible in a suit asserting a breach of DST's fiduciary duty to the Plan because, based on one of its prior opinions, such claims must be brought on a representative basis. DST was not a party to that lawsuit.

On March 8, 2021, the *Ferguson* court denied plaintiffs' class certification motion without prejudice and ordered additional briefing addressing *Cooper*. *Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 296 (Order Dated March 8, 2021). The *Ferguson* plaintiffs thereafter renewed their class certification motion. DST filed a brief supporting the class certification motion. *See Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 306 (DST's Response to Plaintiffs' Renewed Motion for Class Certification), p. 22 ("The Court should grant Plaintiffs' renewed motion for class certification."). Counsel for the Arbitration Claimants, including Plaintiff here, filed an additional brief in the *Ferguson* case opposing class certification, arguing that DST had agreed to arbitrate the claims; that the Arbitration Claimants had a right to arbitrate their claims; that the Arbitration Claimants should be permitted to opt out of any class; that Judge Wimes' decisions in *DuCharme* precluded certification of a mandatory class; and that the Southern District of New York lacked personal jurisdiction over the Arbitration Claimants. *Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 271 (Memorandum of Law on Behalf of Arbitration Claimants in Opposition to *Ferguson* Plaintiffs' Motion for Preliminary Approval of Class Action Settlement).

On August 17, 2021 the *Ferguson* court certified a Rule 23(b)(1) mandatory class that includes Plaintiff. *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6685, 2021 WL 3667979 (S.D.N.Y. Aug. 17, 2021). The *Ferguson* court stated, "[w]hile the Arbitration Claimants argue that they have a right to arbitrate, the Second Circuit as well as this Court has found that the claims at issue here are not covered by the arbitration agreement." *Id.* at *7. The class certification

decision in *Ferguson* also noted secondarily that Second Circuit precedent requires parties suing on behalf of an ERISA plan "to demonstrate their suitability to serve as representatives of the interests of other plan stakeholders," and it was not clear "how an employee can bring an ERISA fiduciary claim that satisfies [the *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006)] adequacy requirement, while concurrently complying with the agreement." *Id.* at *4 (quotation marks omitted).

On August 23, 2021, DST moved the *Ferguson* court for a temporary restraining order and preliminary injunction to prohibit the Arbitration Claimants from prosecuting the arbitrations and related court proceedings in spite of the class certification order. Also, on August 30, 2021, the Arbitration Claimants, including Plaintiff, filed a petition in the Second Circuit pursuant to Rule 23(f) seeking discretionary review of the class certification order.

On August 31, 2021, the *Ferguson* court denied DST's motion for a temporary restraining order, but it ordered the Arbitration Claimants to show cause as to why they should not be enjoined from prosecuting this or other actions relating to the class's claims. The Arbitration Claimants filed their response on September 21, 2021; DST's response was filed in the Southern District of New York on October 12, 2021.

## II.    DISCUSSION

### A.  Whether the Court Has Jurisdiction

DST does not—and cannot reasonably—suggest that this Court lacks jurisdiction over the parties before it. Plaintiff was employed by DST in Kansas City, Missouri, and DST's principal place of business is in Kansas City, Missouri. The Arbitration Agreement states that the "arbitration hearing shall be held in the county of the Associate's principal place of employment . . . unless another location is agreed to by the parties." The arbitration hearing was

conducted in Jackson County, Missouri.

Moreover, the AAA's Employment Rules—which the arbitration agreement provides shall apply—specify that the "[p]arties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction." AAA Employment Rules, available at https://www.adr.org/sites/default/files/Employment%20Rules.pdf (last accessed September 23, 2021), R. 42.c.

This Court clearly has jurisdiction over this action.

## B. The FAA's Requirement that the Court Confirm Arbitration Awards in the Ordinary Course

"Section 9 of the FAA provides that federal courts 'must grant' an order confirming an arbitration award 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA].'" *UHC Mgmt. Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) (emphasis added); *see also* 9 U.S.C. § 9 ("If the parties . . . have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.") (emphasis added).

The Supreme Court has held that "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

"Congress did not authorize de novo review of [an arbitration] award on its merits; it

commanded that when the exceptions do not apply, a federal court has no choice but to confirm." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008); *see also Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010) ("[A]n arbitral award may be vacated only for the reasons enumerated in the FAA.").

The "grounds recognized by the FAA" for vacating an award are "corruption, fraud, partiality or an abuse of power . . . ." *Id*. Here, DST has not argued that corruption, fraud, or partiality affected the award. Absent a finding that the arbitrators abused their power, then, the Court is compelled to confirm the award.

## C. DST's Argument that the ERISA Claims Cannot Be Brought Individually

DST argues that ERISA § 502(a) claims cannot be brought in individual arbitrations. Insofar as this argument does not involve a suggestion that the arbitrators exceeded their powers, it should have been directed to, and resolved by, the arbitrators.

Insofar as DST suggests that the arbitrators abused their power because the claims at issue were not arbitrable, the Court is not persuaded by DST's argument. The Supreme Court has held that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). Additionally, the Eighth Circuit has "f[ou]nd nothing . . . demonstrating Congress intended to prohibit arbitration of ERISA claims." *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478 (8th Cir. 1988).

DST argues that *Arnulfo P. Sulit* involved claims between the plan and its broker and did not address "a plan participant's ability to individually arbitrate ERISA fiduciary duty claims." But in *Arnulfo*, the principal of the corporation brought claims in his own name, as well as that of

his corporation, in addition to the claim on behalf of the employee benefit plans. The Eighth Circuit found that "the parties' agreements to arbitrate ERISA claims are enforceable in accord with the explicit provisions of the Arbitration Act." *Id.* at 477. The Eighth Circuit did not distinguish between the employee benefit plans' claims and the other plaintiffs' claims in determining that arbitration was appropriate. Instead, in compelling arbitration of even the individuals' claims, the Eighth Circuit expressly stated, "we perceive no inherent conflict between arbitration of ERISA claims and the statute's purposes that would undermine the suitability of arbitration as a means of enforcing ERISA rights." *Id.* at 479.

The Ninth Circuit has expressly noted that "every circuit to consider the question has held [that] ERISA contains no congressional command against arbitration, [and] therefore an agreement to arbitrate ERISA claims is generally enforceable." *Dorman*, 780 F. App'x at 513–14.[1] The Supreme Court's opinion in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018), further supports the conclusion that where, as in the ERISA provisions relevant here, there is no language indicating that statutory claims are not arbitrable, an arbitration agreement "must be enforced as written."

Finally, even if DST is correct that an ERISA claim must be brought in a collective action, as discussed below, DST is estopped from benefiting from that rule because it previously represented to the courts, arbitrators and the Arbitration Claimants that the ERISA claims at issue here cannot be brought in a collective action.

---

[1] DST claims that in *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 190 (W.D. Mo. 2009), this Court rejected the reading of *LaRue* adopted in *Dorman*. However, this Court simply held in *Jones* that "*LaRue* does not eliminate the possibility of § 502(a)(2) class actions." *Id.* The Court did not suggest that individual causes of action are impermissible under *LaRue*; to the contrary, the Court recognized that "*LaRue* . . . expanded the relief available under § 502(a)(2), so that recovery can now be had when a participant demonstrates that fiduciary misconduct affected his individual account." *Id.* (quoting *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108–09 (N.D.Cal.2008)).

### D. Judicial Estoppel

Even if this were not a straightforward matter of confirming an arbitration award where there is no evidence of corruption, fraud, partiality, or abuse of power, the doctrine of judicial estoppel alone would warrant confirming the award.

"[A] party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Scudder v. Dolgencorp, LLC*, 900 F.3d 1000, 1006 (8th Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, (2001)). Therefore, the doctrine of judicial estoppel "prevents a party who 'assumes a certain position in a legal proceeding, and succeeds in maintaining that position,' from later 'assum[ing] a contrary position.'" *Scudder*, 900 F.3d at 1006 (quoting *New Hampshire*, 532 U.S. at 749; citing 18 Charles Alan Wright, Arthur Edward Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4477, p. 782 (1981)).

The Court considers the following factors in determining whether judicial estoppel applies:

(1) whether "a party's later position is clearly inconsistent with its earlier position," (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Scudder*, 900 F.3d at 1006 (quoting *New Hampshire*, 532 U.S. at 750-51). The Court evaluates these factors in turn.

#### 1. Whether DST's Position Now is Clearly Inconsistent with the Position It Previously Adopted

DST's position in this case now is clearly inconsistent with the position it adopted in 2017 in *DuCharme*. In *DuCharme*, DST moved the Court "to compel Mr. Ducharme to arbitrate his

ERISA claims with DST on an individual basis in accordance with the terms of the Arbitration Program and Agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 27 (DST's Motion to Compel Arbitration and to Dismiss), p. 1. DST argued that individual arbitration was required "because (1) Mr. Ducharme entered into a valid agreement to arbitrate with DST and (2) his breach of fiduciary duty claims under ERISA fall within the scope of that agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 28 (Suggestions in Support of DST's Motion to Compel Arbitration and to Dismiss), p. 6. DST insisted that the Profit Sharing Plan "incorporates the terms of DST's Arbitration Agreement into the Plan, and thereby explicitly binds the Plan to the terms of that Agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 2; *see also DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 39 (DST's Reply Suggestions in Support of Motion to Compel and to Dismiss), p. 3 (arguing that "[t]he Plan . . . expressly provides for arbitration" and that "the Plan makes clear that the scope of the Arbitration Agreement covers claims arising out of or related to the Plan—such as the claims Mr. DuCharme seeks to assert"); *id.* p. 6 (arguing that claims for breach of fiduciary duty "are explicitly covered by the language of the Plan" and "subject to mandatory arbitration and class action waiver as provided under DST's Arbitration Policy" (quotation marks omitted)). Indeed, DST insisted that "neither the Arbitration Agreement nor the Amendment prohibits Mr. Ducharme or any other party to the Arbitration Agreement from arbitrating a breach of fiduciary duty claim in connection with purported losses to their individual accounts." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 3.

After the *DuCharme* litigation was dismissed upon DST's motion, and after the *Ferguson* case was filed in New York, DST induced reliance by Plan participants on the position it had taken

in *DuCharme* by sending a notice to each advising that they could "initiate an individual arbitration proceeding under the Arbitration Program by submitting a written request to the DST Systems, Inc., Legal Department" in Kansas City, Missouri. (DST Notice Regarding Right to Assert Claim dated June 18, 2018.)

In the arbitration proceedings themselves, DST acknowledged the arbitrability of each Plan participant's claim. Every arbitration is initiated upon DST's submission of a "Joint Submission for Arbitration" that DST and each claimant signed. *See, e.g.*, *Hursh v. DST Sys., Inc.*, No. 01-19-0001-9621 (AAA), Joint Submission for Arbitration. This document itself constituted an agreement to arbitrate. *See Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) ("Under the Federal Arbitration Agreement, the Submission Agreement, being an 'agreement in writing to submit to arbitration an existing controversy,' is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2); *Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472, 475 (4th Cir. 2003) ("The Uniform Submission Agreement completed and signed by Fisher is a valid and binding contract that has the force of modifying earlier agreements.").

In the arbitration of *James DuCharme v. DST Systems, Inc., et al.*, the parties agreed that "[a]ll claims, counterclaims and defenses asserted by the Parties are within the jurisdiction of the Panel and arbitrable, and there are no preconditions that must be satisfied before proceeding with the Arbitration." *DuCharme v. DST Sys., Inc.*, No. 01-18-0003-0453 (AAA), Case Management and Scheduling Order, Order No. 2, ¶ 3. In another proceeding, the arbitrator stated that his jurisdiction over the matter "is based on the parties' agreement to arbitrate" and that there "is no dispute that the parties' dispute is within the scope of the parties' agreement to arbitrate." *McKown v. DST Sys., Inc.*, No. 01-19-0001-9672 (AAA), Initial Case Management Order, p. 2. In yet

another proceeding, the arbitrator noted that "[n]o party challenged either the arbitrability of any of the claims or the jurisdiction of the Arbitrator." *Leineke v. DST Sys., Inc.*, No. 01-18-0003-0421 (AAA), Report of Preliminary Hearing and Management Conference Order No. One, p. 2.[2]

Furthermore, even as recently as a few months ago, DST agreed to the entry of an order granting a motion to confirm an attorney's fee award in connection with an arbitration. *Parrot*, No. 21-09012-NKL, Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award).[3]

In this proceeding, however, DST has adopted the contrary position. In direct contradiction of its original position that a Plan participant should "arbitrate his ERISA claims with DST on an individual basis in accordance with the terms of the Arbitration Program and Agreement," DST now argues that the reason for "certify[ing] mandatory classes in ERISA fiduciary duty actions is . . . to ensure that all parties and all plan participants are treated equitably in resolving derivative

---

[2] DST argues that it did not consent to arbitration because, in the Joint Submission for Arbitration, DST reserved "all arguments and defenses in connection with the Demand." Even putting aside the fact that DST takes the quoted language out of context, this vague, general reservation of rights, submitted in the arbitration forum to the arbitrator, cannot be deemed an objection to the arbitration itself. In any event, it does not erase DST's prior and subsequent efforts to compel and invite arbitration by Plan participants and to participate willingly in those arbitrations.

DST's argument that it later objected to proceeding in arbitration while the Second Circuit resolved arbitrability in *Cooper* similarly fails. The document to which DST points notes that DST had already submitted the Joint Submission for Arbitration for 315 claimants. Having compelled, then invited, then invoked arbitration, and having participated fully in the process for significant time, DST cannot legitimately claim now that it objected to proceeding in arbitration.

[3] DST notes that *Parrot* "did not consider any dispute over arbitrability" and that the Court merely "granted an *unopposed* motion to confirm an attorney's fee award," but that is precisely the point: by not opposing the motion, DST acknowledged that confirmation of the arbitration award was appropriate. In fact, DST actually submitted its own proposed order confirming the arbitration award. *See Parrott*, No. 21-mc-9012-NKL (W.D.Mo.), Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award) ("DST does not oppose the confirmation of the Arbitration Award and respectfully submits that the accompanying proposed order in the form of Exhibit A is appropriate to confirm that award.").

claims that belong to the plan as a whole, not any individual plan participant." DST's Suggestions in Opposition to Plaintiff's Motion to Confirm Arbitration Award, p. 2; *see also id.* pp. 3-4 ("Courts nationwide, including the Southern District of New York and this Court, have recognized repeatedly that ERISA fiduciary duty claims cannot be litigated on an individual basis and must instead be brought in a representative capacity on behalf of a plan and all its participants. The arbitration of the individual claims here violated those basic ERISA principles."); *id.* p. 14 ("Courts nationwide, including this Court, have held that such claims cannot be litigated individually and must instead be brought on behalf of a retirement plan as a whole in a representative capacity.").

DST attempts to refute the suggestion that its current and former positions are inconsistent by pointing out that (1) "the *Ferguson* plaintiffs, *not* DST, moved to certify the class," and (2) "the Second Circuit resolved that Arbitration Claimants' claims are not arbitrable in *Cooper*—in which DST was not even a party." Even putting aside the fact that DST submitted a brief in support of the plaintiffs' class certification motion in *Ferguson*, these are distinctions without a difference. The facts that DST did not initiate class certification in *Ferguson* and was not a party in *Cooper* are irrelevant to the question of whether DST has adopted inconsistent positions in adjudicatory forums—and there can be no reasonable dispute that it has.

Insofar as DST argues that an intervening change in the law justifies its about-face, the argument is unconvincing. Well before the 2021 Second Circuit decision in *Cooper* concluding that a DST Plan participant's ERISA claims were not arbitrable, and the subsequent class-certification decision in *Ferguson*, DST had changed its position regarding arbitration. For example, on July 10, 2020, DST sought a temporary restraining order and preliminary injunction to prevent arbitrations by any members of the putative class. *Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 160 (Proposed Order to Show Cause for an Order for Preliminary Injunction and

Temporary Restraining Order).  The Second Circuit's decision in *Cooper* was not issued until eight months later.

Even after the Second Circuit decision in *Cooper* was issued, DST consented to the entry of orders confirming arbitration awards in other cases involving the same type of claim.  *See Murphy v. DST Sys., Inc.*, No. 21-00174-BCW (W.D.Mo.), Doc. 8 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award) ("DST does not oppose the confirmation of the Arbitration Award . . . ."); *Parrott v. DST Sys., Inc.*, No. 21-09012-NKL (W.D.Mo.), Doc. 3 (same).

Moreover, *Cooper* did not change Second Circuit law regarding whether ERISA claims like those in this case could be brought individually:  as *Cooper* explains, the rule at issue was articulated in *Coan*, which was decided in 2006—many years before DST sought to compel arbitration in *DuCharme*.  *See Cooper*, 990 F.3d at 184 ("In *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), we construed ERISA § 502(a)(2) to require parties suing on behalf of a plan to demonstrate their suitability to serve as representatives of the interests of other plan stakeholders. We explained: '[T]he representative nature of the section 502(a)(2) right of action implies that plan participants must employ procedures to protect effectively the interests they purport to represent.'").

Furthermore, DST has taken inconsistent positions in the Western District of Missouri— the district in which it has its principal place of business, in which Plaintiff was employed, and in which the arbitrations occurred. DST has not presented, and the Court is not aware of, any authority to suggest that a change in Second Circuit law justifies DST's abrupt reversal in this district.  The only Eighth Circuit pronouncement with respect to the arbitrability of ERISA claims is that there is "no inherent conflict between the arbitration of ERISA claims and the statute's purposes that would undermine the suitability of arbitration as a means of enforcing ERISA rights." *Arnulfo P.*

*Sulit*, 847 F.2d at 479. In fact, DST cited *Arnulfo P. Sulit* in arguing for dismissal of the *DuCharme* case. The Court therefore cannot find that DST's contradictory positions were justified based on any change in the law.

In sum, there can be no reasonable dispute that DST has adopted inconsistent positions in the litigation and arbitration proceedings.

> 2. **Whether DST Succeeded in Persuading a Court to Accept Its Earlier Position, such that Accepting an Inconsistent Position in this Proceeding Would Create the Perception that Either the First or the Second Court Was Misled**

There is no doubt that DST persuaded Judge Wimes to accept its position that Plan participants who were parties to the arbitration agreement were required to arbitrate their claims. In dismissing the complaint in *DuCharme*, Judge Wimes expressly held that "the Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." *Ducharme*, 2017 WL 7795123, at *1. Further, in the arbitrations themselves, DST conceded that the claims were arbitrable.

DST argues that the fact that it sought to stay select arbitrations shows that it did not concede the arbitrability of the claims. However, seeking a *stay* of an arbitration in the arbitration proceeding does not suggest that DST denied the *arbitrability* of the claims. DST has not suggested that it objected to the arbitrability of any claim in the arbitration proceedings at issue.

If the Court were to accept DST's new argument that the claims at issue in the Arbitration Claimants' arbitration proceedings—the same type of claim that was at issue in the *DuCharme* litigation—are not arbitrable, then it will appear that either Judge Wimes or this Court was mistaken as to the enforceability of the arbitration agreement or whether the ERISA claims at issue may be brought individually. That is precisely the kind of result that the doctrine of judicial estoppel is designed to prevent.

### 3. Whether DST Would Derive an Unfair Advantage or Impose an Unfair Detriment on Plaintiff If Not Estopped

It is clear that, if the Court were to accept the argument that DST now makes, Plaintiff would be unfairly prejudiced. Not only did DST seek and procure the dismissal of the *DuCharme* litigation on the ground that the claims therein were subject to mandatory arbitration, but DST also sent letters to all the Plan Participants advising that they could arbitrate disputes relating to the Plan. Now that hundreds of Plan Participants have accepted DST's offer to arbitrate, and secured awards after engaging in good faith, perhaps for years, in the arbitration process, it would be patently unfair to permit DST to revoke its consent to arbitration, vacate the arbitration awards, and require the Arbitration Claimants to start over.

### 4. Whether Judicial Estoppel Applies

The foregoing analysis establishes that judicial estoppel applies. *See Hicks v. Bank of Am., N.A.*, 218 F. App'x 739, 746 (10th Cir. 2007) (finding that where a party "vigorously participated in the arbitration," including by "joining in [a] motion to stay [proceedings in a district court] pending completion of the arbitration" and arguing that "the arbitration clause . . . clearly encompassed all of the issues and claims . . . asserted," it had "waived its objection to arbitration and [wa]s estopped from arguing that the arbitrator lacked personal jurisdiction to enter an award against it").

DST argues that inconsistent results in arbitration—the fact that some claimants in the arbitrations received less money than others, while some received none at all—suggests unfairness, and that the only fair option is a uniform recovery through the *Ferguson* class action. But the possibility of unfairness to those who exercised their right to arbitrate and did not recover does not warrant stripping arbitral awards from those who did. To the contrary, holding the parties to the benefit of their bargain—the outcomes obtained in arbitration—is the best way to ensure fairness

and to effectuate the principles underlying the FAA. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (stating that "the first principle that underscores all of our arbitration decisions [is]: [a]rbitration is strictly 'a matter of consent'") (quotation marks and citation omitted). It falls to courts and arbitrators to give effect to these contractual decisions, keeping in mind the purpose of the exercise: to enforce the intent of the parties. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

DST's *post hoc* suggestion that, despite its initial demand for arbitration in the Western District of Missouri and its subsequent invitation to Plan participants to initiate arbitration proceedings, this Court should sweep aside final arbitration awards in hundreds of cases is anathema. *See Hicks v. Cadle,* 436 F. App'x 874, 879 (10th Cir. 2011) ("[I]t would be a perverse understanding of the concept of consent to hold that a party has not consented to arbitration that it *voluntarily sought.* Judicial estoppel does not override consent; it enforces past consent by preventing tactical after-the-fact retraction." (emphasis in original)); *Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007) ("[M]any courts have held that, absent an explicit statement objecting to the arbitrability of the dispute, a party cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." (quotation marks omitted; citing cases)). As another federal court held when a party argued that the arbitrator lacked jurisdiction to render the award against it, "[s]uch crass manipulation of the legal process constitutes an insult to the integrity of the judicial system and fully warrants invocation of the doctrine of judicial estoppel." *Data Mountain Sols., Inc. v. Giordano*, 680 F. Supp. 2d 110, 128 (D.D.C. 2010). The "hypocrisy" of "wish[ing] to resort to a class-wide lawsuit, the very device it [originally] denied to the workers, to avoid its duty to arbitrate . . . will not be blessed, at least by this order." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020).

Given (1) the Supreme Court's expansive language about the importance of arbitral consent; (2) DST's affirmative representations to the courts, to the arbitrators, and to the Plan Participants that these fiduciary breach claims had to be arbitrated; and (3) DST's consenting, repeatedly, to arbitrate the claims, the Court finds that DST is judicially estopped in this Court from asserting that the fiduciary breach claims at issue are not arbitrable.

DST was not dragged into arbitration against its will. It initiated these arbitrations voluntarily, whether its consent was manifested in the terms of the original arbitration agreement found valid in *DuCharme* or by inviting the Arbitration Claimants to arbitrate and then participating fully in the arbitrations. The only thing that would be unfair would be to let DST escape the consequences of the arbitration proceedings in which it voluntarily participated because they did not turn out as DST hoped they would.

### E. Whether the Class Certification Order in *Ferguson* Should Affect the Court's Decision Regarding the Arbitration Award

DST argues that the class certification order in *Ferguson* enjoins litigation of the claims that are the subject of the class action, citing *In re Federal Skywalk Cases*, 680 F.2d 1175, 1180 (8th Cir. 1982). The language cited by DST from *Federal Skywalk* is taken out of context. While that decision does state "[i]t is true that parties to a mandatory class are not free to initiate actions in other courts to litigate class certified issues," the very next sentence states, "However, in the present case the objectors had commenced their state court actions before the motion for class certification had been filed in district court." *Fed. Skywalk*, 680 F.2d at 1180. In *Federal Skywalk*, the Eighth Circuit actually *vacated* the class certification order. *Id.* at 1183. In doing so, the Eighth Circuit distinguished the class certification order before it, which had purported to enjoin "pending . . . actions," from other cases in which permissible injunctions were "against subsequent . . . actions." *Id.* at 1182. Thus, insofar as *Federal Skywalk* is relevant, it suggests that

a class-certification order that interferes with pending proceedings may be improper.

Here, Plaintiff and DST initiated the arbitrations before the class was certified. Indeed, many Arbitration Claimants' claims were already *resolved* before the class was certified. In moving to confirm the arbitration award, Plaintiff is merely seeking the equivalent of a formal judgment on a matter in which Plaintiff already has prevailed. *See Van Horn v. Van Horn*, 393 F. Supp. 2d 730, 740 (N.D. Iowa 2005) ("'The confirmation of an arbitration award converts the final arbitration award into the judgment of the court.'" (quoting *Irving R. Boody & Co. v. Win Holdings Int'l, Inc.*, 213 F.Supp.2d 378, 380 (S.D.N.Y. 2002)). A court action to confirm the arbitration award is merely the culmination—not the commencement—of the adjudicatory process.

DST also argues that the Court simply should defer to the Southern District of New York with respect to Plaintiff's claims because Plaintiff is a member of the class certified in *Ferguson* and *Ferguson* was "first filed," so confirming the arbitral award in this case would interfere with the Ferguson court's jurisdiction over Plaintiff's claims. However, Plaintiff's claims already have been arbitrated to conclusion within this district.

The ability to rely on the finality of a judgment is a central tenet in the judicial system. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.8 (11th Cir. 1988) (noting "the strong policy favoring the finality of awards and judgments" (citing, *inter alia*, *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 598 (3d Cir. 1968)); *see Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1169 (8th Cir. 1989) ("[I]it is clear that an arbitration award may operate as a final adjudication for the purposes of collateral estoppel."). DST has presented no compelling reason to overturn this fundamental principle in this case.

DST's argument that the Court should not countenance Plaintiff's motion because it is a collateral attack on the *Ferguson* class certification order is unpersuasive. First, the Court's

resolution of Plaintiff's motion cannot be a collateral attack on the class certification order in *Ferguson* because this Court is not altering, and indeed cannot alter, a judgment entered by another district court. Second, this Court is merely granting Plaintiff's Motion for Confirmation, which, under the FAA and the facts presented here, is effectively a ministerial task. Further, the Court simply is ensuring that DST does not escape the consequences of the legal position it originally adopted in the Western District of Missouri. The Southern District of New York has not addressed these issues.

To the extent that the Court's order in this case might create a conflict in relation to an order of the Southern District of New York, such conflict will be the product of DST's blatantly contradictory positions, not any judicial error.

Insofar as DST may be concerned about the potential that the Arbitration Claimants will recover twice for one injury, it may seek relief in the class action by, for instance, requesting that any award that the *Ferguson* plaintiffs secure on behalf of the Plan be calculated or distributed in a manner that accounts for any overlap in the claims. *See, e.g., DeLoach v. Philip Morris Companies, Inc.*, 206 F.R.D. 551, 566–67 (M.D. N.C. 2002) (noting, in rejecting defendant's contention that individualized damages calculations precluded class certification, that a court can appoint a special master or magistrate to "preside over individual damage proceedings"); *Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 174 (E.D.N.Y. 2011) (concluding that "claims for class members' emotional distress damages must be disposed of an individual basis"); *Hilao v. Est. of Marcos*, 103 F.3d 767, 782 (9th Cir. 1996) (relying on statistical sampling and a special master to calculate damage awards for three different subclasses of plaintiffs). Such a procedure could also address DST's concern that some arbitration claimants were not given a large enough award in arbitration.

### F. DST's Concern About Plaintiff's Counsel's Expenses

Finally, insofar as DST argues that Plaintiff's counsel impermissibly seeks to recover multiple times for the same out-of-pocket costs, despite representing to every arbitrator that they would not recover the same expenses more than once, the issue does not appear ripe for court intervention. Plaintiff's counsel has represented that, as they have agreed with DST, they will recover no more than 100% of their costs. DST complains that Plaintiff's counsel has not explained how such a promise may be enforced after judgment is entered. However, insofar as Plaintiff's counsel breaches an agreement, of course, traditional contract remedies are available, in addition to remedies available under federal law and rules for purported misrepresentations by attorneys.

In any event, this issue does not appear to affect the integrity of the award itself. Furthermore, DST has not shown in what arbitration the alleged double recovery has occurred, or in what amount. Therefore, there is insufficient evidence before the Court to warrant delaying or refusing entry of a judgment confirming the arbitration award on this basis.

### III.    CONCLUSION

For the reasons discussed above, Plaintiff's motion to confirm the arbitration award (Doc. 1) is GRANTED. The Clerk of the Court is directed to enter judgment in each Plaintiff's favor against DST in the amounts listed below, with post-judgment interest.

| Case Caption | Case No. | Amount of Award |
|---|---|---|
| Sutton v. DST Systems, Inc. | 4:21-09052-NKL | $37,735.00, plus $189,827.66 in attorneys' fees and $31,718.98 in costs |

| | | |
|---|---|---|
| Howell v. DST Systems, Inc. | 4:21-09053-NKL | $29,057.22, plus $198,339.10 in attorneys' fees and $69,422.05 in costs |
| Frazier v. DST Systems, Inc. | 4:21-09054-NKL | $57,819.99, plus $144,540.92 in attorneys' fees and $71,650.71 in costs |
| Province v. DST Systems, Inc. | 4:21-09055-NKL | $209,658.58, plus $123,511.20 in attorneys' fees and $25,906.55 in costs |
| Cracraft v. DST Systems, Inc. | 4:21-09056-NKL | $154,474.59, plus $31,801.10 in attorneys' fees and $5,516.42 in costs |
| Squires v. DST Systems, Inc. | 4:21-09057-NKL | $80,052.69, plus $34,988.92 in attorneys' fees and $73,718.63 in costs |
| Goins v. DST Systems, Inc. | 4:21-09058-NKL | $29,717.97, plus $52,000.00 in attorneys' fees and $31,695.18 in costs |
| Redwing v. DST Systems, Inc. | 4:21-09060-NKL | $4,734.47, plus $31,323.20 in attorneys' fees and $5,516.42 in costs |
| Teghtmeyer v. DST Systems, Inc. | 4:21-09061-NKL | $21,187.44, plus $62,225.43 in attorneys' fees and $1,781.20 in costs |
| Zollars v. DST Systems, Inc | 4:21-09062-NKL | $28,152.00, plus $200,594.10 in attorneys' fees and $73,859.26 in costs |

| | | |
|---|---|---|
| Denny-Glynn v. DST Systems, Inc. | 4:21-09063-NKL | $416,643.91, plus $145,777.55 in attorneys' fees and $76,515.37 in costs |
| Gale v DST | 4:21-09064-NKL | $31,548.65, plus $222,900.39 in attorneys' fees and $71,660.13 in costs |
| O'Mara v. DST Systems, Inc. | 4:21-09073-NKL | $31,368.74, plus $188,517.12 in attorneys' fees and $37,792.26 in expenses, and $36,343.18 in statutory costs |
| Griem v. DST Systems, Inc. | 4:21-09074-NKL | $26,040.76, plus $73,734.30 in attorneys' fees and $39,670.00 statutory costs |
| Owens v. DST Systems, Inc. | 4:21-09075-NKL | $26,920.01, plus $22,889.66 in attorneys' fees |
| Tsang v. DST Systems, Inc. | 4:21-09076-NKL | $14,258.39, plus $25,247.16 in attorneys' fees |
| Older-Hefner v. DST Systems, Inc. | 4:21-09077-NKL | $23,882.98, plus $42,437.09 in attorneys' fees, $137.44 in expenses, and $27,976.12 in statutory costs |
| Keller v. DST Systems, Inc. | 4:21-09078-NKL | $47,672.87, plus $104, 264.87 in attorneys' fees, $72,238.89 in costs |

| | | |
|---|---|---|
| Allen v. DST Systems, Inc. | 4:21-09080-NKL | $5,692.36, plus $29,149.49 in attorneys' fees, $40,876.20 in expenses, statutory costs of $32,838.82 |
| Brooks v. DST Systems, Inc. | 4:21-09081-NKL | $26,981.87, plus $39,926.12 in attorneys' fees, and $53,025.80 in costs |
| Revis v. DST Systems, Inc. | 4:21-09082-NKL | $14,721.00, plus $241,603.60 in attorneys' fees, $27,438.90 in expenses, and $35,022.01 in statutory costs |
| Carey v. DST Systems, Inc. | 4:21-09083-NKL | $32,617.71, plus $15,496.40 in attorneys' fees and $35,235.92 in costs |
| Biggs v. DST Systems, Inc. | 4:21-09084-NKL | $9,932.34, plus $21,015 in attorneys' fees and $407.27 in costs |
| Cunningham v. DST Systems, Inc. | 4:21-09065-NKL | $44,866.00, plus attorneys' fees of $153,562.30, expenses of $45,216.78, and statutory costs of $27,892.25 |
| Calder v. DST Systems, Inc. | 4:21-09066-NKL | $140,347.98, plus attorneys' fees of $43,781.92, expenses of $45,079.19, and statutory costs of $26,470.48 |

| | | |
|---|---|---|
| Bolch v. DST Systems, Inc. | 4:21-09067-NKL | $23,953.32, plus attorneys' fees of $156,478.98 expenses of $40,846.82, and statutory costs of $34,875.98 |
| Cook v. DST Systems, Inc. | 4:21-09068-NKL | $17,509.55, plus attorneys' fees of $152,200.79, expenses of $40,846.82, and statutory costs of $34,875.98 |
| Harper v. DST | 4:21-09069-NKL | $35,162.05, plus attorneys' fees of $205,039.10, and expenses and statutory costs of $77,219.94 |
| Justus v. DST Systems, Inc. | 4:21-09070-NKL | $3,713.77, plus attorneys' fees of $42,919.42, expenses of $45,079.19, and costs of $26,470.48 |
| Inman v. DST Systems, Inc. | 4:21-09071-NKL | $35,254.63, plus attorneys' fees of $206,796.60 and expenses and statutory costs of $77,219.95 |
| Breckenridge-Mitchell v. DST Systems, Inc., | 4:21-09072-NKL | $22,438.68, plus $202,614.10 in attorneys' fees and $77,219.95 in expenses and statutory costs. |
| Dunn v. DST Systems, Inc. | 4:21-09085-NKL | $3,973.19, plus $1,589.28 in attorneys' fees |

| | | |
|---|---|---|
| Berkstresser v. DST Systems, Inc. | 4:21-09086-NKL | $13,662.75, plus $72,549.42 in attorneys' fees, expenses of $40,693.19, and statutory costs of $36,668.86 |
| Jackson v. DST Systems, Inc. | 4:21-09087-NKL | $6,343.76, plus $85,516.67 in attorneys' fees, expenses of $45,274.04, and statutory costs of $25,738.80 |
| Mason v. DST Systems, Inc. | 4:21-09088-NKL | $18,013.97, plus $7,205.56 in attorneys' fees and statutory costs of $1,000 |
| Brown v. DST Systems, Inc. | 4:21-09089-NKL | $1,252.09, plus $15,485.00 in attorneys' fees and statutory costs of $3,000.00 |
| Rutkowski v. DST Systems, Inc. | 4:21-00705-NKL | $14,871.79, plus $74,736.92 in attorneys' fees, expenses of $40,693.19, and statutory costs of $36,668.86 |
| Dunbar v. DST Systems, Inc. | 4:21-09079-NKL | $12,158.58, plus $67,507.00 in attorneys' fees and $46,126.00 in costs/expenses |

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: October 20, 2021
Jefferson City, Missouri