## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THERESA HURSH,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09017 |
| MARIA ALVARADO,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09018 |
| JASON HAMILTON,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09019 |
| JOHN OSWALD,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09020 |
| STEPHANIE MCMILLIN,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09021 |
| MELODY MISER,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09023 |

Case 4:21-cv-00705-NKL   Document 29   Filed 03/31/23   Page 1 of 104

| | |
|---|---|
| TRAVIS SCHULTE,<br><br>         Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>         Defendant. | Case No. 4:21-mc-09024 |
| ANGIE MANSKE,<br><br>         Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>         Defendant. | Case No. 4:21-mc-09025 |
| KATHERINE GILLESPIE,<br><br>         Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>         Defendant. | Case No. 4:21-mc-021-9026 |
| FRED QUATROCKY,<br><br>         Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>         Defendant. | Case No. 4:21-mc-09027 |
| KENT CLOWER,<br><br>         Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>         Defendant. | Case No. 4:21-mc-09028 |
| MATTHEW AXTON,<br><br>         Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>         Defendant. | Case No. 4:21-mc-09029 |

Case 4:21-cv-00705-NKL   Document 29   Filed 03/31/23   Page 2 of 104

| | |
|---|---|
| GARY BLANCK,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09030 |
| BERNARD BILLESBACH,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09032 |
| LISA KUDRICK,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09033 |
| PERCY PAYNE,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09034 |
| JANET KANNARD,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09035 |
| VANESSA BROSS,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09036 |

| | |
|---|---|
| PATRICK WILLIAMS,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09037 |
| SCOTT YUNGEBERG,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-mc-09038 |
| DAVID EISENBERGER,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-cv-09022 |
| KIVA MILLER,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-cv-09031 |
| ANNE ARNOLD,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-cv-09042 |
| CARYL SUMMERS,<br><br>              Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>              Defendant. | Case No. 4:21-cv-09043 |

| | |
|---|---|
| CINDY GORDANIER,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09044 |
| JASON GREEN,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09045 |
| KELLY HIGHFILL,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09046 |
| KOLE SCARBROUGH,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09047 |
| MATT KOLAKOWSKI,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09048 |
| MICHAEL BRANDT,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09049 |

| | |
|---|---|
| MITCHELL SCHWARTZ,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-cv-09050 |
| MOLLY EATON,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-cv-09051 |
| JASON SUTTON,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-cv-09052 |
| JANET HOWELL,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-cv-09053 |
| BARNEY FRAZIER,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-cv-09054 |
| LOREN PROVINCE,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-cv-09055 |

| | |
|---|---|
| LISA CRACRAFT,<br><br>          Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>          Defendant. | Case No. 4:21-cv-09056 |
| LARRY SQUIRES,<br><br>          Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>          Defendant. | Case No. 4:21-cv-09057 |
| STACEY GOINS,<br><br>          Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>          Defendant. | Case No. 4:21-cv-09058 |
| BENJAMIN REDWING,<br><br>          Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>          Defendant. | Case No. 4:21-cv-09060-NKL |
| TERRY TEGHTMEYER,<br><br>          Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>          Defendant. | Case No. 4:21-cv-09061-NKL |
| BRUCE ZOLLARS,<br><br>          Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>          Defendant. | Case No. 4:21-cv-09062-NKL |

| | |
|---|---|
| LINDA DENNY-GLYNN,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09063-NKL |
| KIM GALE,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No.: 4:21-cv-09064-NKL |
| BARBARA O'MARA,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09073-NKL |
| DANA GRIEM,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09074-NKL |
| KAREN OWENS,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09075-NKL |
| WAIYEE JULEY TSANG,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09076-NKL |

| | |
|---|---|
| JACKIE OLDER-HEFNER,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09077-NKL |
| AMY KELLER,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09078-NKL |
| BRUCE ALLEN,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09080-NKL |
| RUSS BROOKS,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09081-NKL |
| KRISTY HILL REVIS,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09082-NKL |
| TINA CAREY,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-cv-09083-NKL |

| | |
|---|---|
| PHILLIP BIGGS,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-cv-09084-NKL |
| MARK CUNNINGHAM,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-mc-09065-NKL |
| LINDA CALDER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-mc-09066-NKL |
| KIM BOLCH,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-mc-09067-NKL |
| JOSHUA COOK,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-mc-09068-NKL |
| JOHN P. HARPER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-mc-09069-NKL |

x

| | |
|---|---|
| DIANA CONNELLY JUSTUS<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09070-NKL |
| KEELY INMAN,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09071-NKL |
| JONATHAN BRECKENRIDGE-<br>MITCHELL (f/k/a JONATHAN<br>KIMES),<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-mc-09072-NKL |
| MATT DUNN,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No.: 4:21-cv-09085-NKL |
| ROB BERKSTRESSER,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No.: 4:21-cv-09086-NKL |
| CAMILLE JACKSON,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No.: 4:21-cv-09087-NKL |

| | |
|---|---|
| MERI ANN MASON,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No.: 4:21-cv-09088-NKL |
| STEPHANIE BROWN,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No.: 4:21-mc-09089-NKL |
| NICK RUTKOWSKI,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No.: 4:21-cv-00705-NKL |
| DENNIS DUNBAR,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No.: 4:21-mc-09079-NKL |
| JEFF CARROLL,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09090-NKL |
| JAMES DuCHARME,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09091-NKL |

| | |
|---|---|
| JAMES ROBINSON,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09092-NKL |
| JACQUI JENSEN,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09093-NKL |
| KEVIN MOLL<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09094-NKL |
| BECKY CLYMA,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09095-NKL |
| STACEY BELL,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09096-NKL |
| LEANN GARVEY,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09097-NKL |

| | |
|---|---|
| DWAYNE EVANS,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09098-NKL |
| KIM SMYLY,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09099-NKL |
| SUSAN JONES,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09100-NKL |
| DIANE BEHNEY,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09101-NKL |
| STEVEN STURGEON,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09102-NKL |
| TIMOTHY LYONS,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09103-NKL |

| | |
|---|---|
| LARRY KINCAID,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09104-NKL |
| JOHN McCONNELL,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09105-NKL |
| TOM COULTER,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09106-NKL |
| PHILIP NEFF,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09107-NKL |
| ROBERT SHEEDERS,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09108-NKL |
| PAUL SCHENK,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09109-NKL |

| | |
|---|---|
| LESLIE WIGGINS,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09110-NKL |
| CRAIG SCHUERMAN,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09111-NKL |
| CHRIS CARTER,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09112-NKL |
| MITCH VANKAM,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09113-NKL |
| JOHN SCHULTZ,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09114-NKL |
| MELISSA SIMPKINS,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-09115-NKL |

| | |
|---|---|
| MARK SALYER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09116-NKL |
| CHELLE ADKINS,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09117-NKL |
| MICHAEL BRUMMEL,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09118-NKL |
| ROBERT TRITT,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09119-NKL |
| JOAN HORAN,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09120-NKL |
| WILLIAM HANCOCK,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09121-NKL |

| | |
|---|---|
| SANDY PEOPLES,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09122-NKL |
| ROB HYBERGER,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09123-NKL |
| DIANNA HOOVER,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09124-NKL |
| JEFF HARRIS,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09125-NKL |
| STEFAN KOLEV,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09126-NKL |
| DOUG STALCUP,<br><br>     Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>     Defendant. | Case No. 4:21-09127-NKL |

| | |
|---|---|
| JOE FILARDO,<br><br>                 Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                 Defendant. | Case No. 4:21-09128-NKL |
| SALLY SCHLINTZ,<br><br>                 Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                 Defendant. | Case No. 4:21-09129- NKL |
| CHARLES SCHELL,<br><br>                 Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                 Defendant. | Case No. 4:21-09130-NKL |
| DON WOEHRMAN,<br><br>                 Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                 Defendant. | Case No. 4:21-09131-NKL |
| SARA FOGT,<br><br>                 Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                 Defendant. | Case No. 4:21-09132-NKL |
| WANDA TYNER,<br><br>                 Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                 Defendant. | Case No. 4:21-09134-NKL |

| | |
|---|---|
| GAIL O'NEAL,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09135-NKL |
| MARY LOU KAUFMANN,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09136-NKL |
| RODNEY KANE,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09137-NKL |
| BRUCE GOINS,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09138-NKL |
| SHELLEY McMULLIN,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09139-NKL |
| BRENT LARSON,<br><br>                    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                    Defendant. | Case No. 4:21-09140-NKL |

| | |
|---|---|
| THERESA BYERS,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-09141-NKL |
| ANNE BEAULIEU,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-09142-NKL |
| SCOTT READY,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-09143-NKL |
| STEPHEN BAY,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-09144-NKL |
| BARRY KREVITZ,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-09145-NKL |
| DONALD BELINGER,<br><br>                Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>                Defendant. | Case No. 4:21-09146-NKL |

| | |
|---|---|
| DARREN KINNEY,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09147-NKL |
| MICHAEL OLTMANNS,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09148-NKL |
| MARK BAKER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09149-NKL |
| PHIL KLASSEN,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09150-NKL |
| DOUG BLACK,<br><br>    Plaintiff,<br><br>V.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09151-NKL |
| JANICE CUBBAGE,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09152-NKL |

| | |
|---|---|
| DEBRA PAYNE,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09154-NKL |
| PEGGY LEINEKE,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09155-NKL |
| JUDY VELASCO,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09156-NKL |
| GARY ALTER,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09157-NKL |
| JUREE BARKLEY,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09158-NKL |
| TOM BUECHEL,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-09159-NKL |

| PATRICIA MERGEN, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 4:21-09161-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

| JOE CAMPFIELD, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 4:21-09160 |
| DST SYSTEMS, INC., | |
| Defendant. | |

| KEVIN BOSTICK, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 4:21-09133-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

| SARAH MURPHY, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 4:21-09153-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

| MELANIE DILLON, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 4:21-09162-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

| RYAN MAGATHAN, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 4:21-09163-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

| | |
|---|---|
| ALICE WRIGHT,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09164-NKL |
| BRAD MCMILLIN,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09165-NKL |
| ALICIA COSTANZO,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09166-NKL |
| THOMAS KANE,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-09167-NKL |
| JACQUELINE DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9168-NKL |
| GREG BEDELL,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9169-NKL |

| | |
|---|---|
| DAVE LOVETERE,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9170-NKL |
| KAREN MUSTAIN,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant | Case No. 4:21-9171 |
| JOSH RHODES,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9172 |
| HARRY CROCKER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9174-NKL |
| LYNN SAROWSKI,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9175-NKL |
| ROGER POYNTER,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9176-NKL |

| | |
|---|---|
| THOMAS EDLUND,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant. | Case No. 4:21-9177-NKL |
| MICHAEL GILLESPIE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant | Case No. 4:21-9178-NKL |
| PATRICK LAWLESS,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant | Case No. 4:21-9179-NKL |
| DEBBIE KALLENBERGER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant | Case No. 4:21-9180-NKL |
| ROBERT CONKLIN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant | Case No. 4:21-9181-NKL |
| LEANNE TRIMBLE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant | Case No. 4:21-9182-NKL |

| | |
|---|---|
| MICHAEL GIRO,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant | Case No. 4:21-9184-NKL |
| TRACY PRINCE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant | Case No. 4:21-9173-NKL |
| JILL McMANUS NEWTAL,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant. | Case No. 4:21-9185-NKL |
| TRACY ALDEN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant. | Case No. 4:21-9186-NKL |
| MICHAEL SPELLMAN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant. | Case No. 4:21-9188-NKL |
| DELLA GRAYBEAL,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>　　　　　　Defendant. | Case No. 4:21-9189-NKL |

| | |
|---|---|
| JOSEPH KENNEY,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9190-NKL |
| BETH RUDOLPH,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9191-NKL |
| MARGARET PICHELMAN GOFORTH,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9192-NKL |
| JENNIFER MCCORD,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9193-NKL |
| LESLIE RILEY,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9194-NKL |
| PARMINDERJIT SINGH,<br><br>    Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>    Defendant. | Case No. 4:21-9195-NKL |

| | |
|---|---|
| MARTHA SABIN,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-9196-NKL |
| STEPHANIE STEVENS,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-9197-NKL |
| KATHLEEN SARETTE,<br><br>               Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>               Defendant. | Case No. 4:21-9198-NKL |

**ORDER**

xxx

Pending before the Court are motions by 177 plaintiffs (the "Confirmation Plaintiffs") to confirm individual arbitration awards. Also pending is DST's Motion to Dismiss, Transfer, Stay, or Vacate those awards.[1] The Court previously granted the Motions to Confirm, but the Eighth Circuit vacated and remanded for reconsideration after the Supreme Court's decision in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022). *Badgerow* significantly narrowed federal courts' jurisdiction under the Federal Arbitration Act (the "FAA") to confirm or vacate an arbitration award. After *Badgerow*, a federal court can no longer "look through" to the substantive dispute that was before the arbitrators, here, the ERISA claim, to find federal-question jurisdiction to confirm or vacate an arbitration award. The Supreme Court explained that, though the claims at issue "may have originated in the arbitration of a federal-law dispute,"

> the underlying dispute is not now at issue. Rather, the application concerns the contractual rights provided in the arbitration agreement, generally governed by state law. And adjudication of such state-law contractual rights—as this Court has held in addressing a non-arbitration settlement of federal claims—typically belongs in state courts."

*Id*. at 1321–22.

The Eighth Circuit on appeal concluded that this Court lacked federal question jurisdiction to confirm the 177 arbitrations under either *Badgerow* or *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*., 545 U.S. 308, 312 (2005), because the Motions to Confirm do not "relate to" ERISA. *Hursh v. DST Sys., Inc.*, 54 F.4th 561, 565 (8th Cir. 2022). The Eighth Circuit remanded for this Court to determine, as necessary, whether it has federal diversity jurisdiction over any of the Motions to Confirm and whether transfer to the Southern District of

---

[1] DST did not file an actual motion. Instead, it filed Suggestions in Support of its Motion to Dismiss, Transfer, Stay, or Vacate the arbitration awards. *See, e.g., Hursh v. DST Systems, Inc.*, No. 21-cv-9017 (W.D. Mo.), Doc. 16. The Court treats DST's Suggestions as a motion to dismiss, transfer, stay, or vacate.

New York is appropriate, noting that "the ongoing proceedings in *Ferguson* may provide the parties a transferee court with subject matter jurisdiction that can resolve the entire controversy, including the transferred claims, by settlement or otherwise, in a manner that is fair and more efficient than keeping some Plaintiffs' claims pending in the Eighth Circuit and leaving the remaining arbitration claimants to seek confirmation in state court." *Id.* at 567.

For the reasons discussed below, the Court DENIES DST's Motion to Transfer these cases to the Southern District of New York. As to the 55 cases in which there is diversity jurisdiction, the Court GRANTS the Confirmation Plaintiffs' Motions to Confirm and DENIES DST's Motions to Vacate. For lack of subject matter jurisdiction, the Court grants DST's Motion to Dismiss the remaining 122 cases.

The Court denies any remaining requests by the Parties.

## I.     BACKGROUND[2]

The dispute that led to these confirmation cases arose from DST's failure to monitor and ensure the rebalancing of overly concentrated investments in its defined contribution, 401K Profit Sharing Plan (the "Plan"). On January 13, 2017, Mr. James Ducharme, a participant in the Plan, filed a putative class action in the United States District Court for the Western District of Missouri, seeking to recover damages on behalf of the Plan for DST's fiduciary breach. In response, DST filed a motion to compel arbitration and to dismiss Mr. Ducharme's lawsuit. On June 23, 2017, the Honorable Brian C. Wimes granted DST's motion to dismiss. DST argued, and Judge Wimes agreed, that the ERISA fiduciary-breach claim fell within the scope of the DST Output Arbitration

---

[2] The Court treats the cases captioned above as a group because most of the legal and factual issues are similar. Where there are relevant differences, the Court has so specified.

For additional background concerning these cases, *see Hursh v. DST Sys., Inc.*, No. 21-cv-9017, 2021 WL 4526849 (W.D. Mo. Oct. 4, 2021).

Program and Agreement with Associate Opt Out Right (the "DST Output Arbitration Agreement") contained in DST's employee handbook. *Ducharme v. DST Sys.*, Inc., No. 17-CV-0022-BCW (W.D. Mo.), Doc. 28-6; *see also Ducharme v. DST Sys.*, Inc., No. 17-CV-0022-BCW, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017). Judge Wimes also found that Mr. Ducharme could bring his claim "individually." *Ducharme*, No. 17-cv-0022-BCW, Doc. 59, Tr. 27:23-24.

On June 18, 2018, DST sent a notice to all Plan participants bound by an arbitration agreement explaining that a former employee had initiated an arbitration relating to the Plan and advising each participant that he or she "may initiate an individual arbitration proceeding under the Arbitration Program by submitting a written request" to DST. *See e.g.*, *Hursh*, No. 21-cv-9017, Doc. 1-6. Hundreds of Plan participants accepted DST's invitation, resulting in at least 214 arbitration awards in favor of individual Plan participants, including the 177 awards pending here.

Meanwhile, in September 2017, months after the *Ducharme* case was dismissed upon DST's motion, a participant in the Plan who was not a party to any arbitration agreement brought a putative class action in the Southern District of New York alleging the same breach of fiduciary duty that was at issue in *Ducharme*.[3] *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-cv-6685-ALC (S.D.N.Y.). The plaintiffs in *Ferguson* did not file a motion for class certification until April 2020. That motion expressly stated that DST did not oppose the motion. *Ferguson*, No. 17-cv-6685-ALC, Doc. 126, p. 2 n.1. Indeed, on July 29, 2020, DST affirmatively supported the motion for class certification. *See, e.g., id.*, Doc. 185 (DST's brief asking the *Ferguson* court to grant the class-certification motion). The Confirmation Plaintiffs opposed the motion for class certification.

---

[3] The DST Output Arbitration Program and Agreement had an opt-out provision, and some Plan participants opted out.

On March 4, 2021, in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021), the Second Circuit found that the DST Output Arbitration Agreement did not cover claims for a fiduciary breach under ERISA § 502(a)(2). Therefore, the Second Circuit held, the parties were not compelled to arbitrate. At the time of that decision, DST was not a party in *Cooper*, nor were any of the Confirmation Plaintiffs nor the Plan participants who have already had their arbitration awards confirmed in this Court.

By June 2021, before a class was ever certified in *Ferguson*, the Western District of Missouri had confirmed at least six of the arbitration awards arising from DST's breach of its fiduciary obligations to the Plan. DST expressly stated that it "d[id] not oppose" confirmation of those awards. *Parrot v. DST Sys., Inc.*, No. 21-mc-9012-NKL (W.D. Mo.), Doc. 3, p. 1; *Murphy v. DST Sys., Inc.*, No. 21-mc-0174-BCW (W.D. Mo.), Doc. 8, p. 1; *see also Keeton v. DST Sys., Inc.*, No. 21-mc-9006-BCW (W.D. Mo.), Doc. 3 ("DST does not oppose Plaintiff's Motion." (citation omitted)); *Mayberry v. DST Sys., Inc.*, No. 21-mc-9007-BCW (W.D.Mo.), Doc. 3 (same); *O'Brien v. DST Sys., Inc.*, No. 21-mc-9008-BCW (W.D.Mo.), Doc. 4 (same); *Quast v. DST Sys., Inc.*, No. 21-MC-9009-BCW (W.D.Mo.), Doc. 4 (same).

On August 17, 2021, the *Ferguson* court certified the Rule 23(b)(1) no-opt-out class that DST and the class representatives had requested. That class includes each Confirmation Plaintiff currently before this Court, with one exception,[4] as well as those Plan participants whose arbitration awards were confirmed by this Court before any class was certified in New York.

---

[4] Confirmation Plaintiff Joan Horan served as a fiduciary of the Plan until December 6, 2010, and therefore is excluded from the class certified in *Ferguson*. *See Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6685-ALC, 2021 WL 3667979, *2 (S.D.N.Y. Aug. 17, 2021) ("*Ferguson Class Cert.*") (excluding "Defendants and all other individuals who are or have ever . . . served as fiduciaries of the DST Plan during the Class Period," defined as March 14, 2010 through July 31, 2016).

*Ferguson Class Cert.*, 2021 WL 3667979. It even included at least one Confirmation Plaintiff whose damages award had already been paid by DST. *See Bay v. DST Sys., Inc.*, No. 21-cv-09144, Doc. 1, p. 1 n.1 (noting that DST had already paid damages award of $54,979.92).

The *Ferguson* court stated, "[w]hile the Arbitration Claimants[5] argue that they have a right to arbitrate, the Second Circuit as well as this Court have found that the claims at issue here are not covered by the arbitration agreement." *Ferguson Class Cert.*, 2021 WL 3667979, at *7.[6] The class certification decision in *Ferguson* also noted secondarily that Second Circuit precedent requires parties suing on behalf of an ERISA plan "to demonstrate their suitability to serve as representatives of the interests of other plan stakeholders," and it was not clear "how an employee can bring an ERISA fiduciary claim that satisfies [the *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006)] adequacy requirement, while concurrently complying with the agreement." *Id.* at *4 (quotation marks omitted).

Not until November 18, 2021, did the *Ferguson* court enjoin class members from prosecuting any claim related to or arising from the claims before that court in any other forum. *Ferguson*, No. 17-cv-6685-ALC, Doc. 335. The *Ferguson* court subsequently clarified, in rejecting a request by the "Arbitration Claimants" to stay the injunction pending appeal, that the injunction extended not only to "arbitrations concerning class members' individual claims," but also actions to confirm awards won in those arbitrations . . . ." *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6685-ALC, 2022 WL 420763, at *3 (S.D.N.Y. Feb. 3, 2022). The

---

[5] The term "Arbitration Claimants" as used in *Ferguson* includes, among others, the 177 Confirmation Plaintiffs before this Court as well as the Plan participants whose arbitration awards had already been confirmed by this Court before class certification in *Ferguson*.

[6] DST was not a party in *Cooper* by the time the Southern District of New York resolved Ruane's motion to compel arbitration in that case. Likewise, none of the 177 Confirmation Plaintiffs was a party in *Cooper*.

Second Circuit rejected the Arbitration Claimants' request to stay the injunction pending appeal. *Ferguson*, No. 17-cv-6685-ALC, Doc. 392. The Arbitration Claimants' appeal from the *Ferguson* injunction remains pending. Since the *Ferguson* injunction was entered, and presumably in compliance with that order, no motion to confirm has been filed by any Plan participant. All confirmation motions pending before this Court were filed before the injunction issued.

Between October 4 and December 21, 2021, this Court granted 177 Motions to Confirm. DST appealed each order confirming an arbitration award. While the confirmation orders were on appeal in the Eighth Circuit, the Supreme Court decided *Badgerow*. The Eighth Circuit then vacated this Court's confirmation orders and remanded "for determination of transfer and subject matter jurisdiction issues, to the extent necessary, and for other further proceedings not inconsistent with this opinion the district court finds appropriate." *Hursh*, 54 F.4th at 567.

## II.    DST'S REQUEST TO TRANSFER

DST has moved to transfer the 177 pending Motions to Confirm so that they may be, in DST's words, "subsumed" into the *Ferguson* class action in the Southern District of New York. *Hursh*, 4:21-cv-9017-NKL (W.D. Mo.). Doc. 16, at 16. DST seeks transfer under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1631.[7] Because there is substantial overlap between § 1404(a) and § 1631, the Court will not address the statutes separately.[8] Rather, because the Eighth Circuit particularly highlighted it, the Court will focus on 28 U.S.C. § 1631.

---

[7] DST also sought dismissal of the confirmation actions. *See, e.g., Hursh*, No. 21-9017, Doc. 16, p. 7 ("[I]f this case is not dismissed, this Court has the authority to and should transfer this action to the Southern District of New York . . . ."); *id.* p. 15 ("Absent dismissal, the Court should transfer this action to the Southern District of New York . . . ."). DST sought transfer only "in the alternative." *Id.* p. 21.

[8] The Court recognizes that, by its terms, Section 1631 applies only when there is no jurisdiction and Section 1404(a) applies when there is jurisdiction. This means that Section 1631 does not apply to the cases over which the Court has diversity jurisdiction, but Section 1404(a) does.

§ 1631 provides:

"Whenever a civil action is filed in a court …and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court… in which the action … could have been brought at the time it was filed . . . ."

28 U.S.C. § 1631.

Because § 1631 makes "a want of jurisdiction" a threshold issue, the Court will first determine whether the Court has jurisdiction over any of the pending motions. If the Court lacks jurisdiction over some of the pending motions, it then must consider whether the Southern District of New York has jurisdiction, and if so, determine whether it is in the interest of justice to transfer the cases in which there is no federal subject matter jurisdiction to the Southern District of New York rather than to dismiss them.

### A. Whether the Court Has Jurisdiction to Resolve the Motions to Confirm or to Vacate the Awards

#### 1. Federal Question Jurisdiction

Each Confirmation Plaintiff first argues that, despite *Badgerow*, this Court still has federal question jurisdiction over all the Motions to Confirm. Plaintiffs cite *Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, No. 21-CV-8330 (LAK), 2022 WL 2209349, at *3 (S.D.N.Y. June 20, 2022), for the proposition that federal law—not state contract law—governs because the Parties' agreement to arbitrate is contained in ERISA Plan documents. In that case, Judge Kaplan found federal question jurisdiction when confirming an arbitration award, relying on Second and Seventh Circuit precedent finding that the interpretation of ERISA arbitration provisions is governed by federal common law. However, the Confirmation Plaintiffs

---

Nonetheless, for clarity and brevity, and because both statutes require that transfer be "in the interest of justice," the Court will discuss overlapping transfer issues only once.

presented that case, and those arguments, to the Eighth Circuit on appeal through supplemental letters. Despite being presented with those arguments, the Eighth Circuit unambiguously held that "the district court lacks federal question subject matter jurisdiction under the FAA or 28 U.S.C. § 1331" and remanded, if necessary, for a "determination of whether the court has subject matter diversity jurisdiction under 28 U.S.C. § 1332(a) in each case." *Hursh*, 54 F.4th at 565. As the issue was both considered and rejected by the Eighth Circuit, this Court may not revisit the issue on remand.[9] This Court lacks federal question jurisdiction over each of the Confirmation Plaintiffs' Motions.

## 2. Whether This Court Has Diversity Jurisdiction

As already mentioned, the Eighth Circuit specifically remanded for this Court to assess whether any of the Confirmation Plaintiffs could meet the requirements of diversity jurisdiction, which are: (1) diversity of citizenship and (2) an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332.

The Parties agree that 55 cases satisfy the requirements of diversity. *See, e.g.*, *Hursh*, No. 21-9017, Doc. 35. The Court has reviewed the factual allegations in the record and independently

---

[9] The Confirmation Plaintiffs seek leave to amend the Motions to Confirm to make clear that the relevant arbitration provision is contained within the Plan Documents, rather than DST's employment agreement alone. If the Court could address the issue, it would permit amendment of the pleadings as district courts routinely do absent misconduct or lack of diligence or futility, particularly in cases where, as here, there has been a pertinent change in the law. However, the Eighth Circuit has foreclosed that possibility. If the Eighth Circuit believed additional factual allegations could have cured the identified jurisdictional defects, it could have permitted amendment on appeal. 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). Instead, the Eighth Circuit used the word "Moreover" in rejecting the Confirmation Plaintiffs' arguments regarding the pleadings, which indicates that its conclusion regarding federal question jurisdiction was independent from any holding that Plaintiff's specific factual allegations were insufficient. *Hursh*, 54 F.4th at 564.

finds that the requirements of diversity jurisdiction have been met in each of those 55 cases, which are listed in Appendix A.[10]

### B. Whether the Court Should Transfer Any of the Cases to the Southern District of New York

Having resolved the issue of its own jurisdiction, the Court turns to the question of whether § 1631 requires the Court to transfer to the Southern District of New York the 122 cases over which it lacks diversity jurisdiction. The same considerations will inform whether the Court should transfer under § 1404(a) the 55 remaining cases in which diversity jurisdiction exists.

#### 1. Whether These Cases Could Have Been Brought in the Southern District of New York

Just as this Court must have subject matter jurisdiction to confirm or vacate the Confirmation Plaintiffs' awards, so too must the Southern District of New York.[11] In light of

---

[10] Although this issue was not addressed by the parties, the Court considered the amount in controversy to be the total amount awarded by the arbitrators, not the amount claimed by the Confirmation Plaintiffs before the arbitrators. Especially after *Badgerow*, the "demand" method used in some circuits—by which courts "look through" to the amount demanded by the claimant entering arbitration—seems foreclosed. Badgerow has made clear that confirmation proceedings are entirely separate from the underlying arbitration. Accordingly, the Court must look to the amount in controversy in the proceeding now before it—the amount of the arbitration award—and nothing more. *Dyrdal v. Enbridge (U.S.), Inc.*, 738 F. Supp. 2d 927, 931 (D. Minn. 2010) (discussing the merits of the "demand" method, but reasoning that the amount in controversy in a confirmation proceeding is better considered to be the value of the underlying arbitration award).

[11] DST argues that this Court need not determine whether these cases could have been filed in the Southern District of New York before transferring there, that this question can properly be deferred to that court. *Hursh*, No. 21-9017, Doc. 37, p. 6 (citing *Emory ex rel. Wal-Mart Stores, Inc. v. Duke*, No. 12-cv-00404, 2012 WL 13027254 (E.D. Ark. Aug. 2, 2012)). The Court is not persuaded. While a court may properly rule on a transfer motion under Section 1404(a) prior to addressing its own subject matter jurisdiction, §§ 1404(a) and 1631 both require a finding that the transferred action could have been filed in the transferee court. 28 U.S.C. § 1404(a) (permitting transfer to "any other district or division where [a case] might have been brought or to any district or division to which all parties have consented"); 28 U.S.C. § 1631 (allowing transfer to "any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed"). Insofar as *Emory* suggests that a district court may read that requirement out of the

*Badgerow*, the Southern District of New York does not have an independent basis for federal question jurisdiction. The question remains whether it would have had supplemental jurisdiction at the time the Motions to Confirm were filed in the Western District of Missouri.

Supplemental jurisdiction allows federal courts to hear claims that do not otherwise satisfy the requirements of federal jurisdiction if they "are so related to claims in the action within [the federal court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A federal court will have supplemental jurisdiction over a state law claim if that claim shares a common nucleus of operative fact with a claim within the court's original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "[C]laims derive from a common nucleus of operative fact if the 'claims are such that [the party asserting the claims] would ordinarily be expected to try them all in one judicial proceeding.'" *OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 350 (8th Cir. 2007) (quoting *Gibbs*, 383 U.S. at 725). Federal courts "have traditionally asked whether the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation marks omitted).

DST argues that the pending class action in *Ferguson* is enough to grant the Southern District of New York jurisdiction over the Motions to Confirm because the "Plaintiffs' substantive claims are materially identical to those pending in *Ferguson*, and their efforts to confirm arbitration awards bear directly upon the claims now pending before that court . . . ." Doc. 27, p. 14. But the Supreme Court made clear in *Badgerow* that confirming or vacating an arbitration award presents

_____

statute, the Court, seeing no support for that assertion, and in light of the express statutory language to the contrary, respectfully disagrees.

a legal controversy distinct from the controversy that the arbitrators resolved in issuing the underlying award. "[T]he [parties] are now contesting not the legality of [the defendant's conduct] but the enforceability of an arbitral award." *Badgerow*, 142 S. Ct. at 1316. Following *Badgerow*, as the Eighth Circuit observed, it is state contract law, not ERISA, that underlies confirmation. *Hursh*, 54 F.4th at 564–65.

Further, in holding that ERISA does not represent a "significant federal issue" for the *Grable* analysis, the Eighth Circuit seemed to indicate that the confirmation proceedings have no substantive connection with ERISA. *Id.* at 565. As such, the Motions cannot form part of the same ERISA controversy pending in the Southern District of New York.

The Southern District of New York itself has acknowledged that confirmation does not form part of the same Article III case or controversy as the *Ferguson* plaintiffs' claims by making clear that it will not address the status of the arbitration awards until after the ERISA claims are settled or tried. *See Ferguson*, No. 17-cv-6685-ALC, Doc. 27-1, p. 6. If the Motions to Confirm formed part of the same case or controversy as the substantive ERISA claims, one would expect them to be addressed concurrently with the substantive claims in *Ferguson*.[12]

DST directs the Court to several cases in which courts have exercised supplemental jurisdiction over confirmation proceedings. However, those cases were decided before *Badgerow*, which has altered the analysis. The district court in *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, for example, could not now look through to the underlying dispute before the arbitrators to evaluate whether the parties' FAA motions and the patent infringement case in

---

[12] Indeed, as the Court explains below, the Confirmation Plaintiffs' ERISA claims merged with their arbitration awards when the awards became final. Absent vacatur, the Confirmation Plaintiffs have no pending ERISA claims, here or in the Southern District of New York.

federal court derived from a common nucleus of operative facts. 986 F. Supp. 231, 236 (S.D.N.Y. 1997), *aff'd in relevant part*, 157 F.3d 174 (2d Cir. 1998).[13]

Thus, the Court concludes, given *Badgerow's* analysis, that the Southern District of New York would not have had supplemental subject matter jurisdiction over these Motions at the time they were filed in this Court.

Nonetheless, the Southern District of New York may have ancillary enforcement jurisdiction. Ancillary enforcement jurisdiction exists as "a [separate] creature of the common law . . . governed by caselaw." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1318 (10th Cir. 2022); *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011). Its primary purpose is to give a court "power to conduct proceedings necessary to protect and give effect to its judgments." *Sandlin v. Corp. Interiors Inc.*, 972 F.2d 1212, 1216 (10th Cir. 1992). The Court shall assume that the Southern District of New York would have ancillary jurisdiction over these motions.[14]

---

[13] DST also cites *Lefkovitz v. Wagner*, 291 F. Supp. 2d 764, 768 (N.D. Ill. 2003), *aff'd*, 395 F.3d 773 (7th Cir. 2005), and *Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres*, No. 17-CV-00289, 2019 WL 6481528, at *1 (M.D. Pa. Oct. 8, 2019) *aff'd* 834 F. App'x 752, 759 (3d Cir. Oct. 28, 2020). Those cases are distinguishable. Supplemental jurisdiction over the FAA proceedings in *Lefkovitz* was based on factual and legal similarities between one FAA proceeding over which the federal court had original jurisdiction and two over which it did not. Because all three claims were resolved in one consolidated arbitration and challenged the conduct of the same arbitrator, supplemental jurisdiction was proper. In *Transcon.*, supplemental jurisdiction to vacate a so-called arbitration award (which was determined to be fraudulent) was proper because the arbitration agreement and award resulted directly from the district court's order requiring the defendant to pay plaintiff's attorneys' fees. Neither decision suggests that the Southern District of New York has supplemental jurisdiction here.

[14] DST argues that venue is proper in the Southern District of New York because the Plan's investments were managed in New York. The Court has doubts as to whether venue would be proper in the Southern District of New York in the aftermath of *Badgerow* given that the arbitrations occurred in Missouri between parties who are not based in New York. There is little or no connection between the arbitration award and the Southern District of New York. Nonetheless, for the purpose of this order, the Court shall assume that, under §1391(b)(2), venue would be proper in the Southern District of New York should it have subject matter jurisdiction to address the pending Motions.

### 2. The Interest of Justice

Even if the Southern District of New York has jurisdiction and venue to decide the merits of these motions, the interests of justice weigh against transfer. The decision regarding the interests of justice "lies within the discretion of the trial court." *Gunn v. U.S. Dep't of Agric.*, 118 F.3d 1233, 1240 (8th Cir. 1997). The Eighth Circuit has provided little concrete guidance on how to determine the interests of justice under 28 U.S.C. § 1631, but courts that have applied §1631 generally consider whether transfer would create: (1) an unfair advantage to the party seeking transfer, (2) an unfair burden to the party opposing transfer, or (3) an undue burden on the judicial system. *See Britell v. United States*, 318 F.3d 70, 74 (1st Cir. 2003.) ("Given the language of the statute, we are confident that Congress wanted courts to exempt from the transfer mandate those cases in which transfer would unfairly benefit the proponent, impose an unwarranted hardship on an objector or unduly burden the judicial system (citing *Janicki Logging Co. v. Mateer,* 42 F.3d 561, 566–67 (9th Cir.1994); *Phillips v. Seiter,* 173 F.3d 609, 610–11 (7th Cir. 1999)); *see also* Jeffrey W. Tayon, *The Federal Transfer Statute: 28 U.S.C. S 1631*, 29 S. Tex. L. Rev. 189, 220 (1987) (noting that courts considering transfer under § 1631 look to "the conduct of the parties, the plight of the parties, the public interest, and/or the proper administration of the judicial system"). In considering these factors, a putative transferor court must consider the totality of the circumstances. *Liriano v. United States,* 95 F.3d 119, 122 (2d Cir. 1996). Thus, factors traditionally considered in the interest-of-justice analysis under § 1404(a), including the existence of a forum-selection clause, the importance of the plaintiff's choice of forum, judicial economy and consistency, and choice of law issues, will also be considered under § 1631 to evaluate whether transfer will unfairly benefit DST or unfairly burden the Confirmation Plaintiffs or the court system.

### a. The Parties' Chosen Forum

#### (1)    Plaintiffs' Choice of Forum

Where, as here, the parties or the issues have a connection to a selected forum, the plaintiff's choice of forum is entitled to "considerable deference." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997); *Am. Dairy Queen Corp. v. Blume*, 562 F. App'x 545, 546 (8th Cir. 2014) (noting that "courts give considerable deference to plaintiff's choice of forum, and thus party seeking transfer under 28 U.S.C. § 1404(a) typically bears burden of proving transfer is warranted").  DST's principal place of business, which also is the address of the Compensation Committee, and the Confirmation Plaintiffs' place of employment, are in Kansas City, Missouri, within this judicial district.  The arbitrations were conducted, albeit virtually, in Kansas City, Missouri.  Moreover, DST and many of the Confirmation Plaintiffs are parties to an arbitration agreement that required the application of the law that this Court would apply.  *See, e.g., Payne v. DST Sys., Inc.*, No. 21-9034 (W.D. Mo.), Doc. 1-2, p. 2 ("[T]he substantive law applied to claims shall be the state or federal substantive law that would be applied by a federal district court judge sitting in the county of the place of the Associate's employment or prospective employment.").  Because this forum has a strong connection to the parties and claims at issue, Plaintiff's choice of forum weighs heavily against transfer.

#### (2)    The Forum Selected by Contract

In all but 19 of the 177 cases, a forum-selection clause in the arbitration agreement provides that "the Company or the Associate may file a legal action . . . to enforce, vacate, modify and/or appeal the final decision and award based on any available legal ground *in the federal district court with jurisdiction over the county in which the hearing was held*."  *See, e.g., Payne*, No. 21-9034, Doc. 1-2, p. 3 (emphasis added); *Scarbrough v. DST Sys., Inc.*, No. 21-9047 (W.D. Mo.), Doc. 1-

2 (same); *cf. Hursh*, No. 21-9017, Doc. 44 (parties' stipulation regarding 19 plaintiffs who are parties to an arbitration agreement containing no forum selection clause). The arbitration agreement to which most Confirmation Plaintiffs were parties provides that "[t]he arbitration hearing shall be held in the county of the Associate's principal place of employment or prospective employment, unless another location is agreed to by the parties."[15] *Payne*, No. 21-9034, Doc. 1-2, p. 2; *Scarbrough*, No. 21-9047, Doc. 1-2, p. 2. In other words, DST and the majority of the Confirmation Plaintiffs contracted to bring legal actions in connection with final arbitration awards in the United States District Court for the Western District of Missouri.

DST argues that the forum-selection language is merely permissive, emphasizing that it says a party "*may* file a legal action" in such a court. However, the permissive language relates to the filing of an action related to the arbitration. The logical interpretation of this language is that no one is required to file an action to enforce, vacate, modify, or appeal the arbitration decision, but anyone choosing to file such an action must do so in the forum specified. To read the entire provision as permissive would render the forum-selection language meaningless. Without the forum-selection clause, the parties still would have been entitled to bring an action to confirm the arbitration in the federal district court with jurisdiction over the county in which the hearing was held.[16] *See* 9 U.S.C. § 9 ("If no court is specified in the agreement of the parties, then such application [for an order confirming the award] may be made to the United States court in and for the district within which such award was made."). The Court is required to read provisions to not render them superfluous. *See State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n of*

---

[15] There is no suggestion that the Confirmation Plaintiffs agreed to arbitration in a different forum.

[16] *Badgerow* may have altered whether parties are entitled to bring suit in federal court, but *Badgerow* concerns subject matter jurisdiction, which cannot be agreed upon, not venue.

*State*, 215 S.W.3d 76, 84 (Mo. banc 2007) ("A contract must be construed as a whole so as to not render any terms meaningless, and a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provisions is preferred over a construction that leaves some of the provisions without function or sense."); *see also Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (N.Y. 2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." (quotation marks and citation omitted)).  Thus, the only reasonable interpretation of the language is as a mandatory forum selection clause.[17]

The party defying the forum-selection clause "bears the burden of establishing" that the forum-selection clause should be disregarded.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63–64 (2013).  "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching."  *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 973–74 (8th Cir. 2012) (quotation marks and citations omitted)); *see also Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 509 (Mo. 2001) ("[C]ommercial entities at arm's length may . . . agree to forum selection (unless unfair or unreasonable) . . . .").[18]

---

[17] In a case related to *Ferguson*, the Southern District of New York recognized that this Court is "charged with" review of such arbitration awards.  *See Canfield v. SS&C Techs. Holdings, Inc.*, No. 18-CV-10252 (ALC), 2021 WL 1022698, at *3 (S.D.N.Y. Mar. 17, 2021) (J. Carter) (holding that "the court charged with reviewing arbitral agreements and awards . . . , the Western District of Missouri, is better positioned to rule on disqualification in the arbitration proceedings").

[18] The motion to transfer, including the weight placed on a forum-selection clause, is governed by federal law.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) ("We hold that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to a court in Manhattan.")  However, the Eighth Circuit has "decline[d] to take a side on the issue of what law applies to the

The presumption in favor of enforcement of forum-selection clauses is so strong that the Supreme Court has held that, in the face of a valid forum-selection clause, a court "should not consider arguments about the parties' private interests" because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co.*, 571 U.S. at 64. Courts accordingly "must deem the private-interest factors to weigh entirely in favor of the preselected forum," and "the practical result" of this rule "is that forum-selection clauses should control except in unusual cases." *Id*.

Because "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases" (*id.* at 63 (quotation marks and citation omitted)), and no exceptional circumstances, such as fraud, overreaching, or unfairness (*Union Elec.*, 689 F.3d at 973–74; *Purcell Tire & Rubber*, 59 S.W.3d at 509), exist here, transfer away from this chosen forum would be improper in each of the 44 cases in which the Court has diversity jurisdiction and in which a forum-selection clause binds DST.

With respect to the 113 cases over which the Court lacks subject matter jurisdiction and in which there is a forum-selection clause, the analysis is not quite so simple. Because of *Badgerow* and the Eighth Circuit's subsequent ruling that federal question jurisdiction does not exist in these cases, the parties in those 113 cases cannot maintain their actions in this federal court.

---

*interpretation* of a forum-selection clause" in a diversity case. *Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Off.*, 5 F.4th 895, 897 (8th Cir. 2021) (emphasis added, noting that "the enforceability and interpretation of forum-selection clauses are distinct concepts"). The parties have not suggested that the application of one or the other body of law would materially affect the outcome in this case. The Court concludes that, regardless of which law applies to the interpretation of the forum selection clause, the outcome will be the same.

However, the contract in this case itself provides a remedy. The relevant arbitration agreements provide that, "whenever possible and consistent with the objective of this *Arbitration Program and Agreement* to arbitrate all covered claims, any otherwise invalid term should be reformed and enforced by a court." *See, e.g., Payne*, No. 21-9034, Doc. 1-2, p. 5; *see also, e.g., Scarbrough*, No. 21-9047, Doc. 1-2, p. 4 ("[W]henever possible and consistent with the objective of this APA to arbitrate all covered claims, any otherwise invalid term should be reformed and enforced by a court or arbitrator."). Given that the parties in the 113 cases expected to litigate the arbitration awards in the "county in which the hearing was held," which was Jackson County, Missouri, and that county also contained their principal place of employment and DST's principal place of business, and the applicable law in this action concerning enforcement of private contractual rights (especially following *Badgerow*) is that of Missouri, the Court finds that, to the extent that bringing the actions in a federal forum was impossible, the parties intended to bring their actions concerning the arbitration awards in state court in Jackson County, Missouri. *See Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 890–91 (6th Cir. 2002) (affirming district court's decision to compel arbitration in Michigan despite clause requiring arbitration in New York where selection of New York was not enforceable but parties' agreement included language permitting court to "modify or interpret those provisions to the minimum extent necessary to cause them to comply with the law"); *Pro. Offshore Opportunity Fund, Ltd. v. Huifeng Bio-Pharm. Tech., Inc.*, No. 11-cv-4321-LAK, 2011 WL 5598213, at **2–3 (S.D.N.Y. Nov. 15, 2011) (looking to "evidence" of "the intention of the parties" to determine appropriate forum where contract contained apparent scrivener's error designating a forum that was unreasonable); *Oldlaw Corp. v. Allen*, No. 07-1070, 2007 WL 2772697, at **5–6 (C.D. Ill. Sept. 24, 2007) (where there was no court of competent jurisdiction in the named venue of Scottsdale, finding that "the only reasonable

18

reading of the venue clause [wa]s that litigation covered by it belongs in federal or state courts with a venue encompassing Scottsdale, Arizona"). Such a conclusion is consistent with the "well-settled" doctrine that ambiguous contractual terms be interpreted against the drafter. *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 811 (Mo. banc 2015); *see also Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 105–06 (8th Cir. 1992) (affirming district court's decision to construe ambiguous ERISA plan against the drafter). This result also is in keeping with *Badgerow*, which held that questions concerning enforcement of arbitration awards implicate "state-law contractual rights" and therefore "typically belong[] in state courts." *Badgerow*, 142 S. Ct. at 1321–22.

The forum-selection clause in 158 of these cases weighs heavily against transfer to the Southern District of New York.

### (3) DST's Newly Chosen Forum

As evidenced by the forum-selection clause and the situs of the arbitrations, DST chose the United States District Court for the Western District of Missouri as the forum for disputes relating to arbitral decisions. Now it is seeking transfer to a totally different forum, the Southern District of New York.

Prior to class certification in *Ferguson*, the Southern District of New York had little connection to the ERISA disputes underlying the arbitration awards. DST has not suggested that Plan participants lived in or worked for DST in New York. DST's principal place of business is Kansas City, Missouri, and that is where the majority of Plan participants live, as evidenced by the Court's diversity-jurisdiction analysis. The ERISA claims against DST concerned its failure to oversee the Plan investments, which occurred largely, if not entirely, in Kansas City, Missouri, where DST is based. The only connection between the Southern District of New York and the

ERISA litigation appears to be the location of Ruane Cunniff & Goldfarb Inc., the Plan fiduciary involved in managing the Plan's investments.[19]

This leads to the more important point: the Southern District of New York has no connection to the arbitration awards before this Court. *Badgerow* and the Eighth Circuit's decision in this case make clear that the dispute before this Court concerns only the arbitration award itself, and not the underlying ERISA claim, which was merged with the arbitration award when it became final. *See Badgerow*, 142 S. Ct. at 1321–22.[20] The arbitration proceedings took place in Missouri. *See Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*, No. 22-CV-696 (NEB/ECW), 2022 WL 2872767, at *4 (D. Minn. July 21, 2022) ("[W]hen a plaintiff seeks to vacate an arbitration award, the locus of operative facts is the site of the arbitration." (citing, *inter alia*, *Crow Const. Co. v. Jeffrey M. Brown Assocs., Inc.*, No. 01 CIV. 3839 (AGS), 2001 WL 1006721, at *3 (S.D.N.Y. Aug. 31, 2001)). The case before this Court is a contract dispute governed by state law, that is, the law of Missouri, at least so long as Missouri law does not interfere with the FAA's purpose of discouraging bias towards the arbitration process. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) ("[O]ur cases . . . have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (citations omitted)). DST has not suggested that Missouri state law conflicts with the FAA.

---

[19] Judge Wimes found in the first case brought by Ostrander that relevant witnesses for the ERISA claim were located in New York. *Ostrander v. DST Sys., Inc.*, No. 17-CV-0747-BCW, 2018 WL 10799300, at *3 (W.D. Mo. Feb. 2, 2018). But in that case, unlike this one, Ruane was a defendant.

[20] For this same reason, *Goff v. Menke*, 672 F.2d 702 (8th Cir. 1982), which DST cites in support of its motion to transfer, is inapplicable. *Goff* involved two different federal actions, one a class action, challenging the same prison conditions. Here, in contrast, the confirmation proceedings before the Court are legally distinct from the ERISA proceedings in *Ferguson*.

Nonetheless, DST now seeks transfer to a federal jurisdiction that has issued an interlocutory order that (1) the arbitration agreements do not apply to any of the claims in *Ferguson*, and (2) a collective action is required for ERISA fiduciary-breach claims.

DST's 180-degree reversal constitutes forum-shopping. While DST attempts to cloak its actions behind stated concerns about consistency and efficiency, if those were its motivations, the proceedings before the Court would have been resolved long ago based on the awards in the arbitrations, now subject to *res judicata*, and through separate resolution of class ERISA claims. Enforcement of DST's contractual obligations need not preclude a binding settlement for the remaining Plan participants in the class action in the Southern District of New York.

It is clear that DST would obtain an unfair benefit from a transfer to the Southern District of New York and the Confirmation Plaintiffs would be burdened by DST's forum-shopping. *See New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quotation marks and citation omitted)).

### b. Consistency and Judicial Economy

#### (1) The Principle of *Res Judicata*[21]

The fact that *res judicata* has already attached to the arbitration awards and the underlying ERISA claims have already merged with the arbitration awards weighs against transfer. *See*

---

[21] The Court discusses collateral estoppel, judicial estoppel, and waiver in detail in Part III of this order. Like *res judicata*, each of those doctrines weighs heavily against transferring the cases to the Southern District of New York.

Restatement (Second) of Judgments § 18 (1982) (explaining doctrine of merger); *id.* § 84 (applying principle of *res judicata* to arbitration awards).[22]

"[T]he principle of finality of judgments" is a "firmly entrenched aspect of our judicial system" and, therefore, "the common law doctrine[] of *res judicata* . . . precludes relitigation of a claim formerly made . . . ." *City of Normandy v. Parson*, 643 S.W.3d 311, 313 (Mo. 2022) (quotation marks and citation omitted). *Res judicata* precludes relitigation of "not only those issues on which the court in the former case was required to pronounce judgment, but . . . every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. 2002) (quotation marks and citation omitted); *see also Allen v. McCurry,* 449 U.S. 90, 94 (1980) (explaining that "federal courts have traditionally adhered to the . . . doctrine[] of res judicata," which mandates that "a final judgment on the merits of an action preclude[] the parties or their privies from relitigating issues that were or could have been raised in that action").

A final arbitration award is treated as a final judgment for purposes of *res judicata*. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nixon*, 210 F.3d 814, 817 (8th Cir. 2000) (finding that "[u]nder both federal and Missouri law, the principles of *res judicata* and collateral estoppel bar[red]" relitigation of the same claims raised in arbitration); *Hoelscher v. Patton*, 842 S.W.2d 127, 128 (Mo. Ct. App. 1992) (treating arbitration award as "final judgment on the merits" for res judicata purposes); *see also Carlisle Power Transmission Prod., Inc. v. United Steel, Paper &*

---

[22] "Courts may raise *res judicata* and collateral estoppel *sua sponte* so as to avoid judicial waste." *Johnson v. LaSalle Bank Nat. Ass'n*, 663 F. Supp. 2d 747, 765 (D. Minn. 2009) (citing, *inter alia, Hanig v. City of Winner, S.D.*, 527 F.3d 674, 678 (8th Cir.2008)).

*Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Loc. Union No. 662*, 725 F.3d 864, 867 (8th Cir. 2013) (same).

In their Motions to Confirm, the Confirmation Plaintiffs asserted, and DST has not disputed, that the arbitration awards at issue were final. Consistent with the parties' agreement, the Court finds that the awards became final no later than the conclusion of any arbitral appellate process. Therefore, at the latest, the ERISA claims were merged into the arbitration awards before the Motions to Confirm were filed. Thus, each of the arbitration awards is *res judicata* unless it is vacated on a basis sanctioned by the FAA.

The fact that the awards have not been confirmed does not alter the binding effect of *res judicata* on the arbitration awards at issue here. *See, e.g.*, *Manion v. Nagin*, 394 F.3d 1062, 1066–67 (8th Cir. 2005) ("An arbitration award counts as a final judgment for collateral estoppel purposes."); *see also Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d Cir. 1997) ("We therefore hold, in keeping with the courts of the First and Second Departments, that res judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award." (citing *Hilowitz v. Hilowitz*, 85 A.D.2d 621, 444 N.Y.S.2d 948, 949 (N.Y. App. Div. 1981)).

DST has not provided, and the Court is not aware of, any authority to suggest that class certification, which is a nonfinal order, alters the above analysis.[23] To date, no purported final settlement has been presented to the *Ferguson* court, much less approved by it. In any event, "when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action (assuming any further prerequisites are met), regardless of which action was first

_____
[23] The effects of class certification are discussed more fully in Section III(C) below.

brought."  Restatement (Second) of Judgments § 14; *see also Brown v. Brown -Thill*, 437 S.W. 3d

344, 349 & n.1 (Mo. Ct. App. 2014); *Andes v. Paden Welch, Martin & Albano*, 897 S.W. 2d 19,

21 n.1 (Mo. Ct. App. 1995); *Gonzalez v. City of New York*, 396 F.Supp.2d 411, 415 & n.3

(S.D.N.Y. 2005).  It would be odd indeed for a court to transfer a lawsuit to another court once the

lawsuit had been resolved on the merits.  It certainly would not be in the interest of consistency or

economy.

Thus, *res judicata*, a "firmly entrenched aspect of our judicial system," weighs heavily

against transfer.  *Normandy*, 643 S.W.3d at 313–14.[24]

### (2)  Consistency

Whether the Court transfers the cases or not, complete consistency between the rulings on

the issues underlying the arbitrations and the class action in *Ferguson* will be impossible.  Multiple

judges and arbitrators have already entered final and binding orders on many of the issues raised

by the Motions.  Indeed, some of the Confirmation Plaintiffs' arbitral damages awards already

have been paid by DST.  *See Bay v. DST Sys., Inc.*, No. 21-09144 (W.D. Mo.), Doc. 1, p. 1 n.1

(noting that DST had already paid damages award of $54,979.92).  Keeping the above-captioned

cases in this Court or dismissing the cases so the Confirmation Plaintiffs can file them in state

court will ensure that decisions on the Motions to Confirm and Motions to Vacate at least are

consistent with Missouri law.  *See Badgerow*, 142 S. Ct. 1321-22 ("[T]he application concerns the

contractual rights provided in the arbitration agreement, generally governed by state law.  And

adjudication of such state-law contractual rights . . . typically belongs in state courts.").

---

[24] The fact that the arbitration awards were rendered before the class claims were resolved
distinguishes the cases before the Court from *Rich v. Spartis*, 516 F.3d 75, 80 (2d Cir. 2008), where
the class claim was resolved on the merits *before* the arbitration award was entered.

More fundamentally, arbitration proceedings by their nature—being an informal, private means of resolving disputes that produces decisions that do not become *stare decisis*—necessarily produce some inconsistency. "Arbitration is not a perfect system of justice, nor is it designed to be." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 462 (8th Cir. 2001). Arbitrations frequently proceed in parallel with, or despite, related litigation or other related arbitrations. The Supreme Court nevertheless has held that the FAA "requires that we rigorously enforce agreements to arbitrate, even if the result is '*piecemeal*' litigation . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (emphasis added). Just as arbitration proceedings can continue despite parallel litigation, so too should the results of any arbitration be confirmed despite any related proceedings. For better or for worse, the risk of inconsistency is part of the bargain that parties strike when they agree to arbitration, and the FAA not only permits, but also requires, enforcement of such agreements. *See Hoffman*, 236 F.3d at 462 ("Parties should be aware that they get what they bargain for[,] and that arbitration is far different from adjudication.").[25] Here, under *Ducharme*, the first case to address the issue, the Confirmation Plaintiffs had a contractual right (indeed, an obligation) to arbitrate. By the time a class was certified in the Southern District of New York, the Confirmation Plaintiffs had already acted on that right. The Confirmation Plaintiffs'

---

[25] DST argues that inconsistent results in arbitration—the fact that some claimants in the arbitrations received less money than others, while some received none at all—suggests unfairness, and that the only fair option is a uniform recovery through the *Ferguson* class action. But the possibility of unfairness to those who exercised their right to arbitrate and did not recover does not warrant stripping arbitral awards from those who did. To the contrary, holding the parties to the benefit of their bargain—the outcomes obtained in arbitration—is the best way to ensure fairness and to effectuate the principles underlying the FAA. *See, e.g., Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (stating that "the first principle that underscores all of our arbitration decisions [is]: [a]rbitration is strictly 'a matter of consent'") (quotation marks and citation omitted). It falls to courts and arbitrators to give effect to these contractual decisions, keeping in mind the purpose of the exercise: to enforce the expressed intent of the parties. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

"contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management." *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 303 (8th Cir. 1995) (Loken, J); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-cv-2832, 2020 WL 869980, at *6 (D. Minn. Feb. 21, 2020). This is all the more true under the facts of these cases because the parties have already arbitrated their disputes and the arbitration awards are final.

For these reasons, considerations of consistency do not favor transfer.[26]

### (3)    Judicial Economy

"Judicial economy" is "'efficiency in the operation of the courts and the judicial system; esp. [*sic*], the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources.'" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 268 (3d Cir. 2016), *as amended* (Sept. 29, 2016) (Rendell, J., concurring in part and dissenting in part) (quoting *Judicial Economy*, *Black's Law Dictionary* (9th ed. 2009)). At first blush, it may appear that consolidation of the pending motions in the Southern District of New York would be efficient. Obviously, having one judge resolve all issues is more efficient if the issues are the same.

But here, the Southern District of New York has indicated it does not intend to address the pending Motions until after it resolves the merits in *Ferguson*. There is no indication of when that might be because the parties in *Ferguson* have repeatedly asked for additional time to present their

---

[26] Section 1404(a) considers the convenience of the parties as an additional factor in deciding whether discretionary transfer is appropriate. Because the interest of justice factor in 1404(a) is dispositive here, the Court will not factor in the convenience of the parties. In any event, DST has not identified any special convenience factors that would be furthered if these cases were transferred to a foreign jurisdiction. Indeed, the focus of this litigation has always been the Western District of Missouri because that is the arbitral situs, the principal place of DST's business, and where many of the Plan Participants live. Indeed, the last two factors are part of the reason that diversity jurisdiction exists in only 55 of the pending cases.

settlement for approval.

In contrast, this Court has jurisdiction over 55 cases and has already done the work necessary to address those Motions.  The sooner those 55 cases are resolved, the better, in terms of judicial economy and serving the purpose of the FAA.

As for the 122 remaining cases, there is a stronger argument that some judicial economy could be achieved by transfer to the Southern District of New York, primarily because of the *Ferguson* injunction.  The injunction may prevent the Confirmation Plaintiffs from pursuing their Motions to Confirm in the state courts of Missouri even if the Court dismisses the 122 cases.  If the cases were transferred to the Southern District of New York, they could be addressed there, assuming there is adequate subject matter jurisdiction and proper venue.

On the other hand, as more and more disputes are resolved by arbitration, "judicial efficiency" should include arbitral efficiency as well.  Transferring an arbitration award already resolved in a jurisdiction that held the claims are arbitrable to a jurisdiction that has said the claims are not arbitrable will be inefficient for the judicial process and the arbitral process.

In sum, considerations of judicial economy weigh somewhat in favor of transferring the 122 cases to the Southern District of New York, but weigh against transferring the 55 cases over which this Court has subject matter jurisdiction.

### c.  Undue Burden to the Court System

Judicial economy in the management of these cases is not the only concern related to efficiency in the court system that this case raises:  if the Court were to bless DST's forum-shopping by transferring any of these cases to the Southern District of New York, it would encourage other litigants dissatisfied with their arbitration awards to engage in similar conduct.  Parties would have a green light to compel arbitration in a jurisdiction that does not require a

27

collective action in fiduciary breach cases or that has found that an arbitration agreement encompassed a dispute, and then, if the arbitration results are unfavorable, move to vacate the award, a second bite at the apple, in a different jurisdiction. Such forum-shopping wastes public and private resources and would diminish confidence in both arbitration and the judicial system.[27] Indeed, the doctrine of *res judicata* discussed above was designed to discourage just such results.[28]

### 3. Resolution of DST's Motion to Transfer

After considering all the relevant factors, the Court concludes that transfer of the 55 Motions to Confirm to the Southern District of New York is clearly against the interest of justice, particularly considering the forum-selection clauses in the majority of the agreements, the place of arbitration, the connections of each forum to the arbitrations, the principles of finality and consistency, and the purpose of the FAA.[29]

As for the 122 cases over which the Court lacks subject matter jurisdiction, the issue is closer. If the Court dismisses the 122 cases as requested by the Confirmation Plaintiffs, the Confirmation Plaintiffs may not be able to file their motions in state court so long as the *Ferguson*

---

[27] *See* Restatement of Judgments (Second) § 84 ("If the arbitration award were not treated as the equivalent of a judicial adjudication for purposes of claim preclusion, the obligation to arbitrate would be practically illusory.").

[28] The Supreme Court has underscored the important benefits that arise from the finality doctrines: "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen*, 449 U.S. 90, 94; *see also* Policies and Sources of Res Judicata, 18 Fed. Prac. & Proc. Juris. § 4403 (3d ed.) ("The doctrines of res judicata 'are borne [sic] of the recognition that 'endless litigation leads to chaos; that certainty in legal relations must be maintained; and that after a party has had his day in court, justice, expediency and preservation of the public tranquility requires that the matter be at an end.'" (quoting *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir. 1984)).

[29] All of these considerations weigh even more strongly against transfer in the *Horan* case, given that Ms. Horan is not even a member of the certified class.

injunction is in place.  Still, the majority of factors discussed above weigh heavily against transfer.

Moreover, DST has not shown that dismissal would prejudice it or the class members or interfere

with the *Ferguson* class action.  Therefore, the Court finds that it is not in the interest of justice to

transfer the 122 cases over which the Court lacks subject matter jurisdiction to the Southern

District of New York.  Indeed, DST itself requested dismissal as an alternative to transfer.  And

transfer obviously is not necessary for a global settlement that would protect all of those with an

interest in this unnecessarily protracted dispute.[30]

## III.   MOTIONS TO CONFIRM AND VACATE IN THE 55 CASES OVER WHICH THE COURT HAS JURISDICTION

### A.  The FAA's Requirement that the Court Confirm Arbitration Awards in the Ordinary Course

"Section 9 of the FAA provides that federal courts 'must grant' an order confirming an

arbitration award 'unless the award is vacated, modified, or corrected as prescribed in sections 10

and 11 of [the FAA].'"  *UHC Mgmt. Co., Inc. v. Comput. Scis. Corp.*, 148 F.3d 992, 997 (8th Cir.

1998); *see Hall St. Assoc., L.L.C v. Mattel, Inc.*, 552 U.S. 576, 586–87 (2008).  Pursuant to § 10

of the FAA, an award may be vacated under only the following circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

---

[30] This outcome also is consistent with Judge Wimes' decision in *Ostrander v. DST Sys., Inc.*, No. 20-0973 (W.D. Mo.), in which DST moved for dismissal or, alternatively, transfer, of a case by a Plan participant who, unlike Ducharme, was not subject to an arbitration agreement and therefore could pursue a class action.  Judge Wimes found that Ostrander's claims were "nearly identical" to those in *Ferguson* and *Ostrander* was "parallel" to *Ferguson*, which was the first-filed case. Still, Judge Wimes dismissed, rather than transferring, that case.  *Ostrander,* No. 20-973, Doc. 23.

material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

## B. DST's Motion to Vacate

DST argues that the awards should be vacated because ERISA § 502(a)(2) claims are not covered by the arbitration agreements, and even if they were, they cannot be brought in individual arbitrations because ERISA fiduciary duty claims cannot be used to recover the damage done to a specific defined contribution account; they must instead be brought collectively on behalf of the entire plan and for the benefit of all its participants. *See, e.g., Hursh*, No. 21-9017, Doc. 16, p 4. Thus, the question is whether the arbitrators exceeded their authority by permitting the Confirmation Plaintiffs to proceed individually on behalf of the Plan to recover the damages done to each Confirmation Plaintiffs' individual defined contribution account. DST also suggests that individual arbitration of ERISA § 502(a)(2) claims in this context contravenes public policy. *See id.* Doc. 6, pp. 18–19.[31] DST further contends that the awards should be vacated because they are a collateral attack on the *Ferguson* class-certification order and contain duplicate expenses and costs. The Confirmation Plaintiffs oppose DST's Motions to Vacate, arguing that the Court's findings in *Ducharme* are binding on DST, that DST is estopped from opposing confirmation based

---

[31] There is no dispute that every ERISA § 502(a)(2) fiduciary breach claim must be pursued in a representative capacity, meaning the claim must be pursued on behalf of the ERISA plan. *See* 29 U.S.C. § 1132(a)(2). Further, there is no dispute that these arbitrations were brought in a representative capacity on behalf of the Plan and recovery will go to the Plan. However, as discussed below in Part III(B)(3), DST appears to argue that to properly bring a § 502(a)(2) claim on behalf of the Plan, a Plan participant must bring it as a collective action "representing" all plan participants.

on its prior representations to multiple tribunals,[32] and that the arbitrators did not exceed their authority by permitting the Confirmation Plaintiffs to individually arbitrate, on behalf of the Plan, their ERISA § 502(a)(2) claims. *See id.,* Doc. 7, p. 5, 11–18.[33] The Confirmation Plaintiffs also argue that individual arbitrations of ERISA fiduciary-breach claims are permissible after *LaRue*, 552 U.S. 248, 256 (2008), and that neither *Ferguson* nor *Cooper* changed the law applicable to the Motions to Confirm or Motions to Vacate. *Hursh*, 21-9017, Doc. 18, p. 12–13. Therefore, the Confirmation Plaintiffs argue, the awards should be confirmed, if the Court has jurisdiction, and dismissed if it does not.

### 1. Finality Doctrines and the Consequences of DST's Inconsistent Positions

DST is precluded by the finality doctrines discussed below from arguing that the awards should be vacated because the arbitration agreement did not apply to ERISA § 502(a)(2) claims or because such claims may be brought only in a class action.

---

[32] DST states that "[t]here is no argument that DST is estopped from urging that these claims appropriately belong before the class court." *Hursh*, No. 21-9017, Doc. 16, p. 3. To the extent DST attempts to argue that the Confirmation Plaintiffs waived their estoppel arguments because they did not raise them in the original briefing in support of the Motions to Confirm, the argument is without merit. DST did not raise transfer or vacatur until it opposed the Motions to Confirm by arguing that the findings in *Ferguson* bound the Confirmation Plaintiffs. The Confirmation Plaintiffs then appropriately raised their estoppel arguments in their Reply, in direct response to DST's argument that the awards should be vacated. DST did not ask to file additional briefing thereafter. DST had a further opportunity to respond to the finality issues in its post-appeal briefing. Yet, DST again chose not to address the estoppel arguments made by the Confirmation Plaintiffs. *Hursh*, No. 21-9017, Doc. 37. The Confirmation Plaintiffs thus did not waive the estoppel issue.

[33] DST has not suggested that the first three grounds for vacatur under the FAA apply. Therefore, the Court addresses only the fourth ground, and DST's non-statutory public policy argument, here.

### a. Collateral Estoppel

Collateral estoppel, or issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Taylor v. Sturgell*, 553 U.S. 880, 892, (2008) (quoting *New Hampshire*, 532 U.S. at 748–49).[34]  "The idea is straightforward: Once a court has decided an issue, it is 'forever settled as between the parties,' thereby 'protect[ing]' against 'the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (internal citations omitted)). *Ducharme* was the first case to address whether the arbitration agreements at issue here applied to the ERISA § 502(a)(2) claims of Plan participants who did not opt out.  It was also the first case to address whether the Confirmation Plaintiffs could proceed individually on behalf of the Plan in arbitration.[35]  Collateral estoppel bars reconsideration here of those issues.

Under federal law, if "'an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is

---

[34] When a federal court sitting in diversity determines the *res judicata*—or collateral estoppel—effect of a prior judgment entered in a federal case premised on federal question jurisdiction, federal law governs.  *Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir. 1982); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *see also Follette v. Wal-Mart Stores, Inc.*, 41 F.3d 1234, 1237 n.1 (8th Cir. 1994) (rejecting argument that *res judicata* and collateral estoppel are different for choice of law concerns).

[35] DST argues that the *Ferguson* court's ruling on these issues is binding on the Confirmation Plaintiffs.  However, the *Ferguson* court addressed these issues in an interlocutory order, and expressly stated that it would address the status of the Confirmation Plaintiffs' arbitration awards later.  DST has not cited any authority to establish that a class certification order is a final judgment on the merits for these purposes.

conclusive in a subsequent action between the parties,[36] whether on the same or a different claim.'" *Id.* at 148 (quoting Restatement (Second) of Judgments § 27, p. 250). Accordingly, a court must conclude "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *See, e.g.*, *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995). Each requirement is met here.

To begin, the issues in *Ducharme* are identical to the ones raised here. Judge Wimes decided that (1) the "Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope[,]" *Ducharme*, No. 17-cv-00022-BCW, Doc. 57, p. 2, and (2) that Mr. Ducharme could bring his claim "individually." *Id.*, Doc. 59, Tr. 27:23–24 ("And by this ruling, the Court does find that 502(a)(2), you can bring that individually."). DST now contests these same issues before this Court, even though DST was a party in *Ducharme*. Because the issues in this case are identical to those raised in *Ducharme*, the first requirement of collateral estoppel is met.

The questions of whether DST's arbitration agreement applied and whether a Plan participant can proceed individually under ERISA § 502(a)(2) to recover on behalf of the Plan damage done to an individual defined contribution account also were fully litigated in *Ducharme*. DST argued numerous times that the arbitration agreement applied and that individual Plan participants could proceed in individual arbitrations. *See Ducharme*, No. 17-cv-00022-BCW, Doc. 59, Tr. 5:24–6:1 (DST arguing to Judge Wimes that "Mr. Ducharme had an individual account in

---

[36] The United States Supreme Court has made clear that nonmutual collateral estoppel, that is, collateral estoppel by or against someone who was not a party in the original action, can be appropriate. *See generally Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326–33 (1979).

the profit-sharing portion of the DST Plan, and therefore, he can in fact, proceed individually under 502(a)(2)."); *Ducharme*, No. 17-cv-00022-BCW, Doc. 28, p. 6 (DST's Suggestions in Support of the Motion to Compel Arbitration: "Pursuant to Section 4 of the Federal Arbitration Act ('FAA'), 9 U.S.C. § 4, the Court should compel Mr. Ducharme to arbitrate his ERISA claims with DST on an individual basis in accordance with the terms of the Arbitration Program and Agreement, which Mr. Ducharme voluntarily agreed to in 2008."); *Ducharme*, No. 17-cv-00022-BCW, Doc. 55, p. 2–10 (DST arguing that ERISA 502(a) claims are covered by the arbitration agreement, as opposed to claims for ERISA benefits, which are not); *Ducharme*, No. 17-cv-00022-BCW, Doc. 59, Tr. 20:20–21:2 (DST arguing, "I think the class action waiver language in the agreement prohibits a representative claim. . . . And in our view Mr. Ducharme can in fact bring 502(a)(2) claim on behalf of his individual account."). For his part, Mr. Ducharme vigorously opposed each of DST's arguments, both in his briefs and in two hearings before Judge Wimes. The parties' intense disagreement about these issues demonstrates that they were both "actually litigated." The second requirement of collateral estoppel is therefore met.

Judge Wimes' decision on these issues was a final adjudication on the merits. Judge Wimes dismissed Mr. Ducharme's amended complaint after concluding that the claims, as pled, could not proceed in federal court, given the valid and enforceable arbitration agreement. Pursuant to Federal Rule of Civil Procedure 41(b), this dismissal was an adjudication on the merits. *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."); *Kimmel v. Texas Com. Bank*, 817 F.2d 39, 40–41 (7th Cir. 1987) ("When the district court dismissed the Kimmels' first complaint without stating whether the dismissal was on the merits, that dismissal became a

final judgment on the merits under Rule 41(b).").  Judge Wimes' dismissal, which terminated Mr. Ducharme's class litigation in federal court, was not based on one of the exceptions to Rule 41(b).[37] Judges Wimes' resolution of the scope of the relevant arbitration agreement and the arbitrability of Mr. Ducharme's ERISA § 502(a)(2) claim thus was resolved by a final decision on the merits, establishing the third requirement for collateral estoppel.

Furthermore, determining that DST's arbitration agreement applied, and that Mr. Ducharme could pursue his ERISA § 502(a)(2) claim in individual arbitration, was essential to Judge Wimes' decision to dismiss Mr. Ducharme's class action.  Indeed, Judge Wimes deemed these issues important enough to hold a second argument to address them.  *See Ducharme,* No. 17-00022-BCW, Doc. 59, Tr. 3:19–25 ("[I]f this action is brought, and it is under 502(a)(2), can you bring – I know who can bring that action, but can you bring a 502(a) individually?"); *see also id.*, Tr. 4:4–6 (Ducharme's response: "On behalf of the plaintiff, no, Judge, you can't bring that individual, you must bring it in a representative capacity and that's the rub here.") and Tr. 4:9–17 (DST's response:  "I do not agree with that Your Honor . . . .  The *LaRue* Court observes that where in a defined contribution plan like this one where a participant has an individual account unlike, for example, a defined benefit plan where there are no individual accounts, that a participant plaintiff can in fact bring an individual claim to recover on behalf or [*sic*] his or her individual account.").

---

[37] When determining whether a decision is sufficiently final for the purposes of collateral estoppel, the second court can look to whether, in the first proceeding, the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1233 (3d Cir. 1995) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)); *see also Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007).  Each of these factors weighs in favor of concluding that Judge Wimes' dismissal was a final decision on the merits.

While Judge Wimes did not *compel* arbitration, the findings that the arbitration agreement applied and that the Plan participants could bring individual ERISA § 502(a)(2) claims on behalf of the Plan both were necessary to Judge Wimes' dismissal order. Indeed, Judge Wimes gave Mr. Ducharme the choice between compelling arbitration and dismissing the case—a choice that necessarily was dependent on Judge Wimes' conclusions that the arbitration agreement applied and that Mr. Ducharme could resolve his ERISA claim in individual arbitration. The transcripts of the oral argument and subsequent telephone conference show that Judge Wimes was intent on avoiding a situation in which Mr. Ducharme would be left without a means to assert his claims— unable to bring a claim in federal court (because the arbitration agreement required the ERISA claim to be heard by an arbitrator) and unable to bring an individual representative arbitration (if such claims were prohibited by ERISA). *See Ducharme*, No. 17-00022-BCW, Doc. 55, 59. The fourth and final requirement of collateral estoppel is therefore met.

Because the requirements for collateral estoppel are satisfied, in the 55 cases properly before this Court, the Confirmation Plaintiffs can use Judge Wimes' findings affirmatively against DST to prevent it from disputing both the scope of the relevant arbitration agreements and the arbitrability of the ERISA § 502(a) claims.[38]

---

[38] To apply collateral estoppel, the Court generally must first determine whether the doctrine is being applied offensively or defensively. *Parklane*, 439 U.S. at 329–30. "Defensive collateral estoppel generally involves a defendant invoking the doctrine to prevent a plaintiff from relitigating a fact decided against the plaintiff in earlier litigation that is necessary for the plaintiff to establish and carry his burden of proof." *James v. Paul*, 49 S.W.3d 678, 685 (Mo. 2001); *Parklane*, 439 U.S. at 329. "[O]ffensive collateral estoppel normally involves the attempt by a plaintiff to rely on a prior adjudication of an issue to prevent the defendant from challenging a fact necessary to the plaintiff's case and on which the plaintiff carries the burden of proof." *James*, 49 S.W.3d. at 685; *Parklane*, 439 U.S. at 329. The reason for this distinction is primarily equitable; it is meant to determine whether the party against whom collateral estoppel is invoked had a "full and fair opportunity to litigate the issue in the first suit." *James*, 49 S.W.3d. at 685–86; *Parklane*, 439 U.S. at 327–28.

### b. Judicial Estoppel

DST's arguments also are barred by judicial estoppel. "'[A] party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Scudder v. Dolgencorp, LLC*, 900 F.3d 1000, 1006 (8th Cir. 2018) (quoting *New Hampshire*, 532 U.S. at 749 (citing 18 Charles Alan Wright, Arthur Edward Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4477, p. 782 (1981))). Accordingly, "Missouri, like other jurisdictions, has long recognized the doctrine of judicial estoppel, which is said to be designed to preserve the dignity of the courts and insure order in judicial proceedings." *Vacca v. Missouri Dep't of Lab. & Indus. Rels.*, 575 S.W.3d 223, 231 (Mo. 2019), *as modified* (June 4, 2019) (quotation marks and citation omitted).[39]

---

To the extent the distinction between offensive and defensive collateral estoppel is legally relevant in this case, the Court concludes that this is a case of defensive collateral estoppel. Although the doctrine is being invoked by the Confirmation Plaintiffs, it is DST that seeks to vacate the arbitration awards. DST bears the burden of proof on that issue. The Confirmation Plaintiffs are defending against vacatur. This is therefore defensive nonmutual collateral estoppel.

Even if the Court were to consider this a case of offensive nonmutual collateral estoppel, it would still be appropriate to apply collateral estoppel here. *See Parklane*, 439 U.S. at 331–32 ("We have concluded that the preferable approach for dealing with [potential concerns applying offensive collateral estoppel] [is] to grant trial courts broad discretion to determine when it should be applied."). This is because DST was a party to the proceedings in *Ducharme* and had a complete opportunity to present its case. DST won, and the court adopted its reasoning in dismissing Mr. Ducharme's putative class action in favor of individual arbitration. There is nothing unfair or inequitable about permitting a different Plan participant to hold DST to a judgment that resulted from its own legal arguments. *Parklane*, 439 U.S. at 332–33 ("Since the petitioners received a 'full and fair' opportunity to litigate their claims in the SEC action, the contemporary law of collateral estoppel leads inescapably to the conclusion that the petitioners are collaterally estopped from relitigating the question of whether the proxy statement was materially false and misleading [which was addressed in the original proceeding before the SEC].").

[39] The Court must apply "state law elements of judicial estoppel" because this is a diversity case. *Spencer v. Annett Holdings, Inc.*, 757 F.3d 790, 797 (8th Cir. 2014).

In Missouri, "once a party takes truly inconsistent positions, there are no inflexible prerequisites or an exhaustive formula [*sic*] for determining the applicability of judicial estoppel." *Id.* at 235. Nonetheless, the factors identified by the Supreme Court in *New Hampshire* serve as "guideposts, [though] not elements, intended to assist courts in identifying when judicial estoppel should be applied to preserve the integrity of the judicial process and prevent litigants from playing 'fast and loose' with the courts." *Id.* at 236. The Court therefore considers the following factors in determining whether judicial estoppel applies:

> (1) whether "a party's later position is clearly inconsistent with its earlier position," (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Scudder*, 900 F.3d at 1006 (quoting *New Hampshire*, 532 U.S. at 750-51).

"Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.* at 750.

### (1) Whether DST's Position Is Inconsistent with the Position It Previously Adopted

DST's position in these confirmation cases is clearly inconsistent with the position it adopted in 2017 in *Ducharme*. DST moved the Court "to compel Mr. Ducharme to arbitrate his ERISA claims with DST on an individual basis in accordance with the terms of the Arbitration Program and Agreement." *Ducharme*, No. 17-cv-0022-BCW, Doc. 27 (DST's Motion to Compel Arbitration and to Dismiss), p. 1. DST argued that individual arbitration was required "because (1) Mr. Ducharme entered into a valid agreement to arbitrate with DST and (2) his breach of fiduciary duty claims under ERISA fell within the scope of that agreement." *Ducharme*, No. 17-

cv-0022-BCW, Doc. 28 (Suggestions in Support of DST's Motion to Compel Arbitration and to Dismiss), p. 6. DST insisted that the Profit-Sharing Plan "incorporates the terms of DST's Arbitration Agreement into the Plan, and thereby explicitly binds the Plan to the terms of that Agreement." *Ducharme*, No. 17-cv-0022-BCW, Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 2; *see also Ducharme*, No. 17-cv-0022-BCW, Doc. 39 (DST's Reply Suggestions in Support of Motion to Compel and to Dismiss), p. 3 (arguing that "[t]he Plan . . . expressly provides for arbitration" and that "the Plan makes clear that the scope of the Arbitration Agreement covers claims arising out of or related to the Plan—such as the claims Mr. Ducharme seeks to assert"); *id.*, p. 6 (arguing that claims for breach of fiduciary duty "are explicitly covered by the language of the Plan" and "subject to mandatory arbitration and class action waiver as provided under DST's Arbitration Policy" (quotation marks omitted)). Indeed, DST insisted that "neither the Arbitration Agreement nor the Amendment prohibits Mr. Ducharme or any other party to the Arbitration Agreement from arbitrating a breach of fiduciary duty claim in connection with purported losses to their individual accounts." *Ducharme*, No. 17-cv-0022-BCW, Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 3; *see also Ducharme*, No. 17-cv-0022-BCW, Doc. 55, Tr. 51:19–22 ("Mr. Ducharme bargained away his rights to pursue his grievances in any forum other than the arbitration."). While Mr. Ducharme argued that, as a matter of substantive ERISA law, his ERISA claims had to proceed as a class action, DST argued to the contrary that they could—and must—proceed individually. *Ducharme*, No. 17-cv-0022-BCW, Doc. 59, Tr. 5:24–6:1.

Furthermore, even as recently as March 2021, mere months before these confirmation proceedings began, DST agreed to the entry of an order granting a motion to confirm an attorney's

fee award in connection with a Plan participant's ERISA § 502(a)(2) arbitration. *Parrott*, No. 21-9012-NKL, Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award).[40]

In this proceeding, however, DST has taken the contrary position. Now, DST claims: "Courts nationwide, including the Southern District of New York and this Court, have recognized repeatedly that ERISA fiduciary duty claims cannot be litigated on an individual basis and must instead be brought in a representative capacity on behalf of a plan and all its participants." *Hursh*, No. 21-9017, Doc. 16, pp. 3–4.

DST claims its positions are not inconsistent because (1) "the *Ferguson* plaintiffs, *not* DST, moved to certify the class," and (2) "the Second Circuit resolved that Arbitration Claimants' claims are not arbitrable in *Cooper*—in which DST was not even a party." But, as previously discussed, DST was not an unwilling participant in the *Ferguson* case. DST preliminarily settled the *Ferguson* class action, stated it did not oppose class certification, and then submitted briefs to the *Ferguson* court in support of the motion for certification of a mandatory, no-opt-out class. *Ferguson*, No. 17-cv-6685-ALC, Doc. 126 (stating that DST did not oppose class certification); Doc. 161 (DST asking the Court to certify the class, noting that "on July 10, 2020, [the *Ferguson*] Plaintiffs and the DST Defendants entered into an agreement in principle to settle the claims in this action with the Class, defined as all participants and beneficiaries of the Plan from March 14, 2010 through July 31, 2016," and "[i]f the settlement is approved, it will bind all Class members

---

[40] DST notes that *Parrott* "did not consider any dispute over arbitrability" and that the Court merely "granted an unopposed motion to confirm an attorney's fee award," but that is precisely the point: by not opposing the motion, DST acknowledged that confirmation of the arbitration award was appropriate. In fact, DST actually submitted its own proposed order confirming the arbitration award. *See Parrott*, No. 21-mc-9012-NKL (W.D. Mo.), Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award) ("DST does not oppose the confirmation of the Arbitration Award and respectfully submits that the accompanying proposed order in the form of Exhibit A is appropriate to confirm that award.").

on a non-opt-out basis."); Doc. 185. The class that DST supported includes all Plan participants, including those who signed arbitration agreements with DST and had already received arbitration awards.

DST's arguments in *Ferguson* were inconsistent with DST's prior representations to Judge Wimes and to the arbitrators who entered the arbitration awards at issue here. Furthermore, because DST was not a party in *Cooper*, it was not bound by the outcome; it was, instead, bound by Judge Wimes' findings in *Ducharme*.

What's more, DST's change in position predated *Cooper*, and therefore *Cooper* cannot justify DST's about-face. For example, on July 10, 2020, DST sought a temporary restraining order and preliminary injunction to prevent arbitrations by any members of the putative class, noting that it had entered into an agreement in principle to settle the *Ferguson* class claims. *Ferguson*, No. 17-cv-6685-ALC (S.D.N.Y.), Doc. 160. The Second Circuit's decision in *Cooper* was not issued until eight months later.

Even after the Second Circuit decided *Cooper*, DST consented to the entry of multiple orders confirming arbitration awards for the same ERISA claims. *See, e.g., Murphy*, No. 21-0174-BCW, Doc. 8 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award) ("DST does not oppose the confirmation of the Arbitration Award . . . ."); *Parrott*, No. 21-9012, Doc. 3 (same).

Moreover, *Cooper* did not change Second Circuit law regarding whether ERISA claims like those in this case could be brought individually. *Cooper* itself explained that the Second Circuit law on which DST relies was articulated in *Coan*, which was decided in 2006—many years before DST sought to compel arbitration in *Ducharme*. *See Cooper*, 990 F.3d at 184 ("In *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), we construed ERISA § 502(a)(2) to require parties suing on behalf of a plan to demonstrate their suitability to serve as representatives of the interests of

41

other plan stakeholders. We explained: '[T]he representative nature of the section 502(a)(2) right of action implies that plan participants must employ procedures to protect effectively the interests they purport to represent.'").

The Court therefore finds that DST's contradictory positions were not based on any change in the law or otherwise justified.

<blockquote>
**(2)** **Whether DST Persuaded a Court to Accept Its Earlier Position Such that Accepting an Inconsistent Position Here Would Create the Perception that One Court Was Misled**
</blockquote>

There is no doubt that DST persuaded Judge Wimes to accept its position that Plan participants who were parties to the arbitration agreement were required to arbitrate their ERISA fiduciary breach claims. In dismissing *Ducharme*, Judge Wimes expressly held that "the Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." *Ducharme*, 2017 WL 7795123, at *1. Judge Wimes further adopted DST's position that ERISA does not preclude individual arbitrations of ERISA § 502(a) claims. *Ducharme*, No. 17-cv-0022-BCW, Doc. 59, Tr. 8:16–20; Tr. 27:23–24 ("And by this ruling, the Court does find that 502(a)(2), you can bring that individually."). Now DST is making exactly the opposite arguments to this Court.

If the Court were to accept DST's new argument that the claims at issue in the Confirmation Plaintiffs' arbitration proceedings are not arbitrable, then it will necessarily appear that DST misled Judge Wimes or is misleading this Court now as to the enforceability of the arbitration agreement or whether the ERISA fiduciary duty claims at issue may be brought individually. It does not matter that DST now, in effect, claims that Judge Wimes' decision was wrong. *See* Restatement (Second) of Judgments § 28 cmt. j ("Such a refusal to give the first judgment

preclusive effect should not . . . be based simply on a conclusion that the first determination was patently erroneous.").  DST did not appeal, and judicial estoppel now bars relitigation.

(3)     **Whether DST Would Derive an Unfair Advantage or Impose an Unfair Detriment on Plaintiff If Not Estopped**

If the Court were to accept the argument that DST now makes, the Confirmation Plaintiffs obviously would be prejudiced.  Not only did DST seek and procure the dismissal of Mr. Ducharme's original putative class litigation on the ground that his ERISA § 502(a)(2) claims were subject to mandatory arbitration, but DST also sent a notice to all the Plan participants referring to Judge Wimes' Order and advising that all Plan participants could arbitrate disputes relating to the Plan.  *See e.g., Hursh*, No. 21-9017, Doc. 1-6.  It would be unfair to permit DST to avoid its promises to the Confirmation Plaintiffs and escape its representations to Judge Wimes and numerous arbitrators.

***

In sum, judicial estoppel prohibits DST from claiming that the relevant arbitration agreements do not cover the Confirmation Plaintiffs' claims and from arguing that ERISA 502(a)(2) claims are not individually arbitrable.  *See Vacca*, 575 S.W.3d at 238 (finding that individual was estopped from taking position in court that "conflict[ed]" with position he had adopted in Social Security administrative proceeding "because he was playing 'fast and loose' with our judicial machinery"); *see also Hicks v. Bank of Am., N.A.*, 218 F. App'x 739, 746 (10th Cir. 2007) (finding that where a party "vigorously participated in the arbitration," including by "joining in [a] motion to stay [proceedings in a district court] pending completion of the arbitration" and arguing that "the arbitration clause . . . clearly encompassed all of the issues and claims . . . asserted," it had "waived its objection to arbitration and [wa]s estopped from arguing

that the arbitrator lacked personal jurisdiction to enter an award against it"); *Hicks v. Cadle,* 436 F. App'x 874, 879 (10th Cir. 2011) ("[I]t would be a perverse understanding of the concept of consent to hold that a party has not consented to arbitration that it *voluntarily sought.* Judicial estoppel does not override consent; it enforces past consent by preventing tactical after-the-fact retraction." (emphasis in original)); *see also United States v. Hamed,* 976 F.3d 825, 829 (8th Cir. 2020) (holding representations to court during criminal proceedings judicially estopped defendant in later denaturalization proceedings); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) ("Therefore, a party that takes a certain position in a legal proceeding, 'and succeeds in maintaining that position,' is prohibited from thereafter assuming a contrary position 'simply because his interests have changed,' especially if doing so prejudices the party 'who acquiesced in the position formerly taken by him.'" (quoting *New Hampshire*, 532 U.S. at 748)); *Shockley v. Dir., Div. of Child Support Enf't*, 980 S.W.2d 173, 175 (Mo. Ct. App. 1998) (judicially estopping defendant from changing its legal argument regarding the status of a judgment where it previously successfully took a contradictory proceeding before a different court).[41]

### c. Whether the Doctrines of Finality Are Outweighed by DST's Argument that § 502(a)(2) Claims Must be Resolved Collectively

Absent some exception, collateral estoppel and judicial estoppel bar DST's challenge to the scope of the arbitration agreement and the arbitrator's authority to resolve ERISA § 502(a)(2) claims in individual arbitrations. *See New Hampshire*, 532 U.S. at 749–50 ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory" (quotation marks and

---

[41] This estoppel analysis also counsels against transferring any of these Motions to the Southern District of New York.

citation omitted)); *see also* Restatement (Second) of Judgments §§ 28–29 (discussing general exceptions to collateral estoppel).

DST argues that either a statutory or public policy concern precludes individual litigation or arbitration of an ERISA § 502(a)(2) claim. As discussed in more detail below, neither public policy nor ERISA preclude individual representative § 502(a)(2) claims to make whole individual defined contribution accounts. But even if such a policy exists, it must be weighed against the finality doctrines discussed above. *See Sexton v. Jenkins & Assocs., Inc.*, 152 S.W.3d 270, 273–74 (Mo. banc 2004) ("Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties."). Here, the task of balancing competing considerations is simple because DST has identified no injury to the Plan or to Plan members that would result from recognizing the finality and enforceability of the arbitration awards under these circumstances. Indeed, under the facts of this case, no harm would occur. The Confirmation Plaintiffs brought their claims on behalf of the Plan and all financial recovery would go into the Plan—whose assets are held in the accounts of the individual Plan participants. DST has vaguely suggested that any recovery by the Plan must be distributed equally. Tellingly, DST provides no evidence to support this argument. The suggestion that the recovery for any fiduciary violation should be equally distributed among all participants defies common sense given that this is a defined contribution 401K plan. It would make no sense for an employee who had only a few dollars in his defined contribution account related to the profit-sharing program, because he had only been employed for a few years, to recover the same damages as an employee who had thousands of dollars in his account because he was employed far longer.

Second, the Plan was amended in February 2016, after DST's fiduciary breach, to require individual arbitration of fiduciary-breach claims, and the amendment incorporated by reference the arbitration agreements in DST's employment contracts.  *See e.g., Hursh*, No. 21-9017, Doc. 1-3, Plan Amendment § 9.11 ("Unless prohibited by ERISA, any and all claims arising out of or related to the Plan, other than claims for benefits due under the terms of the Plan, are subject to mandatory arbitration and class action waiver as provided under the Arbitration Policy in effect as part of the DST Systems, Inc. Associate Handbook (the 'Arbitration Policy') to the extent applicable to Company Employees, the terms of which are incorporated herein by reference."); *see also Ducharme*, No. 17-cv-0022-BCW, Doc. 55, Tr. 49:15–17 (DST's counsel stating, "Mr. Ducharme argued, well, it's not my agreement that matters, the Plan never agreed to arbitrate.  And I said, well, yes, it did. And here's the proof of it."); *id.* Tr. 13:7–11 (DST's counsel arguing that "the amendment to the Plan from 2016, long before this case, demonstrates that the Plan too prefers to arbitrate the claims").  This is evidence that the Plan was not opposed to the arbitrations at issue here and it is evidence (the only evidence on this issue) that neither the Plan nor the Plan participants would be injured by individual recovery of damages caused by DST's fiduciary breach. *See Hursh*, No. 21-9017, Doc. 1-3, Plan Amendment § 9.11; *cf. Hawkins v. Cintas Corp.*, 32 F.4th 625, 630 (6th Cir. 2022) ("It is irrelevant, according to Plaintiffs, that they may have agreed to arbitrate certain claims, since the Plan has not likewise consented to arbitration.  We agree that the Plaintiffs' employment agreements do not force this case into arbitration."), *cert. denied*, 143 S. Ct. 564 (2023).

Likewise, there is no evidence that members of the *Ferguson* class who did not arbitrate their claims would be injured if their share of damages from DST's fiduciary breach is determined in a class action while the Confirmation Plaintiffs preserve their arbitration awards as their share

of the Plan's damages.[42]  Had there never been any arbitrations, a class court or Plan administrators would have had to calculate the damage DST's fiduciary breaches caused to the individual account of each Plan participant.  Thus, having individual arbitrations to determine the extent to which each Plan participant's individual account was damaged by DST's fiduciary breach has no effect on the remaining class members' accounts or rights.  DST has not met its burden with respect to identifying harm to absent Plan participants.

While applying collateral and judicial estoppel will do no harm,[43] failing to apply these doctrines would cause harm to not only the Confirmation Plaintiffs, but also the judicial process and the people it serves as well as the strong federal policy favoring arbitration.  Permitting DST to vacate the Confirmation Plaintiffs' awards after forcing hundreds of Plan participants into arbitration will do nothing but encourage similar conduct by other litigants, both plaintiffs and defendants.  *See James*, 49 S.W.3d at 687 ("[T]he doctrine of collateral estoppel was designed, in part, to eliminate the very sort of legal maneuvering that occurred here, leading to superficially inconsistent findings.  To fail to apply the doctrine in favor of State Farm is virtually certain to encourage continued legal stratagems designed to create inconsistent factual adjudications.").

DST's forum shopping has also undermined the objectives of arbitration: a quick and final resolution of disputes controlled by the parties' agreement.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (noting "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject

---

[42] As discussed above, by operation of *res judicata*, the Confirmation Plaintiffs' ERISA claims are merged with their arbitration award.  Thus, the Confirmation Plaintiffs would not be entitled to recover in a class action unless their arbitration awards were affirmatively vacated.

[43] Even DST cannot claim to face any harm if the awards are confirmed, because confirmation would merely mean holding DST to the bargain it struck.

to delay and obstruction in the courts"). Here, even though the parties agreed to resolve these 177 disputes in arbitration, the Confirmation Plaintiffs find themselves in a time-intensive (indeed multi-year) procedural judicial labyrinth. This situation is inconsistent with the strong federal interest in the enforcement of arbitration agreements. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728–29 (1996) (referencing "a substantial federal concern for the enforcement of arbitration agreements); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631 (1985) (noting that the "strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions . . . is reinforced by the emphatic federal policy in favor of arbitral dispute resolution").

Furthermore, this is not a case like *Coan*, 457 F.3d 250, *Cooper*, 990 F.3d 173, *Hawkins*, 32 F.4th 625, *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021), *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512 (9th Cir. 2019), *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1106 (10th Cir. 2023), or any other case addressing the arbitrability of ERISA 502(a)(2) claims. In each of those cases, a court was deciding whether to compel arbitration. Here, DST already convinced Judge Wimes to dismiss Mr. Ducharme's first-filed class action in favor of individual arbitration.[44] And in fact, an

---

[44] In *Ostrander*, 2018 WL 10799300, and *Ostrander v. DST Sys., Inc.*, No. 20-0973, Doc. 23, Judge Wimes found that Ostrander's actions were "parallel" to *Ferguson*, which was the first-filed case. However, Ostrander, like Ferguson, and unlike Ducharme, was not subject to an arbitration agreement. *See Ostrander,* 2018 WL 10799300, at *1 (noting that the court had dismissed Ducharme's claims "because the plaintiff had signed an arbitration agreement"); *see also Canfield*, 2021 WL 1022698, at *3 ("The *Ostrander* plaintiff did not sign an arbitration agreement. Like the *Ferguson, Mendon, and Canfield* plaintiffs, she was free to bring her claims in federal court or arbitrations. She chose federal court. The Western District of Missouri Court dismissed her case not because it did not have jurisdiction over the matter, but rather because the court felt it more appropriate that her claims be considered by the court already considering the identical claims of similarly situated plaintiffs. From the *Ostrander* dismissal, it is impossible to draw the conclusion that the Western District of Missouri Court does not believe it has jurisdiction over the arbitration proceedings that must be brought in its district and which concern dissimilar plaintiffs."). Thus,

arbitration award has already been made and become final, and *res judicata* has attached, for each of the 55 cases over which the Court has jurisdiction.

DST has not identified, and the Court has not found, any case vacating an arbitration award for exceeding the arbitrator's authority where the party seeking vacatur not only participated in arbitration, but also invited it after getting a court to rule that the relevant arbitration agreement required individual arbitration). Under the circumstances, any public policy interest in bringing a § 502(a)(2) claims as a class action is outweighed by the values represented by the finality doctrines discussed above.[45]

For these reasons, DST cannot challenge the arbitration awards on the grounds that the arbitration agreements did not cover the Confirmation Plaintiffs' § 502(a)(2) claims or because ERISA § 502(a)(2) claims cannot be arbitrated individually.

_____

while *Ferguson* was the first-filed class action with respect to those who did not agree to arbitrate their claims, *Ducharme* was the first-filed class action by a plaintiff who was subject to an arbitration agreement. *Ducharme* was also the first case to decide the merits of the issues presented here.

[45] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356–57 (2006) (noting, in discussing the purpose of procedural default rules, "the law's important interest in the finality of judgments" (quotation marks and citations omitted)); *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 194 F.3d 922, 925 (8th Cir. 1999) (holding, on motion for Rule 60(b) relief, that change in state law following entry of judgment did not justify sacrificing "previously resolved claims"); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.8 (11th Cir. 1988) (noting "the strong policy favoring the finality of awards and judgments" (citing, *inter alia, Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 598 (3d Cir. 1968)); *Hicks v. Cadle,* 436 F. App'x 874, 879 (10th Cir. 2011) ("[I]t would be a perverse understanding of the concept of consent to hold that a party has not consented to arbitration that it *voluntarily sought.*" (emphasis in original)); Policies and Sources of Res Judicata, 18 Fed. Prac. & Proc. Juris. § 4403 n.2 (3d ed.) (noting that "the purpose of both claim and issue preclusion is 'protection of litigants from the vexation and expense of repetitious litigation, protection of the courts from the burden of unnecessary litigation, promotion of respect for the judicial process and confidence in the conclusiveness of judicial decision-making, avoidance of disconcertingly inconsistent results, and securing the peace and repose of society'" (quoting *Clark-Cowlitz Joint Operating Agency v. F.E.R.C.*, 775 F.2d 366, 373 (D.C. Cir. 1985), *reh'g granted, judgment vacated on other grounds*, 787 F.2d 674 (D.C. Cir. 1986)).

The "hypocrisy" of "wish[ing] to resort to a class-wide lawsuit, the very device it [originally] denied to the workers, to avoid its duty to arbitrate . . . will not be blessed, at least by this order." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020). As another federal court put it when similarly confronted with a party arguing that an arbitrator lacked jurisdiction to render the award against it,"[s]uch crass manipulation of the legal process constitutes an insult to the integrity of the judicial system and fully warrants invocation of the doctrine of judicial estoppel." *Data Mountain Sols., Inc. v. Giordano*, 680 F. Supp. 2d 110, 128 (D.D.C. 2010).

## 2. Merits of DST's Motion to Vacate

Even if the Court disregarded the finality doctrines and considered the merits of DST's arguments for vacatur under the FAA, the Court would reach the same conclusion.

First, to the extent DST argues that the awards should be vacated because public policy prohibits individual § 502(a)(2) arbitrations on behalf of the Plan, its argument fails. *Hall Street*, 552 U.S. 576, 582 (2008); *Med. Shoppe Int'l, Inc.*, 614 F.3d at 489; *see also Seldin v. Est. of Silverman*, 305 Neb. 185, 207 (2020), *cert. denied*, 141 S. Ct. 2662 (2021). DST cites one case, *Iowa Elec. Light & Power Co. v. Loc. Union 204 of Int'l Brotherhood of Elec. Workers (AFL-CIO)*, 834 F.2d 1424, 1427 (8th Cir. 1987), to support its position that a public policy violation is enough to vacate an arbitration award. But the Court doubts the applicability of *Iowa Elec. Light & Power*, given it was not decided under the FAA; the case discussed a labor arbitration under a collective bargaining agreement. Also, *Iowa Elec. Light & Power* long predates the Supreme Court's decision in *Hall Street*. Since that decision, the Eighth Circuit has rejected attempts to invalidate arbitration awards on grounds not listed in the FAA. *Med. Shoppe Int'l, Inc.*, 614 F.3d at 489.

Second, to the extent that DST argues that the Confirmation Plaintiffs' awards should be vacated because the arbitrators exceeded their authority by addressing the individual § 502(a)(2) claims, the Court is unpersuaded.  *See* 9 U.S.C. § 10(a)(4).  As an initial matter, like Judge Wimes, this Court concludes the relevant arbitration agreements do cover the Confirmation Plaintiffs' ERISA § 502(a)(2) claims.  The parties bargained for the arbitrator's resolution of the ERISA § 502(a)(2) claims, and the FAA does not permit any court to second guess the arbitrator's decision on claims submitted to arbitration.  Judicial review under § 10(a)(4) is narrow, and the FAA imposes an especially heavy burden on those seeking vacatur on the ground that an arbitrator exceeded her powers.  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  The scope of an arbitrator's authority is defined by the agreement requiring arbitration.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) ("Thus, in considering a section 10(b)(4) challenge, '[t]he principal question for the reviewing court is whether the arbitrator's award draws its essence' from the agreement to arbitrate . . . .").  "An arbitrator does not 'exceed his powers' by making an error of law or fact, even a serious one."  *Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 565 (8th Cir. 2018).  "The parties bargained for the arbitrator's decision; if the arbitrator got it wrong, then that was part of the bargain."  *Id.* at 566.  It is only when an arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Said differently, § 10 focuses on arbitrator "misconduct rather than mistake[.]"  *AT&T Mobility*, 563 U.S. at 350–51.

While DST now argues that the arbitration agreements originally signed by the Confirmation Plaintiffs do not cover these ERISA § 502(a)(2) claims, the parties unquestionably

submitted the Confirmation Plaintiffs' ERISA claims to the arbitrators when they jointly filed a signed joint submission with the AAA in each case. *See, e.g., Hursh*, No. 21-9017, Doc. 1-8 (joint submission to arbitration including ERISA § 502(a) claims, signed by both Parties). Each joint submission, which is filed with the AAA to commence arbitration proceedings, attaches the individual Confirmation Plaintiff's request for arbitration and therefore explicitly identifies each Confirmation Plaintiffs' ERISA § 502(a)(2) claims as those that the parties intended to arbitrate. Therefore, each joint submission filed with the AAA formed an additional, superseding agreement that set the scope of each arbitrator's authority. *See, e.g.*, *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) ("Under the Federal Arbitration Act, the Submission Agreement, being an 'agreement in writing to submit to arbitration an existing controversy,' is 'valid, irrevocable, and enforceable . . . .'") (quoting 9 U.S.C. § 2); *Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472, 475 (4th Cir. 2003) ("The Uniform Submission Agreement completed and signed by Fisher is a valid and binding contract that has the force of modifying earlier agreements."). For that reason, even if the original arbitration agreement between the parties did not require—or permit—the arbitration of ERISA fiduciary duty claims, the joint submission submitted to the AAA in each case, unquestionably did. *See Hursh*, No. 21-9017, Doc. 1-8 (parties' signed joint submission for arbitration of plaintiff's request for arbitration, which included individual ERISA § 502(a) claims on behalf of Ms. Hursh's own defined contribution account).

DST argues that the joint submissions do not show DST's consent to arbitrate because DST stated in the document, "[b]y making this joint submission pursuant to the terms of the Arbitration Agreement, the DST Respondents do not waive, and expressly reserve, all arguments and defenses in connection with the Demand . . . and, in particular, do not waive any defense or objection to

Claimant attempting to assert this claim as a class action, collective action, or representative action on behalf of the DST 401(k) Profit Sharing Plan." *See, e.g.*, *Hursh*, No. 21-9017, Doc. 1-8.

This reservation does not limit, revoke, or otherwise cast doubt upon DST's consent to arbitrate these claims. First, DST's vague, general reservation of arguments and defenses is not enough to suggest DST was not consenting to the arbitration of the individual fiduciary breach claims. *See Integrated Assocs. of Denver, Inc. v. Pope*, No. 21-1019, 2022 WL 2388420, at *7 (10th Cir. July 1, 2022) (finding party waived objection to arbitrability and rejecting reliance on a general "boilerplate" affirmative defense, instead requiring an explicit objection to proceeding in arbitration). "[M]any courts have held that, absent an explicit statement objecting to the arbitrability of the dispute, a party cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." *Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007) (quotation marks omitted; citing cases)). DST's general reservation of rights and defenses is far from an explicit statement by DST that it did not consent to arbitration, particularly in light of the joint submission as a whole, and DST's continued, active participation in the arbitration process.

Second, there is no evidence that DST ever told the individual arbitrators that ERISA § 502(a)(2) claims were not arbitrable. Even if DST *reserved* such a defense or argument in its joint submissions, there is no evidence that DST ever *raised* it. Because DST did not make any objection to arbitration, let alone a timely, explicit one, it has waived its ability to challenge the awards on those grounds now. *Lewis*, 500 F.3d at 1148 ("This court has adopted traditional waiver rules for arbitration proceedings because a rule of waiver is important to advance the goals of arbitration as an efficient method of dispute resolution for which parties may contract in advance. It would be unreasonable and unjust to allow a party to challenge the legitimacy of the arbitration

process, in which he had voluntarily participated over a period of several months.") (cleaned up);

*Kiernan v. Piper Jaffray Companies, Inc.*, 137 F.3d 588, 594 (8th Cir. 1998) (holding that, because plaintiffs voluntarily pursued arbitration to final binding decision without ever objecting, in arbitration, to arbitrability of their claims, plaintiffs were bound by arbitrator's decision).[46] This is true even though DST now argues that a federal statute—ERISA—prohibits the arbitration of a claim. *See Kiernan*, 137 F.3d at 594 (rejecting as waived an argument that the Americans with Disabilities Act prohibited arbitration of a claim because "Appellants initiated the arbitration process in this case, and they cannot now argue, after receiving an unfavorable result, that the arbitration panel did not have the authority to decide the issues involved."); *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 752 n. 4 (6th Cir. 2003) ("Although not the

---

[46] DST's argument that it later objected to proceeding in arbitration while the Second Circuit resolved arbitrability in *Cooper* fails. DST's request to administratively stay, directed to the AAA, does not address the substantive arbitrability of the ERISA § 502(a) claims. To the contrary, DST argued only that staying the arbitrations was necessary because the Second Circuit would decide whether Ruane would remain "subject to these arbitration proceedings—the outcome of which may significantly affect the administration of these arbitration proceedings" including "the manner in which the parties prepare their cases for hearing." *See, e.g., Hursh*, No. 21-9017, Doc. 16-7, p. 1–2. Indeed, as represented by DST, the only issue before the Second Circuit was the scope of the relevant arbitration agreement as applied to Ruane. DST never represented that the Second Circuit's resolution of that question would impact the arbitration proceedings against DST. Not only did DST fail to object to the arbitrability of the claims, but in fact DST expressly indicated its readiness to move forward with arbitration. DST wrote, "[t]he DST Respondents are therefore prepared to recommence the arbitrations" and indicated that it intended to submit new claims for arbitration once Cooper was resolved. *See id.*, p. 3. The letter mentions neither a potential class action in the Southern District of New York to which the arbitrators should cede jurisdiction nor any substantive objection to the arbitrability of ERISA § 502(a) claims.

It appears that DST also requested a stay in some individual arbitrations. But, again, DST never challenged the substantive arbitrability of the Confirmation Plaintiffs' claims or otherwise raised any objection to proceeding in arbitration. Instead, DST argued only that the Confirmation Plaintiffs' lawyers had been disqualified by the *Ferguson* court, and that the Southern District of New York was considering a mandatory non-opt-out class action that would encompass the claims. *Ferguson*, No. 17-cv-6685-ALC, Doc. 344-1.

basis of our decision, there appears to be merit to the argument that the Postal Service waived its public policy challenge to the arbitration award by failing to raise it during arbitration.").[47]

It is now too late for DST to claim that the arbitrators had no authority to issue the arbitration awards and that the awards therefore should be vacated. That argument has been waived. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Conntech Development Co. v. University of Conn.*, 102 F.3d 677, 685 (2d Cir. 1996) (concluding party must object to arbitrator's authority in arbitration proceeding).

---

[47] *See also Rock-Tenn Co.*, 184 F.3d at, 334–35 (4th Cir. 1999) ("[E]ven when a party could have refused arbitration in the first instance, ... if that party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it"); *Owen-Williams v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 907 F. Supp. 134, 137 (D. Md. 1995) ("To the extent that a party is entitled to challenge the validity of an agreement to arbitrate, the time to raise that issue is before the matter goes to arbitration, not after. Otherwise, a party could hold back, await the outcome of the arbitration, and then blithely render it null simply by challenging the validity of the proceedings. Failure to challenge arbitrability in a timely fashion and participating in the arbitration proceedings, in other words, will result in waiver of the right to object."), *aff'd*, 103 F.3d 119 (4th Cir. 1996); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) ("Once a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority. Nghiem is bound by the arbitrator's decision."); *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union*, 760 F.2d 173, 175-76 (7th Cir. 1985) (party is bound by arbitrator's decision if party voluntarily submits issue to arbitration); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) (employer waived any objection to arbitrator's jurisdiction by submitting issues to arbitrator; thus employer was bound by arbitrator's decision and could not pursue claim in federal court); *Baer v. Terminix Int'l Co., L.P.*, 975 F. Supp. 1272, 1279 (D. Kan. 1997) ("If a party submits and argues the issue on the merits without either objecting to the arbitrator's authority or expressly reserving the jurisdiction objection, the party waives its right to seek judicial review of this jurisdiction objection."); *Ramirez de Arellano v. American Airlines, Inc.*, 957 F. Supp. 359, 361 (D.P.R. 1997) (stating that "Plaintiff may not unilaterally disengage the gears of arbitration and file in court once he has voluntarily submitted to arbitration" and holding that arbitrator's decision was *res judicata*).

### 3. Whether ERISA § 502(a) Claims Are Individually Arbitrable

Even if DST could somehow show it reserved for the courts the question of whether § 502(a)(2) claims can be brought individually on behalf of a defined contribution benefits plan to recover the damage done to an individual account, it has failed to show such arbitrations are incompatible with ERISA. It is DST's burden to establish such a conflict, and it has not. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("The Arbitration Act, standing alone . . . mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."). There is nothing in ERISA's text, legislative history, or purpose that demonstrates a Congressional prohibition on the arbitration of ERISA claims generally. *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478–79 (8th Cir. 1988); *cf Pilger v. Sweeney*, 725 F.3d 922, 926 n.4 (8th Cir. 2013) ("[W]hen a defined-contribution plan is at issue, a [§502(a)(2)] plaintiff may recover individualized relief." (citing *LaRue*, 552 U.S. at 255–56)).[48] Further, the Supreme Court has suggested that ERISA "*does* authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (emphasis added); *see also id.* ("Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual

---

[48] *See also Smith*, 13 F.4th at 620 ("Joining every other circuit to consider the issue" to recognize that ERISA claims, including § 502(a) claims, are generally arbitrable, and identifying cases from the Second, Third, Fifth, Sixth, Eighth, Ninth, and Tenth circuits); G. Richard Shell, *ERISA and Other Federal Employment Statutes: When Is Commercial Arbitration an "Adequate Substitute" for the Courts?*, 68 TEX. L. REV. 509, 572–73 (1990) ("A careful review of ERISA discloses that, if Congress intended anything with respect to enforcement of the FAA, it intended to preserve the full application of the FAA in ERISA cases.").

accounts, it creates the kind of harms that concerned the draftsmen of § 409.").   Indeed, those circuits that have addressed this issue—all at the motion to compel stage—have generally identified no problem with an individual § 502(a)(2) claims brought on behalf of a Plan.[49]  While those cases have often refused to compel arbitration, they have done so due to features of the specific arbitration agreements at issue, features not present here.  *See, e.g.*, *Harrison*, 59 F.4th at 1106–09.

DST cites only the Second Circuit's decision in *Cooper* for the proposition that individual § 502(a)(2) claims are impermissible.  *Hursh*, No. 21-9017, Doc. 16, pp. 17–18.  But the plaintiff in *Cooper* sought to proceed in an individual § 502(a)(2) action to recover all the damage done to the *whole* plan—not just the damage done to the individual plaintiff's account.  *Cooper*, 990 F.3d at 184.  The same was true in *Coan*, 457 F.3d at 254, the Second Circuit case on which *Cooper* relied.  An ERISA § 502(a)(2) claim to recover all damages done to the Plan, like the claims discussed in *Cooper* and *Coan*, necessarily implicates the interests of other, absent parties.  As a result, procedural safeguards, such as those provided in a class action or shareholder derivative action, are necessary.  *See Coan*, 457 F.3d at 261 ("We think it neither necessary nor helpful to delineate minimum procedural safeguards that section 502(a)(2) requires in all cases . . . Ultimately, however, the requirement is only that the plaintiff take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of the plan.'").

But here, where each Confirmation Plaintiff's ERISA § 502(a)(2) claim was limited to the damage done to the Plan's assets held in that Plan participant's own account, the risk of harm

---

[49]*See e.g., Smith*, 13 F.4th at 620; *Dorman*, 780 F. App'x at 512 (compelling arbitration of ERISA § 502(a) claims because the plan and plan participant agreed to arbitrate on an individualized basis, § 502(a)(2) "are inherently individualized when brought in the context of a defined contribution plan," and therefore arbitration was consistent with *LaRue*); *Harrison*, 59 F.4th at 1106.

discussed in *Coan* and *Cooper* is not present. *Coan* and *Cooper* therefore do not suggest that the Confirmation Plaintiffs' individual arbitrations were improper.

DST also cites several cases for the premise that ERISA § 502(a)(2) claims must be brought on behalf of a benefits plan and that ERISA "does not provide a remedy for individual injuries distinct from plan injuries." *Hursh*, No. 21-9017, Doc. 16, p. 17–20 (quoting *LaRue*, 552 U.S. at 256). The Court does not disagree with either "basic" tenet of ERISA. *Id.* at 17. However, neither helps DST. The Confirmation Plaintiffs recovered on behalf of the Plan for damage done to the Plan. Not only that, but the damages recovered were not "distinct" from Plan injuries. *LaRue*, 552 U.S. at 262–63 ("[A] defined contribution plan is essentially the sum of its parts, losses attributable to the account of an individual participant are necessarily 'losses to the plan' for purposes of § 409(a).") (Thomas, J. concurring). "[W]hen a participant sustains losses to his individual account as a result of a fiduciary breach, the plan's aggregate assets are likewise diminished by the same amount, and § 502(a)(2) permits that participant to recover such losses on behalf of the plan." *Id.*

Furthermore, finding that § 502(a)(2) claims can be pursued individually, so long as they are limited to damages to a defined contribution plan allocable to the plaintiffs own account, does not mean that class or collective actions are impermissible. To the contrary, this Court has previously found that § 502(a)(2) claims can be pursued in a class action. *See Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 190 (W.D. Mo. 2009).[50] But that is not now the question before this

---

[50] DST claims that in *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 190 (W.D. Mo. 2009), this Court rejected the reading of *LaRue* adopted in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019), and other cases finding ERISA claims arbitrable. First, *Jones* involved a motion to certify a class under § 502(a)(2) and (3). The issue was whether the class representative had claims typical of the class. It had nothing to do with arbitration. Second, *Jones* simply held that "*LaRue* does not eliminate the possibility of § 502(a)(2) class actions." *Id.* The Court did not suggest that individual causes of action are impermissible under *LaRue*; to the contrary, the Court

Court.  The question here is whether ERISA § 502(a)(2) claims can proceed individually when they seek to recover only the damages a fiduciary breach causes to an individual account.  There is simply no evidence of a Congressional mandate that they cannot.

At bottom, DST has identified no authority to suggest that § 502(a)(2) claims brought on behalf of a plan and targeting only the damage done to an individual defined contribution account are impermissible.  *Cf. Pilger*, 726 F.3d at 926 n.4.

### C. Whether the Class Certification Order in *Ferguson* Should Affect the Court's Decision Regarding the Arbitration Awards

#### 1. Whether the Class Certification Order Automatically Enjoined the Arbitrations

DST argues that once the *Ferguson* class was certified, the Confirmation Plaintiffs were barred from "pursuing litigation relating to or seeking to resolve[] the class claims."  In support, DST cites *In re Federal Skywalk Cases*, 680 F.2d 1175, 1180 (8th Cir. 1982).  The language cited by DST from *Federal Skywalk* is taken out of context.  While that decision does state, "[i]t is true that parties to a mandatory class are not free to initiate actions in other courts to litigate class certified issues," the very next sentence states, "However, in the present case the objectors had commenced their state court actions before the motion for class certification had been filed in district court."  *Fed. Skywalk*, 680 F.2d at 1180.  In *Federal Skywalk*, the Eighth Circuit vacated the class certification order.  *Id.* at 1183.  In doing so, the Eighth Circuit distinguished the class certification order before it, which had purported to enjoin "pending . . . actions," from other cases in which permissible injunctions were "against subsequent . . . actions."  *Id.* at 1182.  Thus, insofar

---

recognized that "*LaRue* . . . expanded the relief available under § 502(a)(2), so that recovery can now be had when a participant demonstrates that fiduciary misconduct affected his individual account."  *Id.* (quoting *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108–09 (N.D. Cal. 2008)).  As the Court has already said, confirming the awards here does not constitute a ruling that ERISA § 502(a)(2) class actions are improper.

as *Federal Skywalk* is relevant, it suggests that a class-certification order that interferes with pending proceedings may be improper. *Cf. Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003) (affirming class court's stay of related litigation after preliminary approval of class settlement).

DST also cites *Goff*, 672 F.2d at 702, and *Rich*, 516 F.3d at 80, to suggest that this Court should defer to the *Ferguson* court on these confirmation actions because of the class certification order. Both cases are distinguishable. In *Goff*, a prison conditions case, the Eighth Circuit reversed a district judge who entered an equitable order addressing prison-wide relief after another district judge had already certified a class and entered a preliminary injunction dealing with the same prison conditions. The Eighth Circuit said that "[t]wo of the primary purposes underlying Fed. R. Civ. P. 23 are avoidance of both duplicative litigation and inconsistent standards. Both policies are undermined when two suits challenging the same prison conditions are allowed to proceed. After rendition of a final judgment, a class member is ordinarily bound by the result of a class action. This court has on several occasions refused to allow prisoners to relitigate issues decided in prior class actions." *Goff*, 672 F.2d at 704 (Citations omitted). *Goff* is distinguishable because the class there had been certified, and a preliminary injunction issued, before any individual action was filed. Here, the individual arbitrations were filed, and the arbitrators had resolved the Confirmation Plaintiffs' ERISA § 502(a)(2) claims, before the *Ferguson* class was certified. Indeed, *Goff* suggests that an arbitration award should be given deference in other courts, even a court certifying a class action relating to similar claims. *Goff* does not support DST's suggestion that class certification should supersede an arbitration award.

*Rich* is also instructive. 516 F.3d at 77–80. Three tribunals were involved in *Rich*: the class court, the arbitration panel, and a confirmation court. The class court certified the class action after the plaintiff's separate arbitration proceedings started; the class claims duplicated a large

portion of the plaintiff's claims in arbitration. The arbitration plaintiff was also a class member, and he never opted out of the class. The class action was then resolved on the merits before the arbitration evidentiary hearing finished and before any award was ever rendered. The class court entered an injunction after the merits of the class action were resolved, and no one disputed that the injunction barred the arbitration claimant from recovering separately in arbitration for the claim resolved by the class court. Even so, the arbitration panel proceeded to issue an award. The plaintiff eventually sought to confirm the award, and the confirmation court transferred the case to the class court that had entered the injunction after the merits of the class action had been resolved to determine whether the arbitration award implicated claims covered by the class action. Again, *Rich* is easily distinguishable. There, the class claim was resolved on the merits before the arbitration award was entered, and therefore the class court's final resolution took precedence. The Court applies the same simple concepts in this Order as well: the arbitration awards were resolved on their merits before the *Ferguson* court addressed the merits of the class claims. Class certification is not a decision on the merits; it is an interlocutory order subject to modification as the *Ferguson* case moves forward. *Rich* does not stand for the proposition that class certification alone freezes or subsumes an arbitration award already entered.

A few courts have suggested that a class certification itself operates to supersede or stay all *pending* parallel litigation. *See In re Joint E. & S. Dists. Asbestos Litig.*, 120 B.R. 648, 654–55 (E.D.N.Y. 1990) ("The effect of conditional class certification will be for all pending state and federal cases to become part of the mandatory class and cease to exist as independent cases.") (citing *In re Federal Skywalk Cases,* 680 F.2d 1175, 1180–82 (8th Cir.), *cert. denied,* 459 U.S. 988 (1982)); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 36 (E.D.N.Y. 1990) (same); *see also Mycka v. Celotex Corp.*, No. CIV.A. 87-2633, 1988 WL 80042, at *4 (D.D.C. July 18,

1988) (attaching as appendix class-court order stating "[t]he act of certifying a mandatory class under Fed. R. Civ. P. 23 effectively stays all personal injury actions presently pending against [defendant] throughout the United States and its territories, as well as the filing of any future claims" (citing *In re Dennis Greenman Securities Litigation,* 829 F.2d 1539, 1544 (11th Cir.1987) (mentioning the issue only in dicta))). But in each of these cases, the class court explicitly enjoined pending litigation against the class action defendant after finding that doing so was necessary to administer the class.[51]  The Court found no case in which a court held, or even suggested, that a different court's class certification order itself automatically, or without explicit instruction, stayed or superseded all pending litigation and therefore all pending litigation that continued from the date of class certification was unauthorized or effectively invalid.

There is no basis for interpreting the *Ferguson* court's class certification order as the equivalent of an order immediately staying pending litigation by class members, let alone class members whose cases were already on appeal in the arbitration process.  The class certification order does not explicitly purport to stay—or affect—any other proceedings against DST. *Ferguson*, 17-cv-6685-ALC, Doc. 311.  Staying pending arbitration necessarily implicates important contractual rights protected by the FAA.  *In re Piper Funds*, 71 F.3d at 303 (vacating stay issued after certification of preliminary settlement class).  When courts have decided to stay

---

[51] *In re Joint E. & S. Dists. Asbestos Litig.*, 120 B.R. at 654 ("On November 23, 1990 . . . the court issued the following orders: first, an Order Conditionally Certifying Class Action and Appointing Representative Counsel and Others . . . fourth, an Order Staying Proceedings against the Trust, *see infra* p. 688; [and] fifth, an Order Making Exceptions to Stay of Proceedings, *see infra* p. 689 . . ."); *Mycka*, 1988 WL 80042, at *1 ("The Court is in receipt of an order filed in the United States District Court for the Northern District of Georgia . . . in which Judge Vining directed that all actions, in both state and federal courts, against Raymark Industries, Inc. be stayed."); *see also Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 346 (S.D. Miss. 2003) (noting that class court certified a mandatory non-opt out class and separately stayed all parallel proceedings; the Fifth Circuit affirmed the stay without accepting the interlocutory appeal addressing class certification, *Smith v. Tower Loan of Mississippi, Inc.*, 1:98-cv-212, Doc. 63 (5th Cir.)).

pending arbitrations following the certification of a mandatory class, they have done so by explicitly engaging with the equities and policy concerns involved. *See, e.g*, *Stott v. Cap. Fin. Servs., Inc*., 277 F.R.D. 316, 337 (N.D. Tex. 2011) (analyzing the competing policy and equitable concerns inherent in staying pending arbitration after certifying a mandatory non-opt out class). That did not occur in *Ferguson* at the time class certification was granted. That said, the *Ferguson* court did address the propriety of an injunction several months later, after receiving input from the parties, which suggests that the class certification order itself did not constitute an injunction. Even then, when the *Ferguson* court granted the injunction DST requested, it bound *class members*, not the arbitrations themselves. *Ferguson*, 17-cv-6685-ALC, Doc. 355. In any event, by that time, any pending arbitration appeals had already become final.

Further, it is significant that, in the Eastern District of New York cases cited above, the judges presiding over the class actions conferred with the judges presiding over the related pending litigation and either "allowed" cases that were at the trial stage "to continue to judgment" or proceeded with injunctions only after determining that no cases were on trial. *In re Joint E. & S. Dists. Asbestos Litig.*, 120 B.R. at 654–55 ("After conferring with many state and federal judges on the wisdom, propriety and effect of a mandatory national class action, this court finds a general consensus among all judges that pending cases should be superseded by and become part of, a single national class action. Some cases are actually on trial. The court has consulted with many of the judges with cases actually on trial and has allowed those cases to continue to judgment."); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. at 36 ("The court was informed that no cases are actually on trial. . . . Should any court, for special circumstances, desire to continue with scheduled trials or hearings, an application for an exception may be made."). The fact that the

courts took pains to avoid interfering with cases in trial or pending trial suggests a recognition that class certification should not unduly interfere with cases that were close to resolution.[52]

Finally, if class certification could sweep aside a court's verdict that had not yet become final (for example, because post-trial motions were pending), such a rule would result in chaos in the litigation system. Arbitration awards deserve no less respect than orders of a court. To hold otherwise would endorse rampant forum-shopping and gamesmanship, undermine predictability, consistency, and judicial economy, result in the waste of private and judicial resources, and severely undercut the credibility of both the judicial system and the arbitration system that the FAA protects. The legal position that DST asks the Court to take thus not only is unprecedented, but also would have reverberations far beyond this case.

## 2. Whether this Court Should Defer to the *Ferguson* Court

DST argues that confirming the Confirmation Plaintiffs' arbitral awards would interfere with the Ferguson court's jurisdiction over the class claims because the Confirmation Plaintiffs are members of the *Ferguson* class and *Ferguson* was "first filed." As an initial matter, as already discussed, the "first-filed" case with relevant rulings in this matter was *Ducharme*. *Ducharme* decided the issues that DST has raised in its briefing—whether the arbitration agreement applies to the Confirmation Plaintiffs' ERISA § 502(a)(2) fiduciary breach claims and whether individual representative actions by plan participants are permissible—before *Ferguson* was filed.

In any event, whether *Ferguson* was first filed is irrelevant because the awards have become final and *res judicata* has attached to them. *See* Restatement (Second) of Judgments § 14 (1982) ("Thus when two actions are pending which are based on the same claim, or which involve

---

[52] Insofar as any of these cases rely on *Skywalk*, they are not persuasive for the reasons discussed above.

the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action (assuming any further prerequisites are met), regardless of which action was first brought.").  All prerequisites have been met here.

Insofar as DST may be concerned about the potential that the Confirmation Plaintiffs will recover twice for one injury, it may seek relief in *Ferguson* by, for instance, seeking to certify a subclass or to amend the class definition to remove the Confirmation Plaintiffs, all of whom already have a final arbitration award resolving their claims.  There need be no duplication.

### D.  DST's Concern About Plaintiff's Counsel's Expenses

Finally, DST argues that Plaintiff's counsel impermissibly seeks to recover multiple times for the same out-of-pocket costs, despite representing to every arbitrator that they would not recover the same expenses more than once.  However, the issue does not appear ripe for court intervention.  Plaintiff's counsel has represented that, as they have agreed multiple times, they will work with DST to ensure that they recover no more than 100% of their costs.  DST complains that Plaintiff's counsel has not explained how such a promise may be enforced after judgment is entered.  However, insofar as Plaintiff's counsel breaches an agreement, of course, traditional contract remedies are available, in addition to remedies available under federal law and rules for purported misrepresentations by attorneys.

In any event, this issue does not appear to affect the integrity of the awards themselves and should have been raised on appeal before the arbitrators.  Furthermore, DST has not shown in what arbitration any alleged double recovery has occurred, or in what amount.  Therefore, there is insufficient evidence before the Court to warrant a ruling in DST's favor on the subject.

### E.  Plaintiffs' Motions to Confirm Their Awards

There is a "liberal federal policy favoring arbitration agreements" that has long been protected by both Congress and the federal courts.  *See, e.g.*, 9 U.S.C. § 2; *Howsam v. Dean Witter*

*Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  Flowing from that, courts have uniformly required that "all doubts must be resolved in favor of arbitration[,]" even "when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).[53]  And after an arbitration has occurred, courts afford "an extraordinary level of deference to the underlying arbitration award" and have "no authority to reconsider [its] merits."  *Martinique Properties, LLC v. Certain Underwriters at Lloyd's of London*, No. 21-3561, 2023 WL 2292274, at *1 (8th Cir. Mar. 1, 2023) (quotation marks omitted).  For that reason, the FAA gives federal courts no discretion:  courts must confirm an arbitration award unless it is vacated or corrected for one of the narrow reasons contained within the statute.  *UHC Mgmt. Co.*, 148 F.3d at 997.  Because DST's arguments in favor of vacatur have been rejected, the Court must grant the 55 Motions to Confirm.

## IV.     CONCLUSION

With respect to the 55 cases over which the Court has subject matter jurisdiction, which are listed in Appendix A, the Court **DENIES** DST's Motion to Transfer, Dismiss, or Vacate and **GRANTS** the Confirmation Plaintiffs' Motions to Confirm.  As for the remaining 122 cases, the Court **DENIES** DST's Motion to Transfer or Vacate, but, for lack of subject matter jurisdiction, **GRANTS** DST's Motion to Dismiss.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: <u>March 31, 2023</u>
Jefferson City, Missouri

---

[53] As explained, ERISA does not provide such a Congressional command.

**Appendix A**

| Case Caption | Case No. | Amount of Award |
|---|---|---|
| Rutkowski v. DST Systems, Inc. | 4:21-00705-NKL | $14,871.79, plus $74,736.92 in attorneys' fees, expenses of $40,693.19, and statutory costs of $36,668.86 |
| Hursh v. DST Systems, Inc. | 4:21-cv-9017-NKL | $136,741.00 |
| Hamilton v. DST Systems, Inc. | 4:21-cv-9019-NKL | $89,087.97 |
| Miser v. DST Systems, Inc. | 4:21-cv-9023-NKL | $94,369.51 |
| Kudrick v. DST Systems, Inc. | 4:21-cv-9033-NKL | $113,169.31 |
| Kannard v. DST Systems, Inc. | 4:21-cv-9035-NKL | $900,148.37 |
| Bross v. DST Systems, Inc. | 4:21-cv-9036-NKL | $141,866.71 |
| Yungeberg v. DST Systems, Inc | 4:21-cv-9038-NKL | $273,704.99 |
| Highfill v. DST Systems, Inc. | 4:21-9046-NKL | $25,326.83, plus $50,668.00 in attorneys' fees and $5,963.92 in costs |
| Scarbrough v. DST Systems, Inc. | 4:21-cv-09047-NKL | $98,933.48, plus $39,573.39 in attorneys' fees and $34,405.72 in costs |
| Sutton v. DST Systems, Inc. | 4:21-09052-NKL | $37,735.00, plus $189,827.66 in attorneys' fees and $31,718.98 in costs |
| Dunbar v. DST Systems, Inc. | 4:21-cv-09079 | $12,158.58, plus $67,507.00 in attorneys' fees and $46,126.00 in costs/expenses |

| | | |
|---|---|---|
| Allen v. DST Systems, Inc. | 4:21-09080-NKL | $5,692.36, plus $29,149.49 in attorneys' fees, $40,876.20 in expenses, statutory costs of $32,838.82 |
| Revis v. DST Systems, Inc. | 4:21-09082-NKL | $14,721.00, plus $241,603.60 in attorneys' fees, $27,438.90 in expenses, and $35,022.01 in statutory costs |
| Carey v. DST Systems, Inc. | 4:21-09083-NKL | $32,617.71, plus $15,496.40 in attorneys' fees and $35,235.92 in costs |
| Berkstresser v. DST Systems, Inc. | 4:21-cv-09086-NKL | $13,662.75, plus $72,549.42 in attorneys' fees, expenses of $40,693.19, and statutory costs of $36,668.86 |
| Carroll v. DST Systems Inc | 4:21-cv-09090-NKL | $91,857.00, plus attorneys' fees of $36,742.80 and statutory costs of $34,321.79 |
| Ducharme v. DST Systems Inc | 4:21-09091-NKL | $40,669.86, plus attorneys' fees of $100,000.00 and costs of $33,090.45 |
| Robinson v. DST Systems Inc | 4:21-09092-NKL | $38,658.00, plus attorneys' fees of $15,463.20, reasonable out of pocket expenses of $35,239.92, and statutory costs of $25,906.55 |

| | | |
|---|---|---|
| Moll v. DST Systems Inc | 4:21-09094-NKL | $41,431.96, plus attorneys' fees of $203,414.00 and costs of $74,242.16 |
| Garvey v. DST Systems Inc | 4:21-09097-NKL | $43,046.43, plus attorneys' fees of $63,366.00, statutory costs of $2,479.00, and reasonable out-of-pocket expenses of $1,860.00 |
| McConnell v. DST Systems Inc | 4:21-09105-NKL | $136,423.61, plus attorneys' fees of $265,467.15, and costs of $26,884.13 |
| Coulter v. DST Systems Inc | 4:21-09106-NKL | $5,716.84, plus attorneys' fees of $156,175.79, expenses of $40,846.82, and statutory costs of $34,875.98. |
| Neff v. DST Systems Inc | 4:21-09107-NKL | $2,666.39, plus attorneys' fees of $35,948.65, expenses of $40,708.21, and statutory costs of $36,752.74. |
| Sheeders v. DST Systems Inc | 4:21-09108-NKL | $23,765.46, plus attorneys' fees of $36,208.65, expenses of $40,708.21, and statutory costs of $36,752.74. |

| | | |
|---|---|---|
| VanKam v. DST Systems Inc | 4:21-09113-NKL | $37,849.89, plus attorneys' fees and out of pocket expenses of $214,328.74 and costs of $35,243.30 |
| Schultz v. DST Systems Inc | 4:21-09114-NKL | $1,791.54, plus attorneys' fees and expenses of $126,128.50 and costs of $26,343.77. |
| Horan v. DST Systems Inc | 4:21-09120-NKL | $641,081.84, plus attorneys' fees of $256,432.80, expenses of $37,159.00, and costs of $41,170.78. |
| Harris v. DST Systems Inc | 4:21-09125-NKL | $65,302.37, plus attorneys' fees of $26,120.95 and costs of $118.15. |
| Kolev v. DST Systems Inc | 4:21-09126-NKL | $3,458.68, plus attorneys' fees of $197,092.10, expenses of $30,421.54, and statutory costs of $33,582.12. |
| Stalcup v. DST Systems Inc | 4:21-09127-NKL | $262,563.80, plus attorneys' fees of $105,025.52 and costs of $35,459.85 |
| Schlintz v. DST Systems, Inc. | 4:21-09129-NKL | $58,388.00, plus attorneys' fees of $42,395.00 and costs and expenses of $4,545.75. |

| | | |
|---|---|---|
| Schell v. DST Systems, Inc. | 4:21-09130-NKL | $61,154.86, plus attorneys' fees of $40,960.00, reasonable expenses of $36,022.00, and statutory costs of $35,460. |
| Bostick v. DST Systems, Inc. | 4:21-cv-09133-NKL | $8,889.53, plus attorney's fees of $96,146.95 and outof-pocket expenses of $31,150.64 |
| Kane v. DST Systems, Inc. | 4:21-09137-NKL | $8,454.00, plus attorneys' fees of $144,247.00, reasonable out of pocket expenses of $26,434.00 and statutory costs of $35,723.00 |
| McMullin v. DST Systems Inc | 4:21-09139-NKL | $74,845.09, plus attorneys' fees of $185,000.00 and out of pocket expenses of $32,754.95 |
| Larson v. DST Systems Inc | 4:21-09140-NKL | $58,734.22, plus attorneys' fees of $42,111.00, out of pocket expenses of $36,022.00 and, $35,460.00 in costs |
| Byers v. DST Systems Inc | 4:21-09141-NKL | $6,381.00, plus attorneys' fees of $113,273.60, out of pocket expenses of $40,084.38 and costs of $15,471.40 |
| Bay v. DST Systems Inc | 4:21-09144-NKL | Attorneys' fees of $175,523.35 and costs of $2,657.03 |

**Appendix A**

| | | |
|---|---|---|
| Cubbage v. DST Systems Inc | 4:21-09152-NKL | $161,748.19, plus attorneys' fees of $125,000.00 |
| Leineke v. DST Systems, Inc. | 4:21-09155-NKL | $382,276.00 |
| Barkley v. DST Systems Inc | 4:21-09158-NKL | $29,874.71, plus attorneys' fees of $32,906.00, expenses of $45,216.94, and statutory costs of $25,906.55 |
| Buechel v. DST Systems Inc | 4:21-09159-NKL | $18,832.10, plus attorneys' fees of $34,186.50, $29,505.93 in expenses, and statutory costs of $14,607.50 |
| Wright v. DST Systems, Inc. | 4:21-cv-09164-NKL | $7,156.84, plus attorney's fees of $79,043.25, out-of-pocket expenses of $19,827.79, statutory costs of $5,319.70, and post-judgment interest |
| Davis v. DST Systems, Inc. | 4:21-cv-09168-NKL | Attorney's fees of $126,257.10, out-of-pocket expenses of $17,896.22, statutory costs of $6,396.53, and post judgment interest |
| Lovetere v. DST Systems, Inc. | 4:21-cv-09170-NKL | $7,018.68, plus attorney's fees of $170,342.13, statutory and out of pocket costs of $27,976.12, and post judgment interest. |

6

| | | |
|---|---|---|
| Crocker v. DST Systems, Inc. | 4:21-cv-09174-NKL | $172,067.12, plus attorney's fees of $175,000, costs of $35,482.34, and post judgment interest |
| Edlund v. DST Systems, Inc. | 4:21-cv-09177-NKL | $4,696.24, plus attorney's fees of $63,431.44, expenses of $48.15, costs of $31,555.31, and postjudgment interest. |
| Conklin v. DST Systems, Inc. | 4:21-cv-09181-NKL | $1,698.00, plus attorney's fees of $84,813.70, and costs of $56,044.86. |
| Giro v. DST Systems, Inc. | 4:21-cv-09184-NKL | $31,643.62 in damages, plus attorney's fees of $50,342.30, plus expenses of $37,242.76, costs of $2,379.60, and postjudgment interest. |
| McManus-Newtal v. DST Systems, Inc. | 4:21-cv-09185-NKL | $8,194.02, plus attorney's fees of $247,306.93, statutory costs of $11,949.88, and postjudgment interest |
| Alden v. DST Systems, Inc. | 4:21-cv-09186-NKL | $24,659.60, plus attorney's fees of $250,769.43, statutory costs of $11,949.88, and postjudgment interest |

| | | |
|---|---|---|
| Singh v. DST Systems, Inc. | 4:21-cv-09195-NKL | $13,873.00, plus attorney's fees of $103,505.00, statutory costs of $12,277.00, plus expenses of $20,000.00, and post-judgment interest. |
| Sabin v. DST Systems, Inc. | 4:21-cv-09196-NKL | $95,020.40, plus attorney's fees $55,968.40, costs of $11,136.40 and pre-judgment interest. |
| Sarette v. DST Systems, Inc. | 4:21-cv-09198-NKL | $15,857.22, plus attorney's fees of $99,560.00, statutory costs of $10,928.90, and postjudgment interest. |