# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THERESA HURSH,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09017-NKL |
| JASON HAMILTON,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09019-NKL |
| MELODY MISER,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09023-NKL |
| LISA KUDRICK,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09033-NKL |
| JANET KANNARD,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09035-NKL |
| VANESSA BROSS,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09036-NKL |
| SCOTT YUNGEBERG,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09038-NKL |
| KELLY HIGHFILL,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-09046-NKL |

| | |
|---|---|
| KOLE SCARBROUGH,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-09047-NKL |
| JASON SUTTON,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-09052-NKL |
| BRUCE ALLEN,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-09080-NKL |
| KRISTY HILL REVIS,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-09082-NKL |
| TINA CAREY,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-09083-NKL |
| ROB BERKSTRESSER,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-09086-NKL |
| NICK RUTKOWSKI,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-00705-NKL |
| DENNIS DUNBAR,<br>        Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>        Defendant. | Case No. 4:21-09079-NKL |

| | |
|---|---|
| JEFF CARROLL,<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09090-NKL |
| JAMES DUCHARME,<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09091-NKL |
| JAMES ROBINSON,<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09092-NKL |
| KEVIN MOLL<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09094-NKL |
| LEANN GARVEY,<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09097-NKL |
| JOHN MCCONNELL,<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09105-NKL |
| TOM COULTER,<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09106-NKL |
| PHILIP NEFF,<br>               Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>               Defendant. | Case No. 4:21-09107-NKL |

| | |
|---|---|
| ROBERT SHEEDERS,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09108-NKL |
| MITCH VANKAM,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09113-NKL |
| JOHN SCHULTZ,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09114-NKL |
| JOAN HORAN,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09120-NKL |
| JEFF HARRIS,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09125-NKL |
| STEFAN KOLEV,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09126-NKL |
| DOUG STALCUP,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09127-NKL |
| SALLY SCHLINTZ,<br>         Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>         Defendant. | Case No. 4:21-09129- NKL |

| | |
|---|---|
| CHARLES SCHELL,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09130-NKL |
| SHELLEY MCMULLIN,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09139-NKL |
| BRENT LARSON,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09140-NKL |
| THERESA BYERS,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09141-NKL |
| STEPHEN BAY,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09144-NKL |
| JANICE CUBBAGE,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09152-NKL |
| PEGGY LEINEKE,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09155-NKL |
| JUREE BARKLEY,<br>　　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　　Defendant. | Case No. 4:21-09158-NKL |

| | |
|---|---|
| TOM BUECHEL,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-09159-NKL |
| KEVIN BOSTICK,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-09133-NKL |
| ALICE WRIGHT,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-09164-NKL |
| THOMAS KANE,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-09167-NKL |
| JACQUELINE DAVIS,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-9168-NKL |
| DAVE LOVETERE,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-9170-NKL |
| HARRY CROCKER,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-9174-NKL |
| THOMAS EDLUND,<br><div align="center">Plaintiff,</div>v.<br>DST SYSTEMS, INC.,<br><div align="center">Defendant.</div> | Case No. 4:21-9177-NKL |

| | |
|---|---|
| ROBERT CONKLIN,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant | Case No. 4:21-9181-NKL |
| MICHAEL GIRO,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant | Case No. 4:21-9184-NKL |
| JILL MCMANUS NEWTAL,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-9185-NKL |
| TRACY ALDEN,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-9186-NKL |
| PARMINDERJIT SINGH,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-9195-NKL |
| MARTHA SABIN,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-9196-NKL |
| KATHLEEN SARETTE,<br>　　　　　　Plaintiff,<br>v.<br>DST SYSTEMS, INC.,<br>　　　　　　Defendant. | Case No. 4:21-9198-NKL |

**ORDER**

Defendant and judgment debtor DST Systems, Inc. moves for stay of the injunction the Court entered on April 10, 2023.  Doc. 56.[1]  For the reasons discussed below, the Motion for Stay is DENIED.

## I.  BACKGROUND[2]

On March 31, 2023, this Court entered an order that, *inter alia*, confirmed arbitration awards in favor of the 55 plaintiffs (the "Judgment Creditors") in the cases captioned above and entered a final judgment in each case.  Docs. 45, 46.

On April 10, 2023, counsel for the Judgment Creditors moved on an emergency basis, but with notice, for a temporary restraining order and preliminary injunction restraining and enjoining DST, the DST Systems, Inc. 401(K) Profit Sharing Plan, The Advisory Committee of the DST Systems, Inc. 401(K) Profit Sharing Plan, The Compensation Committee of the Board of Directors of DST Systems, Inc., and their respective law firms, and anyone acting on their behalf or in concert with them, "from settling, or attempting to settle, through any class or representative action, the Confirmation Plaintiffs' individual arbitration awards, or any part thereof, unless such settlement is entered into individually and voluntarily by the Confirmation Plaintiff and the attorneys to whom any related fees and costs were awarded."  Doc. 47.

The Court scheduled oral argument on that motion the very same day.  Doc. 48.

At oral argument, judgment debtor DST stated that it was "on the cusp of submitting a settlement in the class actions to the Southern District of New York later this week."  Doc. 51, Tr.

---

[1] "Doc." refers to docket numbers in *Hursh v. DST Sys.*, No. 21-9017.  Although the referenced documents have been filed in each of the 55 cases captioned above, the docket numbers may vary from case to case.

[2] For additional background concerning these cases, *see Hursh v. DST Sys., Inc.*, No. 21-cv-9017, 2021 WL 4526849 (W.D. Mo. Oct. 4, 2021), and *Hursh v. DST Sys., Inc.*, No. 21-cv-9017, 2023 WL 2754432 (W.D. Mo. Mar. 31, 2023).

5:11-13. DST opposed the proposed injunction because it would "enjoin all the parties to that [class action] from filing that settlement agreement with" the class action court. *Id.*, Tr. 6:4-6. The Court questioned DST's characterization:

> THE COURT: Now, so you interpret their request to enjoin the settlement, to prevent the settlement from going forward. I had interpreted it as preventing somebody from representing arbitration claimants who have no authority to address their arbitration award. So you didn't see that in the papers?
>
> MR. CLAYTON: No, because the way I understand the papers -- forgive me –
>
> THE COURT: So would you have any objection if there were an injunction if that is what is being requested?
>
> MR. CLAYTON: The issue that I have is -- that we have is this: We have a settlement agreement.

Doc. 51, Tr. 12:7-11.

Later in the oral argument, DST asserted that, because the *Ferguson* class counsel represent the class members' interest in their ERISA claims, they can compromise on behalf of class members the Judgment Creditors' judgments against DST. See, for example, the following exchange:

> THE COURT: [Class counsel] have authority to set aside [the Judgment Creditors'] arbitration awards pursuant to this agreement. Is that correct?
>
> MR. CLAYTON: Yes, yes, in the sense -- well, they have authority in the sense that those lawyers have authority to compromise those awards they have agreed to a settlement, and in that settlement --
>
> THE COURT: So you are saying the lawyers that are representing class members who have an arbitration award that has been confirmed as an enforceable judgment from another court have the right against the will of those people to set aside their arbitration awards and instead take an offer that you have made.
>
> MR. CLAYTON: I -- I think because we have a certified class I think that our position is they do, so the answer to that is yes . . .

*Id.*, Tr. 10:8-22. The Court pointed out that class counsel represent *Ferguson* plaintiffs with respect to ERISA claims, and not the arbitration awards, but DST insisted that they are one and the same, as if, even without any order of an appellate court to that effect, this Court's judgment is simply a nullity. *Id.*, Tr. 9:3-5.

Finally, DST expressly acknowledged that it intended to interfere with this Court's judgments in favor of the Judgment Creditors by agreeing with the *Ferguson* class counsel to "compromise" those judgments and the final, binding arbitration awards, without the Judgment Creditors' consent, to obtain a class settlement:

> THE COURT: There's a question of whether or not you can settle your class action. This Court has no interest in whether you settle your class action or you don't settle your class action. . . . It is my business if, in fact, you intend to interfere with the judgment which I had entered and which somebody has obtained from this Court, an order that says they have an ownership interest in a certain amount of money from you, and if you are intending to interfere with that, then, of course, that's another matter, and so the problem is I am hearing you say you do intend to interfere with that.
>
> MR. CLAYTON: We, in the sense that, yes, we intend to present that settlement agreement, which, by its terms, if approved, would resolve the arbitration claims here, Your Honor, yes, and we think it is appropriate.

*Id.*, Tr. 14:5-23.

Considering DST's stated intention to immediately seek approval of a settlement that would address not only the ERISA claims but also would compromise the Judgment Creditors' judgments without their consent, *id.*, Tr. 10:7-13, the Court acted quickly to maintain the status quo pending review by the Eighth Circuit. Deeming time to be of the essence, the Court entered the injunction in the form of a text order that very same day, April 10, 2023, as follows:

> PRELIMINARY INJUNCTION. The Court has considered the Dataphase factors and, based on the representations made by DST at the hearing, concludes that, in order to protect its judgments, a preliminary injunction must issue. In each of the 55 cases in which this Court has subject matter jurisdiction and entered an order on

3

March 31, 2023 confirming an arbitration award, the Court hereby enjoins DST or anyone on behalf of DST from entering into or effectuating an agreement that settles, disposes of, interferes with, invalidates, satisfies, sets aside, alters, or otherwise compromises each such judgment, without the express written consent of each Confirmation Plaintiff in whose favor judgment was entered by this Court. The Court deems a bond of $200 per case sufficient security.

Doc. 50. Although Judgment Creditors' counsel asked that the injunction prevent settlement of the judgments without the attorneys' consent, the Court did not include that limitation in the injunction.

More than two weeks later, on April 27, 2023, DST filed a motion to stay the injunction. The Court scheduled oral argument on that motion for the very next day. Plaintiff filed suggestions in opposition to the motion to stay on April 28, 2023, hours before the scheduled oral argument.

DST's statements during the April 28th oral argument further confirmed that, absent the injunction, it would disregard or "compromise," with the aid of *Ferguson* class counsel, the judgments belonging to the Judgment Creditors, without their consent. DST had previously represented that "where the parties with arbitration awards are concerned under the settlement that is being presented those parties will be as well off or better off under the settlement when it comes to the awards that they have than they would be if these awards were confirmed and paid." At oral argument on the motion for a stay, however, DST confirmed that the Judgment Creditors in fact would not be as well off because they would only receive the damages portion of the award and not the attorneys' fees, expenses, and costs:

THE COURT: So does the settlement provide for full payment of the judgments that the Court entered or are they partial? In other words, I would like to clarify. Do they include costs, attorneys' fees, expenses, and damages? Because that's the full amount of the judgment and the full amount of the arbitration award.

MR. CLAYTON: The settlement provides for the payment of the damages portion of these awards. It does not provide unequivocally for the payment of attorneys' fees and costs. That issue, attorneys' fees, is a matter that will be determined if the

settlement goes forward but by Judge Carter within the class action. . . . I think in every class action, and this is a -- and, particularly, a mandatory class action, fees of counsel for parties litigating claims who are in the class, claims that are part of the certified class, have to apply for attorneys' fees to the court and the court has to approve that.

Doc. 64, Tr. 5:6-6:5. Of course, in every class action, whether by settlement or otherwise, the presiding court reviews class counsel's fees. But the Court is unaware of any Federal Rule of Civil Procedure or other authority, nor has DST identified any, that authorizes an attorney who has not been appointed class counsel to recover attorneys' fees in a class action. More importantly, the issue here is whether class counsel and DST can eliminate the portion of the Court's judgment that covered the Judgment Creditors' attorneys' fees and costs incurred during the arbitrations. It is now clear that the proposed settlement purports to wipe out the attorneys' fees (as well as the expenses and costs) awarded by the arbitrators and now reduced to a judgment of this Court.

When asked about attorney liens filed by arbitration counsel, DST's response was merely to question the validity of those liens, not to dispute that such liens existed. *Id.*, Tr. 17:7-25 ("I understand [attorney liens] have been filed. I don't contest that fact. I don't think it's relevant, and I have real doubt as to whether any of those liens are valid in an ERISA case and, particularly, in a class action."). In response to the Court's questions concerning whether the Judgment Creditors will be indemnified, by the settlement or otherwise, if they must pay attorneys' fees owed to arbitration counsel and are responsible for costs and expenses of the arbitrations, DST stated plainly that if the Judgment Creditors were to accept the compensation offered under the settlement agreement, they will have forfeited the right to pursue DST or class counsel for breach of contract or fiduciary duty. *Id.*, Tr. 18:7-23 (The Court: If the judgment creditors accept payment in the class action of partial settlement, have they forfeited their right to pursue DST or class counsel for breach of contract or for failure to fulfill their fiduciary duties? . . . Mr. Clayton: Your

5

Honor, yes, in the sense that if they accept the compensation under the agreement . . . all those claims including the claims Your Honor mentioned will be dismissed in the action and, also, will be released, so the answer is yes.). In short, if the stay is lifted and settlement as described by DST is approved, the Judgment Creditors will lose their judgments and be subject to an attorney lien or other liabilities with respect to the attorneys' fees, expenses, and costs incurred in the arbitrations.

The Court also questioned DST as to whether the case could be settled by certifying the class in two parts, with one class consisting of the 55 Judgment Creditors and another class consisting of the remaining class members. DST's response was that subclasses would mean that it could "not go forward with this settlement." *Id.*, Tr. 12:2-17. There is no evidence that anyone other than DST would stop the settlement and there is no evidence that anyone other than DST would have a reason to stop the settlement if DST had to pay the judgments of this Court.

Finally, although the Court's injunction does not prohibit anyone from settling the Judgment Creditors' judgments against DST so long as the Judgment Creditors agree, DST could not say whether anyone—such as *Ferguson* class counsel—had attempted to contact the Judgment Creditors to try to secure their agreement to the "compromise" of their judgments in the *Ferguson* settlement. *Id.*, Tr. 9:13-11:9. Nor did DST suggest any reason why they could not be contacted.

DST has since filed notices of appeal from the March 31 order and judgment in these and related cases. Doc. 60. Four weeks elapsed between the Court's entry of judgment and DST's appeal from that judgment. *See* Doc. 46, Doc. 60. The Eighth Circuit has now set a briefing schedule. Doc. 65. However, to date, DST has not requested—nor has it represented that it intends to request—expedited consideration of its appeal from the Court's March 31 order and judgment. *See id.*

6

## II.    DISCUSSION

Federal Rule of Civil Procedure 62(d) permits federal courts to stay an injunction pending an appeal. *Dakotans for Health v. Noem*, No. 4:21-CV-4045-LLP, 2021 WL 3619735, at *1 (D.S.D. Aug. 16, 2021) (citing Fed. R. Civ. P. 62(d)). In deciding whether to stay a preliminary injunction pending appeal, the Court is to consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Although "[t]he most important factor is likelihood of success on the merits, . . . a showing of irreparable injury without a stay is also required." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020); *see also Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) (denying motion for stay pending judicial review "because petitioners have failed to establish . . . that they will suffer irreparable harm unless the stay is granted"). "[T]he 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Indiana State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961, (2009) (citation omitted).

The Court begins its analysis with the harm to each party and then turns to the question of likelihood of success and public-interest considerations.

### A.  Whether DST Would Be Irreparably Harmed in the Absence of a Stay

Irreparable harm is a critical factor in the Court's analysis: absent a finding that DST would be irreparably harmed if the injunction is not stayed, DST is not entitled to a stay. *Org. for Black Struggle*, 978 F.3d at 607.

7

Here, even putting aside the fact that its claims are unsupported by sworn affidavits or any other evidence (*see* Doc. 56), DST's assertions of irreparable injury, as described by its counsel, do not pass muster. DST's vague assertion that the "injunction prevents it from entering into any settlement providing for class-wide relief that includes Plaintiffs—who are, indisputably, class members in the *Ferguson* action" is false. DST is free to enter a settlement providing for class-wide relief that includes compromising the Judgment Creditors' judgments—so long as those Judgment Creditors expressly consent. DST also is free to enter a settlement providing for class-wide relief that includes the Judgment Creditors—even absent the Judgment Creditors' consent— so long as the settlement does not purport to limit, invalidate, or compromise the judgment entered in each Judgment Creditor's favor. What's more, DST is free to ask for a subclass for the Judgment Creditors and permit other aspects of the settlement to proceed while this Court's order and judgment in favor of the Judgment Creditors is appealed or the subclass is settled separately with DST. DST thus has failed to show that it is "certain" to suffer irreparable injury absent a stay. *See, e.g., Packard Elevator*, 782 F.2d at 115 ("[T]he [petitioner] must show that the alleged harm will directly result from the action which the [petitioner] seeks to enjoin."). Any harm that DST has described will have been self-inflicted because it has not taken steps to settle the *Ferguson* class claims without interfering with a judgment of this Court. *See Sierra Club v. U.S. Army Corp. of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011) (finding that "district court's analysis of the balance of harms was not an abuse of discretion particularly because any injury to [party opposing injunction] was largely self[-]inflicted").

Finally, DST's failure to date to make any effort to expedite its appeal of the Court's judgments—and, to the contrary, waiting four weeks to file a notice of appeal from the judgments—belies any claim of irreparable harm from delay. *See Minnesota Humane Soc'y v.*

8

*Clark*, 184 F.3d 795, 797 (8th Cir. 1999) (noting that the Eighth Circuit has granted expedited appeals, even hearing an appeal within three days of its filing in one case and, in another, hearing an appeal within seven days of granting a preliminary injunction (citing *Henderson v. Bodine Aluminum, Inc.,* 70 F.3d 958, 960 (8th Cir.1995); *South Dakota v. Hazen,* 914 F.2d 147, 148 (8th Cir .1990))).

### B.  Whether Staying the Injunction Would Substantially Injure the Judgment Creditors

While DST has failed to demonstrate any irreparable harm, the Judgment Creditors will be substantially injured if the injunction is stayed:  the "compromise" of their judgments would mean taking away their legal right to payment of attorneys' fees and any costs and expenses awarded. Twenty-six of the Judgment Creditors are entitled to attorneys' fees in the six-figure range.  Four of those Judgment Creditors are owed attorneys' fees of over a quarter of a million dollars.  DST's planned settlement proposes to pay those Judgment Creditors the damages awards that it already owes them and then leave them holding the bag for the arbitration costs, expenses, and attorneys' fees, which in many cases are far higher than the damages awards.  Indeed, the attorneys' fee awards in the 55 judgments combined are almost twice as high as the damages awards combined.[3]

DST argues that the Judgment Creditors will not be injured if the injunction is stayed and settlement goes forward because "Plaintiffs' ability to advance any objections to a proposed settlement in the *Ferguson* action pursuant to Rule 23 constitutes a remedy at law that defeats any attempt to show irreparable injury."  Doc. 56, p. 2; *see also id.* , p. 5 ("[T]o the extent Plaintiffs have any other objections to the settlement, they will be free to litigate those objections before the

---

[3] As the Court has repeatedly pointed out, the awards are the result of the parties' private agreements to arbitrate—agreements that in almost every case DST drafted and that DST successfully enforced in the *Ducharme* case.  Thus, there is nothing inequitable about this result.

*Ferguson* court, as they have done previously, and, as necessary, before the Second Circuit."). DST thus has clearly stated its intention to try to deprive this Court and the Eighth Circuit of jurisdiction over these cases despite this Court's order denying its motion to transfer the cases. If it succeeds in securing court approval of a settlement disposing of this Court's judgments without the judgment-holders' consent, not only will DST have made an end-run around this Court's order denying transfer (completing DST's forum-shopping strategy) and confirming the arbitration awards, but also, it will have successfully precluded any appellate review of the merits of this Court's judgment or its related orders.

The Court recognizes that the Southern District of New York, may not permit DST and class counsel to effectively take away a property right of the Judgment Creditors to achieve a class-wide settlement. After all, Federal Rule of Civil Procedure 23 cannot "abridge, enlarge or modify any substantive right" 28 U.S.C.A. § 2072(b). A final arbitration award to which *res judicata* has attached and the judgment of this Court confirming that arbitration award are clearly substantive rights that cannot be abridged or modified by Federal Rule of Civil Procedure 23. Nor does the Class Action Fairness Act authorize such conduct.

But if the *Ferguson* court nonetheless chooses to approve such a settlement, the Judgment Creditors may not be entitled to a *de novo* review of that decision. The Second Circuit reviews both class-certification decisions and orders approving class-settlements under the abuse-of-discretion standard. *See, e.g., Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 120 (2d Cir. 2022) ("We review class certification decisions, including a district court's rulings that each of the Rule 23 requirements are satisfied, for abuse of discretion."); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019) (reviewing various "challenges to the fairness of the class settlement . . . for abuse of discretion"). The abuse-of-discretion standard applies even to questions

concerning the adequacy of class representation. *In re Petrobras Sec. Litig.*, 784 F. App'x 10, 14 (2d Cir. 2019). This means that appellate review of any approval of the proposed class settlement or class certification issues is likely to be limited. The Judgment Creditors would be stripped of the full awards to which they are entitled while also being denied the opportunity to have an appellate court directly address the legal question of whether ERISA requires that all 502(a)(2) claims be pursued on behalf of the Plan and in a single class action for Plan-wide relief. This was a central legal issue argued by DST before this Court. Losing their day in court on this foundational issue would constitute substantial harm to the Judgment Creditors, and indeed that harm would be irreparable.[4]

Further, no matter how many class members there may be elsewhere, or how many parties might be involved in the negotiations, or how long negotiations have been underway, DST has pointed to nothing in our legal system that permits a judgment of a federal court to be invalidated or otherwise limited outside of the appropriate appellate procedure or without the consent of the judgment creditor.[5] *See In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71

---

[4] DST appears to have gone out of its way to try to avoid decisions on the merits of the arbitration awards. Although DST criticized this Court for not addressing its purported "motion to transfer," in fact, it never filed such a motion in this Court. Nor did it file a "motion to vacate" in this Court. In addition, had DST wished to ask the Southern District of New York to vacate the arbitration awards, it could, before *Badgerow*, have filed a motion to vacate the awards in that court. But it chose not to do so. Instead, it now seeks to indirectly vacate the arbitration awards by convincing class counsel to agree, purportedly on behalf of the Judgment Creditors, to forfeit the arbitration awards and this Court's judgments in exchange for a partial payment of the judgments.

[5] DST stated at oral argument on its motion for a stay of the injunction that the Judgment Creditors do not have a property interest in the judgment. Doc. 64, Tr. 16:7-12 (The Court: Do they have a property right in their [judgment]? Mr. Clayton: I don't know, Your Honor. If Your Honor is thinking of a property right in the sense of a mortgage or a filing, no. What they have is a cause of action under ERISA, and that's the only thing that they have."). However, the property interest in a court judgment has long been recognized. *See, e.g., State of Louisiana ex rel. Folsom v. City of New Orleans*, 109 U.S. 285, 289 (1883) (recognizing "property in a judgment"); *Ostipow v. Federspiel*, 824 F. App'x 336, 343 (6th Cir. 2020) (noting that judgment creditors "have a property

F.3d 298, 303 (8th Cir. 1995) (Loken, J) (stating that the "contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management").

In short, a stay of the Court's injunction would cause the Judgment Creditors substantial (and irreparable) harm. *See Sleep No. Corp. v. Young*, 33 F.4th 1012, 1018–19 (8th Cir. 2022) (holding that district court did not clearly err in finding "threat of irreparable harm" sufficient to warrant injunctive relief where, absent injunction, defendants would likely "influence" an administrative process "in a manner adverse to" the plaintiff, leading to an administrative decision that could only be changed at the administrative agency's "discretion").

### C. DST's Likelihood of Success on the Merits

DST presents five arguments as to why it is likely to succeed on appeal. None are persuasive.

First, DST argues that the Judgment Creditors failed to meet their burden on their preliminary-injunction motion because they did not show irreparable harm. As discussed above, however, Plaintiffs would be substantially and indeed irreparably harmed absent the injunction.

Second, DST argues that there is no authority permitting the Court to prohibit a party from entering a settlement in another court. This argument is a red herring. The Court has not prohibited anyone, including DST, from entering a settlement in *Ferguson* or any other action. The Court's order merely prohibits DST and those acting on its behalf from attempting to invalidate or limit a judgment of this Court without the judgment-holder's consent.

---

right in their judgment"). The property interest in a judgment typically is discussed in cases involving a governmental entity and claims of constitutional violations. But the fact that a judgment is by law a kind of property belonging to the judgment creditor bears emphasizing in this case given DST's cavalier attitude towards the judgments at issue. Absent an injunction, DST would treat the Judgment Creditors' property interests in the judgments as unresolved, theoretical or abstract "claims," worth no more than the proverbial paper on which the judgments are printed.

Third, DST argues that "the injunction unduly interferes with the proceedings in a certified mandatory class involving more than 9,000 Plan participants and is inconsistent with principles of comity and orderly federal procedure." But, again, DST misrepresents the nature and scope of the Court's injunction. The injunction applies only to DST and those acting on its behalf. It also protects only the rights and interests of the 55 Judgment Creditors in the judgment of this Court. The injunction does not in any way affect the *Ferguson* class action, nor does it purport to bind or limit the *Ferguson* court or any other party involved in *Ferguson*.

Fourth, contrary to DST's contention, the Court is not determining the preclusive effect of its judgments. Rather, this Court is merely protecting the integrity of its judgment pending appeal—which, given DST's statements on the record, is necessary. *See, e.g., Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (noting that "the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held" (quotation marks and citation omitted). Further, "[t]he All Writs Act makes plain that each federal court is the sole arbiter of how to protect its own judgments . . . ." *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382–83 (8th Cir. 1994).

DST argues that the *Ferguson* court will address what effect, if any, this Court's judgments should have on the class action. As a preliminary matter, DST's arguments on this point again betray its intention to make an end-run around this Court's order denying its motion to transfer these cases to the Southern District of New York and its failed attempt to vacate the arbitration awards. While DST undoubtedly has the right to appeal to the Eighth Circuit the Court's order and judgment in each of these cases, it is bound by the Court's order and judgment unless and until the Eighth Circuit modifies it. In the interim, DST is not at liberty to simply disregard this Court's orders or judgments.

13

Certainly, the *Ferguson* court is free to draw its own conclusions regarding the preclusive effect, if any, to which this Court's judgments are entitled or any other matter it chooses to address. However, the *Ferguson* court is not the appropriate forum for protecting this Court's judgments—only this Court is. *See id.* at 382 ("[N]o other forum provides an adequate substitute for a court's action in protection of its own judgment.").[6]

Fifth, DST's statement that the injunction "fails to comply with the requirements of Rule 65" is not only conclusory, but also wrong. For a preliminary injunction, Rule 65 requires, in relevant part, notice, security from the movant in an amount the Court considers appropriate to pay any costs and damages the party subject to the injunction might thereby sustain, a statement of the reasons why it issued, its specific terms, and a description of the acts restrained. Fed. R. Civ. P. 65(d). Rule 65 permits preliminary injunctions to bind parties and "other persons who are in active concert or participation" with them. *Id.*

Here, the motion for a preliminary injunction was made on notice and the Court held a hearing—in which DST stated that it would interfere with the Court's judgments. *See* Doc. 51, Tr. 14:13-23 (THE COURT: It is my business if, in fact, you intend to interfere with the judgment which I have entered in which somebody has obtained from this Court an order that says they have an ownership interest in a certain amount of money from you, and if you are intending to interfere with that, then, of course, that's another matter, and so the problem is I am hearing you say you do intend to interfere with that. MR. CLAYTON: We, in the sense that, yes, we intend to present that settlement agreement, which, by its terms, if approved, would resolve the arbitration claims here, Your Honor, yes, and we think it is appropriate."). The Court required the Judgment Creditors to

---

[6] And as discussed above, there is no assurance that the merits discussed in the Court's order will ever be resolved by the Southern District of New York or anywhere else if the Court's injunction is stayed.

give appropriate security—and DST does not suggest otherwise—in the amount of $200 per case, amounting to $11,000 for the 55 cases. The Court explained that, having considered the *Dataphase* factors (a reference to *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)), and because of DST's representations at the hearing, the Court deemed a preliminary injunction necessary "to protect its judgments." Finally, the Court stated the terms and reasonably detailed the acts by DST and those acting in concert with DST that are restrained. *See* Doc. 50 ("[T]he Court hereby enjoins DST or anyone on behalf of DST from entering into or effectuating an agreement that settles, disposes of, interferes with, invalidates, satisfies, sets aside, alters, or otherwise compromises each such judgment, without the express written consent of each Confirmation Plaintiff in whose favor judgment was entered by this Court.").[7]

Finally, the suggestion that there was "no adequate justification for the urgency with which the injunction was issued" is patently meritless considering DST's own statement at the argument on the motion for temporary restraining order and preliminary injunction that the proposed settlement would be presented to the *Ferguson* court for approval by the end of that week at the latest, perhaps sooner. Doc. 51, Tr. 5:22-6:3 ("We have . . . represented to Judge Carter that he will be getting a copy of that settlement agreement, which we intend to file later this week. It will be filed by Friday. It may be filed by Thursday."). DST's unequivocal assertion that the settlement would interfere with this Court's judgments rendered the "adversarial briefing" that DST now says it should have been allowed to submit unnecessary. Indeed, DST's position that a lawyer, appointed by a court to represent a class, can give away a class member's judgment to achieve class-wide settlement is both novel and, frankly, shocking to this Court. In any event, DST has

---

[7] The Judgment Creditors argue that multiple federal appellate courts have concluded that injunctions issued under the All-Writs Act are not subject to Rule 65. Because the Court's injunction was consistent with Rule 65, the Court need not consider that argument.

now had the opportunity to submit briefing concerning the injunctive relief, and its arguments have failed to convince the Court that the injunctive relief was unwarranted. Thus, DST has failed to show any prejudice from the Court's entry of the injunctive order prior to formal briefing.

The Court's injunctive order was a proper exercise of the Court's authority. *See e.g., F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 224 n.3 (2013) (noting that "the District Court on remand could enjoin respondents from taking actions that would disturb the status quo and impede a final remedial decree"); *Phillips Beverage Co. v. Belvedere, S.A.*, 204 F.3d 805 (8th Cir. 2000) (holding that district court had authority to order injunctive relief under the All Writs Act "to prevent the frustration of the order it had previously issued in its exercise of jurisdiction otherwise obtained" where defendant sought to make "an end run" around the district court's decision (quotation marks omitted, quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977)); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1020 (8th Cir. 2002) (affirming grant of injunctive relief, noting that "a party suffers irreparable harm when it is required to relitigate . . . issues previously decided, and (2) the deprivation of an opportunity to pursue the same issues in a [different] forum does not constitute a legitimate harm requiring a balancing of equities"), *abrogated on other grounds by Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). Under the circumstances, preserving the judgment for appellate review on the merits was not only appropriate, but necessary. *Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022) ("We ask whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. . . . If the balance tips decidedly towards the plaintiffs and the plaintiffs have raised questions serious enough to require litigation, ordinarily the injunction should issue." (quotation marks and citations omitted)); *Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 742 F. Supp. 2d 1055, 1061 (D.S.D. 2010) (noting that "'trial courts have

16

issued or stayed injunctions pending appeal where such action was necessary to preserve the status quo where the legal questions were substantial and matters of first impression'" (quoting *Sweeney v. Bond,* 519 F. Supp. 124, 132 (E.D. Mo. 1981), citing *Mesabi Iron Co. v. Reserve Mining Co.,* 268 F.2d 782, 783 (8th Cir.1959))).

### D. Public Interest Considerations

DST argues that because the *Ferguson* class includes 9,000 members, it is in the public interest to facilitate settlement. DST disregards the fact that several avenues for settlement remain open to it.[8] In any event, permitting DST to strip the Judgment Creditors of a substantial portion of the value of judgments entered in their favor without their express consent would undermine public confidence in the predictability and reliability of the judicial system. *See, e.g., Canady*, 282 F.3d at 1020 (noting that "the public policy concerns of finality and repose . . . strongly support[] the protection of our previous judgment" (quotation marks and citation omitted)); *Fredin v. Middlecamp*, No. 17-CV-03058, 2020 WL 7090771, at *2 (D. Minn. Dec. 4, 2020) ("Because the Court found that the injunction was necessary to cure [one party's] abuse of the judicial process, staying the injunction would substantially injure [the other parties], the Court, and the judicial process and would be contrary to the public interest."). Further, as the Court has explained more fully in the order confirming the arbitration awards, to allow DST to ignore orders of this Court

---

[8] This Court agrees that the best outcome for all involved here would be a global settlement of all disputes that originated from DST's breach of its fiduciary obligations, including its refusal to pay the arbitration awards. The Court has also suggested ways to move settlement discussions forward. However, DST has shown a lack of interest in achieving a global settlement. For example, after Judge Carter recently encouraged the parties to explore a global settlement, DST claimed that it assumed that the mediator would contact the arbitration lawyers, and DST passively awaited the results. DST has not explained why the mediator, rather than the parties Judge Carter encouraged to explore settlement, was to take the lead, or why it chose to take a passive approach to try to salvage the settlement that it claims is at great risk of falling apart if it is not allowed to proceed immediately.

17

would bless forum-shopping and undermine the Federal Arbitration Act and the judiciary's role in enforcing arbitration agreements and awards.

### E. Weighing the Relevant Factors

Because DST has failed to show irreparable harm, and the Judgment Creditors would be substantially harmed if the injunction were lifted, and DST has not shown a likelihood of success on the merits, and public interest considerations weigh against lifting the injunction, a stay of the injunction is inappropriate.

## III.   CONCLUSION

For the reasons discussed above, DST has failed to meet its burden of proof, and therefore, its motion to stay the Court's injunction, Doc. 56, is DENIED.

<u>s/ Nanette K. Laughrey</u>
NANETTE K. LAUGHREY
United States District Judge

Dated:  <u>May 5, 2023</u>
Jefferson City, Missouri

18